**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **PATRICK REYNOLDS, DANIEL LEWIS, LUCIA MARANO, KRISTEN FRANCE, ABBEY ABRECHT and JAHIDAH DIAAB,** individually and on behalf of all others similarly situated**,** | Case No. 1:22-cv-06846 |
| Plaintiffs, | JUDGE LORNA G. SCHOFIELD |
| v. | |
| **MARYMOUNT MANHATTAN COLLEGE,** | |
| Defendant. | |

**PLAINTIFFS' UNOPPOSED MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iv

I.      INTRODUCTION ................................................................................................... 1

II.     CASE SUMMARY ................................................................................................. 2

        A.  The Data Incident ..................................................................................... 2

        B.  Plaintiffs' Complaint ............................................................................... 2

III.    SUMMARY OF SETTLEMENT ......................................................................... 4

        A.  Settlement Benefits ................................................................................. 4

                1.  Monetary Relief ........................................................................... 4

                2.  Credit Monitoring and Identity Theft Restoration ...................... 6

                3.  Data Security Measures ............................................................... 6

                4.  Release ......................................................................................... 7

        B.  The Notice and Claim Process ................................................................ 7

                1.  Notice .......................................................................................... 7

                2.  Claims .......................................................................................... 7

                3.  Requests for Exclusion and Objections ...................................... 8

        C.  Fees, Costs, and Service Awards ............................................................ 9

IV.     LEGAL STANDARD ........................................................................................... 10

V.      ARGUMENT ........................................................................................................ 11

        A.  The Settlement Class Should be Preliminarily Certified ...................... 11

        B.  The Proposed Class is Sufficiently Numerous ...................................... 13

        C.  Questions of Law and Fact Are Common to the Class. ......................... 13

        D.  Plaintiffs' Claims and Defenses are Typical of the Class. .................... 14

        E.  Plaintiffs Will Provide Fair and Adequate Representation of the Class. ...................... 15

F.  Because Common Issues Predominate Over Individualized Ones, Class Treatment is Superior. ................................................................................................... 16

G.  The Terms of the Settlement are Fair, Reasonable, and Adequate ............................... 18

   1.  The Settlement Warrants Preliminary Approval Under Rule 23(e) .................... 19

      a.  The Plaintiffs and Proposed Settlement Class Counsel have adequately represented the Settlement Class .................................... 19

      b.  The Settlement was negotiated at arms' length and is absent of any collusion ............................................................................... 21

      c.  The relief provided for the class is adequate ................................. 21

         i.  The costs, risks, and delay of trial and appeal are great ......................... 22

         ii.  The proposed method of distributing relief, including the method of processing class-member claims, is objective, efficient, and fair ........ 23

         iii.  The attorneys' fees, costs and service awards that Plaintiffs will request this Court approve are reasonable ......................................... 23

         iv.  No additional agreement related to the settlement exist ........................... 24

      d.  The Settlement Treats Class Members Equitably to Each Other ................... 24

   2.  The Settlement Warrants Preliminary Approval After Consideration of the *Grinnell* Factors ................................................. 24

D.  The Proposed Claims Administrator Will Provide Adequate Notice ........................... 27

VI.  CONCLUSION .............................................................................................. 29

## **TABLE OF AUTHORITIES**

**CASES**                                                                          **PAGE(S)**

*Achtman v. Kirby, McInerney & Squire*, LLP,
    464 F.3d 328 (2d Cir.2006)................................................................... 28

*Alcantara v. CNA Mgmt., Inc.*,
    264 F.R.D. 61 (S.D.N.Y. Dec. 8, 2009)................................................. 13

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591, 620 (1997).......................................................... 12, 15, 16, 17

*Baksh et al. v. IvyRehab Network, Inc*.
    No. 7:20-CV-01845 (S.D.N.Y.)............................................................ 22

*Beckman v. KeyBank, N.A.,*
    293 F.R.D. 467, 481-83 (S.D.N.Y. 2013)............................................. 24

*Bolanos v. Norwegian Cruise Lines Ltd.,*
    212 F.R.D. 144 (S.D.N.Y. Nov. 26, 2002) ........................................... 14

*Bourlas v. Davis Law Assocs.,*
    237 F.R.D. 345 (E.D.N.Y. Aug. 30, 2006) ........................................... 19

*Castagna v. Madison Square Garden, L.P.,*
    2011 WL 2208614 (S.D.N.Y. June 7, 2011) ........................................ 20

*Charron v. Pinnacle Group N.Y. LLC,*
    874 F. Supp. 2d 179 (S.D.N.Y. 2012)................................................... 28

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974)....................................................... 19, 22, 24

*Cohen v. J.P. Morgan Chase & Co.,*
    262 F.R.D. 153 (E.D.N.Y Sept. 24, 2009)............................... 10, 12, 16, 18

*Consol. Rail Corp. v. Town of Hyde Park,*
    47 F.3d 473 (2d Cir.1995)................................................................... 13

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2007)............................................................. 20, 21

*Denney v. Deutsche Bank AG,*
    443 F.3d 253 (2d Cir. 2006)................................................................ 11

*Denney v. Jenkens & Gilchrist,*
  230 F.R.D. 317 (S.D.N.Y. Feb. 18, 2005) (aff'd in part and vacated in part,
  443 F.3d 253 (2d Cir. 2006)) ................................................................................. 10

*Dornberger v. Metropolitan Life Ins. Co.,*
  203 F.R.D. 118 (S.D.N.Y. 2001) ............................................................................. 24

*Fox v. Cheminova,*
  213 F.R.D. 113 (E.D.N.Y. Feb., 28, 2003) .............................................................. 16

*Frank v. Eastman Kodak Co.,*
  228 F.R.D. at 185 (W.D.N.Y. 2005) ........................................................................ 26

*Freeland v. AT & T Corp.,*
  238 F.R.D. 130 (S.D.N.Y. Aug. 17, 2006) .............................................................. 13

*Hammond v. The Bank of N.Y. Mellon Corp.,*
  2010 WL 2643307 (S.D.N.Y. June 25, 2010) ......................................................... 23

*Hapka v. CareCentrix, Inc.,*
  2018 WL 1871449 (D. Kan. Feb. 15, 2018) ............................................................ 16

*Iglesias-Mendoza v. La Belle Farm, Inc.,*
  239 F.R.D. 363 (S.D.N.Y. Jan. 29, 2007) ............................................................... 13

*In re Agent Orange" Prod. Liab. Litig.,*
  818 F.2d 145, 166-167 (2d Cir. 1987) ..................................................................... 16

*In re Anthem, Inc. Data Breach Litig.,*
  327 F.R.D. 299 (N.D. Cal. Aug. 15, 2018) ............................................................. 16

*In re Austrian & German Bank Holocaust Litig.,*
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) .................................................................. 21, 26

*In re Flag Telecom Holdings, Ltd. Securities Litig.,*
  574 F.3d 29 (2d Cir. 2009) ...................................................................................... 14

*In re GSE Bonds Antitrust Litig.,*
  414 F. Supp. 3d 686 (S.D.N.Y. 2019) ..................................................................... 21

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.,*
  293 F.R.D. 21 (D. Me. 2013) ................................................................................... 23

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litg.,*
  851 F. Supp. 2d at 1059 (S.D. Tex. 2012) ............................................................... 17

*In re Initial Pub. Offering Sec. Litig.,*
  260 F.R.D. 81 (S.D.N.Y. June 10, 2009) ................................................................ 19

*In re Interpublic Sec. Litig.*,
  No. 02 Civ. 6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ............................................ 26

*In re Ira Haupt & Co.*,
  304 F. Supp. 917 (S.D.N.Y. 1969) ....................................................................................... 26

*In re Luxottica Group S.p.A. Sec. Litig. (In re Luxottica Group Litig.)*,
  233 F.R.D. 306 (E.D.N.Y.2006) ........................................................................................... 10

*In re Nasdaq Antitrust Litig.*,
  176 F.R.D. at 102 (S.D.N.Y. 1997) ............................................................................... 10, 18

*In re Nissan Motor Corp. Antitrust Litig.*,
  552 F.2d 1088 (5th Cir.1977) .............................................................................................. 28

*In re Painewebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ......................................................................................... 26

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  330 F.R.D. 11 (E.D. N.Y. Jan. 28, 2019) ............................................................................. 18

*In re Polaroid ERISA Litig.*,
  2007 WL 2116398 (S.D.N.Y. July 19, 2007) ...................................................................... 24

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
  2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ...................................................................... 17

*Jackson v. Bloomberg, L.P.*,
  298 F.R.D. 152 (S.D.N.Y. Mar. 19, 2014) .......................................................................... 13

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,
  333 F.R.D. 314 (S.D.N.Y. 2019) ......................................................................................... 25

*Jones v. Amalgamated Warbasse Houses, Inc.*,
  97 F.R.D. 355 (S.D.N.Y.1982) ............................................................................................ 20

*Lizondro-Garcia v. Kefi LLC*,
  300 F.R.D. 169 (S.D.N.Y. May 29, 2014) ..................................................................... 12, 13

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir.1997) (*per curiam*) .......................................................... 12, 13, 14, 15

*Rutledge et al v. Saint Francis Healthcare System*,
  No. 1:20-cv-00013-SPC (E.D. Mo.) .................................................................................... 22

*Steinberg v. Nationwide Mut. Ins. Co.*,
  224 F.R.D. 67 (E.D.N.Y. Sept. 4, 2004) ............................................................................. 12

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003) ................................................................. 24

*Velez v. Majik Cleaning Serv*., *Inc.*,
  No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ............................ 26

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011) ............................................................................................... 13

*Wal–Mart Stores, Inc. v. Visa U.S.A. Inc*.,
  396 F.3d 96 (2d Cir.2005) ...................................................................................... 28

*Willix v. Healthfirst, Inc*.,
  No. 07–cv–1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ............................... 20

**OTHER AUTHORITIES**

*Manual for Complex Litigation*, § 30.41 (3d ed. 1995) ............................................... 19

**RULES**

Fed. R. Civ. P. 23 ............................................................................................. 12, 19, 25

Fed. R. Civ. P. 23(a) .............................................................................................. 11, 15

Fed. R. Civ. P. 23(a)(1) ................................................................................................ 13

Fed. R. Civ. P. 23(a)(2) ................................................................................................ 13

Fed. R. Civ. P. 23(a)(3) ................................................................................................ 14

Fed. R. Civ. P. 23(b)(3) ..................................................................................... 11, 17, 27

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................... 27

Fed. R. Civ. P. 23(e) ............................................................................................. passim

Fed. R. Civ. P. 23(e)(1) ................................................................................................ 27

Fed. R. Civ. P. 23(e)(1)(i) ............................................................................................ 18

Fed. R. Civ. P. 23(e)(2) ................................................................................................ 11

Fed. R. Civ. P. 23(e)(2)(A)-(D) ................................................................................... 18

Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Committee Notes ................................... 19

Fed. R. Civ. P. 23(e)(2)(B) ........................................................................................... 21

Fed. R. Civ. P. 23(e)(2)(c) ........................................................................................... 21

Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv)..........................................................................................18, 22

Fed. R. Civ. P. 23(e)(3)................................................................................................................18, 24

Plaintiffs Patrick Reynolds, Daniel Lewis, Lucia Marano, Kristen France, Abbey Abrecht, and Jahidah Diaab ("Plaintiffs") submit this Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

## I.    INTRODUCTION

On or about November 12, 2021, Defendant Marymount Manhattan College ("Defendant" or "MMC") was the victim of a data incident in which unauthorized parties gained access to and obtained data from MMC's network, potentially compromising the personally identifiable information ("PII") of 191,752 individuals. This class action arises out of Defendant's alleged failure to safeguard the PII that it collected and maintained from Plaintiffs and class members. Defendant denies all liability and wrongdoing.

After prolonged and extensive arms' length negotiations, the parties have reached a settlement that is fair, adequate, and reasonable. In exchange for a narrowly tailored release that is limited to the claims that were based upon the specific facts alleged in this case, Defendant has agreed to a non-reversionary payment of $1.3 million to a Common Fund. Settlement Agreement, ¶ 46 ("Agr."). [1] Plaintiffs strongly believes the settlement is favorable to the Settlement Class. *See* Declaration of Gary M. Klinger ("Klinger Dec." or "Decl.") ¶ 27.

Pursuant to Rule 23(e), Plaintiffs moves the Court for an order certifying the class for settlement purposes, preliminarily approving the proposed settlement agreement, and approving the content and manner of the proposed notice process. Accordingly, and relying on the following memorandum of points and authorities, the Declaration of Plaintiffs' Counsel Gary Klinger and attached exhibits filed herewith, Plaintiffs respectfully request the Court preliminarily approve the

---

[1] The Settlement Agreement ("Agr.") in its entirety is attached as Exhibit 1 to the Declaration of Gary Klinger ("Klinger Dec.") filed herewith. Capitalized terms shall have the same meaning as assigned to them in the Settlement Agreement.

Parties' Settlement Agreement and issue the proposed order attached to the Declaration of Gary Klinger in Support of Pls.' Mot. for Prelim. Approval, ("Klinger Dec.") filed herewith as **Exhibit 1.**

## II.   CASE SUMMARY

### A.   The Data Incident[2]

Defendant is a private college located in New York. In the ordinary course of doing business, Defendant collects certain PII from students, admission applicants, employees, and others such as: names, addresses, phone numbers, driver's license numbers, social security numbers, and dates of birth. Klinger Dec. ¶ 29.b. Defendant's Information Security Plan, posted on their website, provides that "covered data," including Social Security numbers, will be protected by "reasonable safeguards to control identified risks to the security, confidentiality, and integrity of that data, and that the effectiveness of these safeguards is monitored regularly."[3]

On or about November 12, 2021, MMC was the victim of a data incident in which criminals gained access to MMC's network, which contained certain personally identifiable information ("PII") provided by Plaintiffs and Class Members (hereinafter, the "Data Incident"). *Id.* ¶ 29. As a result of Data Incident, MMC notified approximately 191,752 individuals that their PII was potentially impacted by the Data Incident. *Id.* ¶ 32.

### B.   Plaintiffs' Complaint

On or about August 11, 2022, Plaintiffs Patrick Reynolds and Daniel Lewis, through their counsel, filed a class action lawsuit based on the Data Incident against MMC in this Court. *Id.* ¶ 34. Subsequently, Plaintiffs Lucia Marano and Jahidah Diaab filed complaints and on October 6,

---

[2] The facts in this section are those set forth in the Complaint. Defendant does not make any admission as to the facts alleged in the Complaint, and reserves its right to challenge the alleged facts should the Court deny this Motion, in whole or in part.
[3] https://www.mmm.edu/offices/human-resources/information-security-program.php

2022, the Court consolidated these cases with Plaintiff Reynolds' case and opened this litigation under Case No. 1:22-cv-06846. On October 24, 2022, Patrick Reynolds, Daniel Lewis, Lucia Marano, Kristen France, Abbey Abrecht, and Jahidah Diaab ("Plaintiffs") filed a Consolidated Class Action Complaint, which is now the operative complaint in this litigation. Plaintiffs allege claims of negligence, negligence per se, unjust enrichment, breach of express contract, breach of implied contract, violations of the New York General Business Law, invasion of privacy, and declaratory judgment. *Id.* at ¶ 34.  Plaintiffs seek equitable relief enjoining Defendant from engaging in the wrongful conduct complained of and compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety. *Id.* ¶ 37. Plaintiffs further seek an order requiring Defendant to provide credit monitoring services or funds for the purchase of credit monitoring services to themselves and the rest of the class. *Id.* ¶ 38. Finally, by their complaint, Plaintiffs seek an award of actual, compensatory, and statutory damages as well as attorneys' fees and costs, and any such further relief as may be deemed just and proper. *Id.* ¶ 39.

Soon after Plaintiffs filed their Consolidated Class Action Complaint, the Parties, by and through their respective counsel, began discussing the possibility for early resolution. *Id.* ¶ 40. The Parties agreed that an early resolution was warranted.  Over the next few months, the Parties engaged in extensive arm's length settlement negotiations. Klinger Dec. ¶ 42. Negotiations included a significant exchange of information, allowing both Parties to evaluate the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses. *Id.* ¶ 43. The parties attended mediation with Hon. John W. Thornton (Ret.) on January 26, 2023. The parties reached a settlement in principle at the mediation, and over the next few weeks, the Parties diligently negotiated, drafted, and finalized the settlement agreement, notice forms, and came to an agreement on a claims

process and administrator. *Id.* ¶ 45. The Settlement Agreement ("Agr.") was finalized by the Parties on March 10, 2023, and is attached in full as Exhibit 1 to the Declaration of Gary Klinger, filed herewith. It is the opinion of Plaintiffs and proposed settlement class counsel, based on their experience and investigation, that the Settlement Agreement presents a favorable result for the Class. *Id.* ¶ 47.

### III.   SUMMARY OF SETTLEMENT

#### A.   Settlement Benefits

Under the proposed Settlement, Defendant will pay $1,300,000 to establish the Settlement fund to be distributed to Class Members under the Settlement Agreement.  Furthermore, under the Settlement Agreement, Defendant has implemented certain cybersecurity enhancements.  The Settlement provides for relief for a Settlement Class defined as:

> "All persons who are identified on the Settlement Class List, including all individuals who were sent notification by MMC that their personal information was or may have been compromised in the Data Incident."

Agr. ¶ 39. The Settlement Class is estimated to include approximately 191,752 individuals.

The Settlement Class specifically excludes: (1) the judges presiding over this Action, and members of their direct families; (2) MMC, its subsidiaries, parent companies, successors, predecessors, and any entity in which MMC or its parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid a Request for Exclusion prior to the Opt-Out Deadline. *Id.*

#### 1.   Monetary Relief

Under the terms of the Settlement Agreement, MMC will pay $1,300,000 into a Settlement Fund, which will be used to make payments to Class Members and to pay the costs of Notice,

Settlement Administration, attorneys' fees and expenses, and Service Awards to Plaintiffs. *Id.* ¶ 42.

All Settlement Class Members can submit a claim for Ordinary Losses, which provides for up to $750.00 per person reimbursement of documented out-of-pocket losses fairly traceable to the Data Incident, including, but not limited to unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs; and miscellaneous expenses such as notary, fax, postage, copying, mileage and long-distance telephone charges that were incurred on or after November 12, 2021. *Id.* ¶ 52. Settlement Class Members can also submit a claim for Extraordinary Losses which will provide reimbursement of up to $7,500 per person for actual, documented losses incurred on or after November 12, 2021, more likely than not caused by the Data Breach, and not already covered by one of the Ordinary Reimbursement categories. *Id.* ¶ 54.

Additionally, Settlement Class Members can submit claim for compensation for up to five (5) hours of lost time spent in response to the Data Incident, e.g., time spent dealing with replacement card issues, reversing fraudulent charges, calculated at the rate of Twenty Dollars and Zero Cents ($20.00) per hour. *Id.* ¶ 56. To make a claim for lost time the Settlement Class member must only include an attestation that any lost time incurred is/was reasonably spent in response to the Data Incident together with a description of the time incurred. *Id.* Claims for lost time are subject to and included within the cap of $750 for ordinary losses. *Id.*

In lieu of submitting documentation and attestations for reimbursement of ordinary or extraordinary losses and/or lost time, Settlement Class Members may choose to make a claim for

an Alternative Cash Payment of $150, subject to a pro rata increase or reduction based on the number of valid claims submitted. *Id*. ¶¶ 60, 69(d).

### 2. Credit Monitoring and Identity Theft Restoration

In addition to the cash payment offered, each Settlement Class Member is eligible to enroll in a total of one (1) year of three bureau credit monitoring services, the cost of which will be paid for out of the Settlement Fund. *Id*. ¶ 59.

### 3. Data Security Measures

In addition to the monetary relief and credit monitoring services provided, MMC has represented that it has implemented significant data security measures, which it continues to assess. *Id*. ¶ 71. Specifically, Defendant has agreed to delete all PII that is the subject of the Data Incident other than that which is required to be maintained by federal and state law or regulation, or as otherwise required by other regulatory oversight bodies and their applicable requirements or regulations. *Id*. ¶ 72. Defendant has further agreed to encrypt all PII that is the subject of the Data Incident containing Social Security Numbers, driver's license numbers, passport numbers, and any other government issued ID number while the data is in transit and at rest. *Id.* MMC has already adopted and implemented other data security measures following the Data Incident to strengthen the security of its systems, including audits of their Information Security infrastructure, review and update of policies and procedures, updated firewall and changes, deployment of multi-factor authentication for all access to MMC's systems, Active Directory auditing of account access via domain controllers, updated password policies, and updated employee education and training. *Id*. ¶ 71.

####     4.     Release

The release is tailored to the claims that have been plead or could have been plead in this case. *Id.* ¶ Sec. XIV. Settlement Class Members who do not exclude themselves from the Settlement Agreement will release all claims, whether known or unknown, against Defendant and its affiliates, that relate to the Data Incident. *Id.* ¶ 90.

###     B.     The Notice and Claim Process

####     1.     Notice

The Parties agreed to use Kroll Settlement Administration ("Kroll") as the Notice Specialist and Claims Administrator in this case (the "Claims Administrator"). *Id.* ¶ 38. The cost of CAFA notice and all other costs of Settlement Administration will be paid for out of the Settlement Fund. *Id.* ¶¶ 5, 25. The Notice plan provides for individual notice to Settlement Class Members via email and/or US mail, to the postal address that MMC has on record for each Settlement Class Member. *Id.* ¶ 76.

The Claims Administrator will also establish a dedicated settlement website and will maintain and update the website throughout the claim period, with the Short Notice, Long Notice, and Claim Form approved by the Court, as well as the Settlement Agreement, and relevant case documents. *Id.* ¶ 44. Class Members will be able to submit Claim Forms through the website. *Id.* The Claims Administrator will also make a toll-free help line available to provide Settlement Class Members with additional information about the Settlement and will establish a P.O. Box by which Settlement Class Members can submit claims. *Id.; see also* Agr. ¶ 80(f).

####     2.     Claims

The timing of the claims process is structured to ensure that all Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting

their claim, and decide whether they would like to opt-out or object. Klinger Dec. ¶ 66. Class Members will have no less than ninety (90) days after the notice is issued to complete and submit their Claim Form to the Claims Administrator, either by mail or online. *Id.* ¶ 67. The Claim Form is written in plain language to facilitate Settlement Class Members' ease in completing it. *Id.* ¶ 68; Agr., Ex. A. The Claims Administrator will be responsible for reviewing the Claim Forms and determine if they are complete and valid. *Id.* ¶ 70. Should a claim be incomplete or lacking sufficient documentation, the Claims Administrator may reach out the claimant for supplementation. *Id.* ¶ 71.

### 3.    Requests for Exclusion and Objections

Settlement Class Members will have up to and including sixty (60) days following entry of the Preliminary Approval Order to object to or to submit a request for exclusion from the Settlement. *Id.* ¶ 72. Similar to the timing of the claims process, the timing with regard to objections and requests for exclusion is structured to give Settlement Class Members sufficient time to access and review the Settlement documents—including Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards, which will be filed fourteen (14) days prior to the deadline for Settlement Class Members to object or exclude themselves from the Settlement. *Id.* ¶ 83.

To be excluded from the Settlement, Settlement Class Members must make their request in writing, and must clearly manifest their intent to be excluded from the class. *Id.* ¶ 73. Any Member of the Settlement Class who elects to be excluded shall not (i) be bound by any order or the Judgment; (ii) be entitled to relief under the Settlement Agreement; (iii) gain any rights by virtue of the Settlement Agreement; or (iv) be entitled to object to any aspect of the Settlement Agreement. *Id.* ¶ 74.

Any Settlement Class Member who wishes to object shall file notice of his/her intention to do so and concurrently serve them upon Proposed Settlement Class Counsel. *Id.* ¶ 77. The objection to the Settlement Agreement must include: (1) the objector's full name, address, and current telephone number; (2) the name and number of this case; (3) all grounds for the objection, with factual and legal support for the stated objection, including any supporting materials; (4) the identification of any other objections he/she has filed, or has had filed on his/her behalf, in any other class action cases in the last four years; and (5) the objector's signature. If represented by counsel, the objecting Settlement Class Member must also provide the name and telephone number of his/her counsel. *Id.* ¶ 78.

### C.     Fees, Costs, and Service Awards

The Settlement Agreement calls for a reasonable service award to Plaintiffs in the amount of $3,500 to each Plaintiff. *Id.* ¶ 79. The Service Award is meant to compensate Plaintiffs for their efforts on behalf of the Settlement Class, including maintaining contact with counsel, assisting in the investigation of the case, reviewing the Complaint, remaining available for consultation throughout settlement negotiations, reviewing the Settlement Agreement, and answering counsel's many questions. *Id.* ¶ 80.

After agreeing to the terms of the settlement on behalf of the Class, counsel for Plaintiffs negotiated their fees and costs in an amount not to exceed 30% of the Settlement Fund ($390,000) for fees and $10,000 for costs. *Id.* ¶ 81. Costs and fees are to be paid out of the Settlement Fund as outlined in the Settlement Agreement. *Id.* ¶ 82.

Class Counsel will submit a separate motion seeking attorneys' fees, costs, and Plaintiffs' Service Award prior to filing the Motion for Final Approval of Class Action Settlement, and prior

to Settlement Class Members' deadline to exclude themselves from or object to the Settlement Agreement. *Id.* ¶ 83.

## IV.  LEGAL STANDARD

Federal courts strongly encourage settlements, particularly in class actions and other complex matters where inherent costs, delays, and risks of continued litigation might otherwise outweigh any potential benefit the individual Plaintiff—or the class—could hope to obtain. *See Cohen v. J.P. Morgan Chase & Co*., 262 F.R.D. 153, 157 (E.D.N.Y Sept. 24, 2009) ("There is a strong judicial policy in favor of settlement, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.") (*quoting Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 328 (S.D.N.Y. Feb. 18, 2005) (aff'd in part and vacated in part, 443 F.3d 253 (2d Cir. 2006)). "Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. There is a strong public interest in quieting any litigation; this is 'particularly true in class actions.'" *In re Luxottica Group S.p.A. Sec. Litig.* (*In re Luxottica Group Litig.*), 233 F.R.D. 306, 310 (E.D.N.Y.2006).

In granting preliminary approval, courts direct notice to be provided to class members, who are given the opportunity to exclude themselves from or object to the settlement. *In re Nasdaq Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. Oct. 16, 1997). At the final fairness hearing, settlement class members may be heard by the court prior to its determination of whether to grant final approval of the settlement agreement and dismiss the case. *Id.*

Plaintiffs brings this motion pursuant to Federal Rule Civil Procedure 23(e), under which a class action may not be settled without approval of the Court. Under the current iteration of Rule 23(e), in weighing a grant of preliminary approval district courts must determine whether "giving

notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." The Settlement Agreement here warrants preliminary approval so that persons in the Settlement Class can be notified of the Settlement and provided an opportunity to voice exclusion or objection.

## V.     ARGUMENT

### A.     The Settlement Class Should be Preliminarily Certified

Plaintiffs here seek to certify, for settlement purposes, a class defined as: "All persons who are identified on the Settlement Class List, including all individuals who were sent notification by MMC that their personal information was or may have been compromised in the Data Incident." *Id*. ¶ 49. The Settlement Class is estimated to include approximately 191,752 individuals. *Id*. ¶ 50.

Rule 23(a) sets out four specific prerequisites to class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class. Further, under Rule 23(b)(3), the Court must find that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

In determining whether to preliminarily approve a class action settlement, courts must first determine that the settlement class, as defined by the parties, is certifiable under the standards of Rule 23(a) and (b). "Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006) (concluding in part that "the

District Court conducted a Rule 23(a) and (b) analysis that was properly independent of its Rule 23(e) fairness review"); *see also Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 174 (S.D.N.Y. May 29, 2014).

Because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened: as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id*. Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id*. In this Circuit, courts have found that "[i]n deciding certification, 'courts must take a liberal rather than restrictive approach in determining whether the Plaintiffs satisfies these requirements and may exercise broad discretion in weighing the propriety of a putative class.'" *Cohen v. J.P. Morgan Chase & Co*., 262 F.R.D. at 158, *quoting Steinberg v. Nationwide Mut. Ins. Co.,* 224 F.R.D. 67, 72 (E.D.N.Y. Sept. 4, 2004); *see also Marisol A. v. Giuliani,* 126 F.3d 372, 377 (2d Cir.1997) ("Rule 23 is given a liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in deciding whether to grant certification.). Because the Settlement Class meets all requirements for certification under Rule 23, this Court should grant Plaintiffs' request.

**B.      The Proposed Class is Sufficiently Numerous.**

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). While there is no numerical requirement for satisfying the numerosity requirement, forty class members generally satisfies the numerosity requirement. *Alcantara v. CNA Mgmt., Inc*., 264 F.R.D. 61, 64 (S.D.N.Y. Dec. 8, 2009); *Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 370 (S.D.N.Y. Jan. 29, 2007); *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995). Here, the Parties have identified approximately 191,752 individuals who are a part of the Settlement Class. Klinger Dec. ¶ 50. The large number of persons in the Settlement Class clearly renders joinder impracticable. As such, the numerosity requirement is easily satisfied.

**C.      Questions of Law and Fact Are Common to the Class.**

Commonality requires Plaintiffs to demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The threshold for meeting this prong is not high— commonality does not require that every question be common to every member of the class, but rather that the questions linking class members are substantially related to the resolution of the litigation and capable of generating common answers even where the individuals are not identically situated. *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. at 175 (citing *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011)). A plaintiff may meet the commonality requirement where the individual circumstances of class members differ, but "their injuries derive from a unitary course of conduct by a single system." *Marisol A.*, 126 F.3d at 377 (*per curiam*). "Even a single common legal or factual question will suffice." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162, (S.D.N.Y. Mar. 19, 2014)(quoting *Freeland v. AT & T Corp*., 238 F.R.D. 130, 140 (S.D.N.Y. Aug. 17, 2006)).

Here, the commonality requirement is met because Plaintiffs can demonstrate numerous common issues exist. For example, whether MMC failed to adequately safeguard the records of students, applicants, employees, and others who entrusted MMC with their information, such as Plaintiffs and other Settlement Class Members is a question common across the entire class. MMC's data security safeguards were common across the Class, and those applied to the data of one Settlement Class Member did not differ from those safeguards applied to another.

Other specific common issues include (but are not limited to):

- Whether MMC failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of information compromised in the Data Incident; and

- Whether MMC's conduct rose to the level of negligence.

These common questions, and others alleged by Plaintiffs in their Complaint, are central to the causes of action brought here, will generate common answers, and can be addressed on a class-wide basis. Thus, Plaintiffs have met the commonality requirement of Rule 23.

### D.    Plaintiffs' Claims and Defenses are Typical of the Class.

Typicality under Rule 23(a)(3) is satisfied where "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Securities Litig.,* 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation omitted); *see also Bolanos v. Norwegian Cruise Lines Ltd.,* 212 F.R.D. 144, 155 (S.D.N.Y. Nov. 26, 2002). The crux of the typicality requirement is to ensure that "maintenance of a class action is economical and [that] the named Plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Marisol A.,* 126 F.3d at 376.

Here, Plaintiffs' and Settlement Class Members' claims all stem from the same event—the Data Incident at issue in the Complaint—and the cybersecurity protocols that Defendant had (or did not have) in place to protect Plaintiffs' and Settlement Class Members' data. Thus, Plaintiffs' claims are typical of the Settlement Class Members' claims and the typicality requirement is satisfied.

### E.   Plaintiffs Will Provide Fair and Adequate Representation of the Class.

A representative plaintiff must be able to provide fair and adequate representation for the class. To satisfy the adequacy of representation requirement, plaintiffs must establish that: (1) the there is no conflict of interest between the class representatives and other members of the class; and (2) the plaintiffs' counsel is qualified, experienced, and generally able to conduct the litigation. *Bolanos*, 212 F.R.D. at 156  (quoting *Marisol A.,* 126 F.3d at 378); *see also Amchem*, 521 U.S. at 624.

Here, Plaintiffs' interests are aligned with those of the Settlement Class in that they seek relief for injuries arising out of the same Data Incident. Plaintiffs' and Settlement Class Members' data was all allegedly compromised by Defendant in the same manner. Under the terms of the Settlement Agreement, Plaintiffs and Settlement Class Members will all be eligible for credit monitoring services and monetary relief from the Settlement Fund. Moreover, each of their data will continue to be safeguarded in the future by the security protections MMC has put into place.

Further, counsel for Plaintiffs have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the class. *See* Klinger Dec. ¶¶ 3-26, Ex. A; Moreover, they have put their collective experience to use in negotiating an early-stage settlement that guarantees immediate relief to class members. Thus, the requirements of Rule 23(a) are satisfied.

F.     **Because Common Issues Predominate Over Individualized Ones, Class Treatment is Superior.**

To show that common issues predominate, Plaintiffs must demonstrate that common questions of law or fact relating to the class predominate over any individualized issues. *Bolanos*, 212 F.R.D. at 157. This requirement "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623. The predominance requirement is met when the defendant's wrongful acts involve common practices, or when the defendant has a common defense. *Fox v. Cheminova,* 213 F.R.D. 113, 130 (E.D.N.Y. Feb., 28, 2003) (citing *In re Agent Orange" Prod. Liab. Litig.,* 818 F.2d 145, 166-167 (2d Cir. 1987)). Commonality is regularly met in cases where the focus is on the conduct of a defendant rather than that of individual plaintiff, making it particularly susceptible to common, generalized proof. *Cohen.,* 262 F.R.D. at 159.

In this case, the key predominating questions are whether Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting the personal information of Plaintiffs and the Settlement Class, and whether Defendant breached that duty. The common questions that arise from MMC's conduct predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g., In re Anthem, Inc. Data Breach Litig*., 327 F.R.D. 299, 312–315 (N.D. Cal. Aug. 15, 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *see also Hapka v. CareCentrix, Inc.*, Case No. 2:16-cv-02372, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case,

stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, Case No. 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class).

Additionally, because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

The resolution of nearly 200,000 claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating tens of thousands of individual data breach cases arising out of the *same* Data Incident.

The common questions of fact and law that arise from Defendant's conduct predominate over any individualized issues, a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Accordingly, the class should be certified for settlement purposes.

### G.        The Terms of the Settlement are Fair, Reasonable, and Adequate

After determining that certification of the Settlement Class is appropriate, the court must determine whether the Settlement Agreement itself is worthy of preliminary approval and of providing notice to the class. Under the current iteration of the Rule, notice is only justified where the parties can show that the court will "likely" be able to approve the proposed settlement. Fed. R. Civ. P. 23(e)(1)(i). Thus, consideration on preliminary approval requires an initial assessment of factors to be fully considered on final approval, namely that (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . .; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). In determining whether the relief provided is adequate, Courts must consider: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D. N.Y. Jan. 28, 2019); Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv).

Before the 2018 revisions to Rule 23(e), the Second Circuit had developed its own list of factors for consideration, finding preliminary approval of a proposed class action settlement is warranted where it is the result of "serious, informed, non-collusive ("arm's length") negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies. . . and where the settlement appears to fall within the range of possible approval." *See Cohen*, 262 F.R.D. at 157; *In re Nasdaq Antitrust Litig.,* 176 F.R.D. at 102; *Bourlas v. Davis Law Assocs.,* 237 F.R.D.

345, 354 (E.D.N.Y. Aug. 30, 2006); *see also Manual for Complex Litigation*, § 30.41 (3d ed.

1995). In making this determination, Second Circuit Courts considered nine *Grinnell* factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 88 (S.D.N.Y. June 10, 2009) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (abrogated on other grounds)).

  In reviewing the Settlement for substantive fairness, reasonableness, and adequacy, Plaintiffs will examine the Settlement for satisfaction of both the Rule 23 factors, as well as the *Grinnell* factors historically considered by Second Circuit Courts in order to demonstrate that the Settlement falls well within the "range of possible approval," is "likely" to be granted final approval and warrants preliminary approval so that notice can issue to the class.

  **1.  The Settlement Warrants Preliminary Approval Under Rule 23(e).**

    *a.  The Plaintiffs and Proposed Settlement Class Counsel have adequately represented the Settlement Class*

  Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representatives and Class Counsel have adequately represented the class, including the nature and amount of discovery undertaken in the litigation. *See* Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Committee Notes. Here, Plaintiffs have maintained contact with counsel, assisted in the investigation of the case, reviewed the Complaint, remained available for consultation throughout settlement negotiations, reviewed the Settlement Agreement, and answered counsel's many questions. Klinger Dec. ¶ 80. Plaintiffs do not have any conflicts with the proposed class and have adequately represented Settlement Class Members in the litigation.

Proposed Settlement Class Counsel has also adequately represented the class. As discussed *supra* at Section V.A.4, Co-Lead Counsel has extensive experience in class action litigation generally, and data breach cases in particular. *See* Klinger Dec. ¶ 3-26, Ex. A; In negotiating the Settlement, Co-Lead Counsel was thus well positioned and able to benefit from years of experience and familiarity with the factual and legal bases for this case.

Although formal discovery had not been completed, such discovery is not required for a settlement to be adequate. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2007) (finding "although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information"); *Castagna v. Madison Square Garden, L.P.*, No. 09-cv-10211 (LTS)(HP), 2011 WL 2208614, *6 (S.D.N.Y. June 7, 2011) (approving settlement where no formal discovery had taken place but the parties had "completed enough investigation to agree on a reasonable settlement); *Willix v. Healthfirst, Inc.*, No. 07–cv–1143, 2011 WL 754862 at *4 (E.D.N.Y. Feb. 18, 2011). ("The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating") (internal quotations omitted). "In fact, informal discovery designed to develop a settlement's factual predicate is encouraged because it expedites the negotiation process and limits costs which could potentially reduce the value of the settlement." *Castagna*, 2011 WL 2208614, at *6 (citing *Jones v. Amalgamated Warbasse Houses, Inc.*, 97 F.R.D. 355, 360 (S.D.N.Y.1982)) ("Although little formal discovery has occurred, the parties freely exchanged data during settlement talks. In view of the way this speeds the negotiation process, informal 'discovery' is to be encouraged").

Here, proposed Class Counsel carried out a thorough investigation of the claims, and settlement negotiations included a significant exchange of information, allowing both Parties to evaluate the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses. Klinger Dec.

¶ 27. Accordingly, Plaintiffs and Class Counsel here have adequately represented the Class, and this factor weighs in favor of preliminary approval.

> **b.     The Settlement was negotiated at arms' length and is absent of any collusion.**

Rule 23(e)(2)(B) requires procedural fairness, as evidenced by the fact that "the proposal was negotiated at arm's length." If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, "the Settlement will enjoy a presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000); *D'Amato*, 236 F.3d 78; *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019).

Here, both Parties were represented by experienced counsel, and the settlement was only reached after months of arm's length negotiations. There is no evidence of collusion. Accordingly, this factor weighs in favor of preliminary approval.

> **c.     The relief provided for the class is adequate.**

Fed. R. Civ. P. 23(e)(2)(c) requires examination of the relief provided by the Settlement. The Settlement negotiated on behalf of the class provides for significant relief. Valued at over $1,300,000, the Settlement provides for up to $7,500 per Settlement Class Member in monetary relief, including reimbursement of out-of-pocket costs and extraordinary losses and compensation for lost time, each Settlement Class Member is eligible to claim one-year of credit monitoring and identity theft restoration services at Defendant's cost. Additionally, MMC has undertaken specific data security enhancements ensuring Plaintiffs' and Settlement Class Member's data is better protected in the future.

The Settlement terms are consistent with, and in fact better than, agreements in other similar data breach cases, in the Southern District of New York and across the country. *See e.g.,*

*Baksh et al. v. IvyRehab Network, Inc*. No. 7:20-CV-01845 (S.D.N.Y.) (providing up to $75 per class member out of pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with payments capped at $75,000 in aggregate; credit monitoring for claimants; and equitable relief in the form of data security enhancements); *Rutledge et al v. Saint Francis Healthcare System*, No. 1:20-cv-00013-SPC (E.D. Mo.) (data breach settlement providing up to $280 in value to Settlement Class Members in the form of: reimbursement up to $180 of out of pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements).

As the relief provided is well within the range of possible approval when considered in light of the Rule 23(e)(2)(c)(i)-(iv) factors, preliminary approval should be granted.

i.     The costs, risks, and delay of trial and appeal are great.

The relief provided for by the Settlement Agreement is significant, especially in light of the costs, risks, and delay of further litigation. The Settlement Agreement guarantees Settlement Class Members the opportunity to make a claim for up to $7,500 each, *plus* one-year of three bureau credit monitoring services. The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiffs strongly believe in the merits of the case, they also understand that Defendant will assert a number of potentially case-dispositive defenses. Proceeding with litigation would open up Plaintiffs to the risk inherent in trying to achieve and maintain class certification, and prove liability—both factors considered under the test for final approval established by *Grinnell*.

Moreover, due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp*., No. 08 Civ. 6060 (RMB)(RLE),

2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met— and one that been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig*., 293 F.R.D. 21 (D. Me. 2013).

Plaintiffs dispute the defenses it anticipates MMC will likely assert—but it is obvious that her success at trial is far from certain. In fact, Defendant has already indicated their intent to file a Motion to Dismiss on multiple grounds. *See* ECF 30. Through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

    ii. The proposed method of distributing relief, including the method of processing class-member claims, is objective, efficient, and fair.

As described in detail in Section III.B, *supra*, the Claims Administrator will be responsible for assessing claims and distributing relief. Klinger Dec. ¶ 70. Class Members will have ninety (90) days from the completion of Notice to complete and submit a claim form. *Id.* ¶ 67. The Claims Administrator will be responsible for evaluating the claims and the evidence submitted, requesting additional documentation and/or information where the claim form is insufficient, and awarding funds. *Id.* ¶ 70. The procedure provided for by the Settlement Agreement is objective, efficient, and fair.

    iii. The attorneys' fees, costs and service awards that Plaintiffs will request this Court approve are reasonable.

By separate motion, Plaintiffs will seek Court approval of attorneys' fees in the amount of $390,000 (30% of the Settlement Fund), costs in the amount of $10,000 and a service award for Plaintiffs in the amount of $3,500 to each Plaintiff. Klinger Dec. ¶ 83. These requests are well within the range of those regularly accepted by Second Circuit courts. *See Strougo ex rel. Brazilian*

*Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (finding 33% in attorneys'

fees alone to be reasonable)(collecting cases); *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 481-

83 (S.D.N.Y. 2013) (granting an award of $5,000 to $7,500 to Plaintiffs); *In re Polaroid ERISA*

*Litig.*, 2007 WL 2116398, at *3 (S.D.N.Y. July 19, 2007) (granting award of $10,000 to named

plaintiffs); *Dornberger v. Metropolitan Life Ins. Co*., 203 F.R.D. 118 (S.D.N.Y. 2001) (noting in

class actions representative plaintiff awards from $2,500 to $85,000 are commonly accepted).

While Plaintiffs will fully brief their request by separate motion prior to Settlement Class

Members' deadline to object to or exclude themselves from the Settlement, the attorneys' fees,

costs, and service awards sought clearly fall within the range of possible approval.

    iv. <u>No additional agreement related to the settlement exist</u>.

   There are no additional agreements that require identification and/or examination under

Rule 23(e)(3).

    ***d.*** ***The Settlement Treats Class Members Equitably to Each Other.***

    Under the terms of the Settlement, the Class Members will be treated equitably to each

other. Every Settlement Class Member has the opportunity to submit a claim for up to $7,500 in

monetary compensation, and for one-year of credit monitoring services. Accordingly, and because

the Settlement Agreement meets all of the required criteria under Rule 23 (e), preliminary approval

should be granted.

   **2.** **The Settlement Warrants Preliminary Approval After Consideration of the *Grinnell* Factors.**

   Prior to the revisions to Rule 23, the Second Circuit relied upon the nine factors set forth

in *City of Detroit v. Grinnell Corp.* to guide its assessment of whether a class action settlement

should be approved. *See City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974)

(abrogated on other grounds). While preliminary approval requires only an initial evaluation of the

settlement and Rule 23 has been since amended, the factors remain instructive and have been used by Second Circuit Courts in evaluating settlements even after 2018. *See Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP,* 333 F.R.D. 314, 320 (S.D.N.Y. 2019) (considering both the Rule 23 and *Grinnell* factors on consideration of a motion for preliminary approval).

*First,* the complexity, expense, and likely duration of the litigation support preliminary approval. As discussed *supra*, at Section V(B)(1)(c)(ii), continued litigation is likely to be complex, long, and expensive. In fact, Defendant has already indicated their intention to file a Motion to Dismiss [ECF 30], which Plaintiffs would have to survive to even begin litigation. Plaintiffs would then likely need to prevail on summary judgment and both gain and maintain class certification through trial. Additionally, the amount of data expert analysis and testimony needed to bring this case to trial would increase costs significantly, as well as add to the length of time needed to resolve the matter. Thus, this factor weighs in favor of approval.

*Second,* the reaction of class members is not yet apparent. While the Representative Plaintiffs have reviewed and approved the Settlement Agreement, other Settlement Class Members have not yet had the same opportunity. As such, this factor is appropriately examined after Notice has issued to the Class and Settlement Class Members have had the opportunity to make a claim, exclude themselves, or object to the Settlement.

*Third,* the stage of the proceedings and the amount of discovery completed supports settlement approval. While the case is early in litigation, the Parties' negotiations included an exchange of information sufficient to allow both Parties to assess the claims and defenses at issue. Early settlement, whereas here, the Parties are adequately informed to negotiate, is to be commended. *Castagna*, 2011 WL 2208614, at *6 (commending Plaintiffs' attorneys for negotiating early settlement an avoiding hundreds of hours of legal fees); *In re Interpublic Sec.*

*Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case). As discussed more fully above at Section V(B)(1)(a), the Parties had more than enough information to adequately evaluate the claims and defenses at issue. As such, this factor weighs in favor of approval.

<u>*Fourth, Fifth, and Sixth*</u>, the risks of establishing liability, damages, and maintaining a class through trial weigh in favor of Settlement Approval. Although Plaintiffs firmly believe in the merits of the case, litigating in such an evolving area of law involves significant risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig*., 171 F.R.D. 104, 126 (S.D.N.Y. 1997). "If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Id.* (quoting *In re Ira Haupt & Co*., 304 F. Supp. 917, 934 (S.D.N.Y. 1969)); *see also Velez v. Majik Cleaning Serv*., *Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007) (noting "there are always risks in proceeding to trial and these risks are compounded by virtue of the nature of class action litigation.") (citing *Frank v. Eastman Kodak Co.*, 228 F.R.D. at 185 (W.D.N.Y. 2005)). While Plaintiffs remain confident in the strength of their claims, additional litigation leaves open the risk that they will be unable to meet the burdens of establishing liability, proving causation and damages, and gaining and maintaining certification through trial. Thus, these factors weigh in favor of Settlement approval.

<u>*Seventh*</u>, the ability of Defendant to withstand a greater judgment is not at issue here. In fact, even if Defendant could withstand a greater judgment, its ability to do so, "standing alone, does not suggest that the settlement is unfair." *Eastman Kodak Co.*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). Thus, this factor is neutral and does not preclude the Court from granting preliminary approval.

*Eighth and Ninth,* the Settlement provides for substantial relief for the Settlement Class, especially in light of all attendant risks of litigation. The Settlement establishes a $1,300,000 Settlement Fund and guarantees Settlement Class Members up to $7,500 per person in monetary relief and provides them with one-year of credit monitoring and data security measures implemented by Defendant. The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain. Again, while Plaintiffs strongly believe in the merits of their case, they also understand that Defendant will assert a number of potentially case-dispositive defenses. Proceeding with litigation would open Plaintiffs up to the risks inherent in trying to achieve and maintain class certification and prove liability and damages. Through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

The *Grinnell* factors weigh in favor of approval of the Settlement—and certainly at least support preliminary approval. As such, this Court should grant Plaintiffs' motion and allow notice to issue.

### D.   **The Proposed Claims Administrator Will Provide Adequate Notice.**

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed Settlement. For classes like this one, certified under Rule 23(b)(3), parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2)(B) specifically permits notice to be sent by "U.S. Mail, electronic mail, or other appropriate means."

The Notice Plan negotiated here is the best practicable. The Notice plan calls for Notice to issue via U.S. mail to the addresses MMC has on record, and that it used to provide Settlement Class Members with initial notice of the Data Incident. Klinger Dec. ¶ 63.

"The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 113–14 (2d Cir.2005). There are no rigid rules for determining whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice merely must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Id.* at 114. Second Circuit Courts have explained that a Rule 23 Notice will satisfy due process where it describes the terms of the settlement generally and informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. *Charron v. Pinnacle Group N.Y. LLC*, 874 F. Supp. 2d 179, 191 (S.D.N.Y. 2012) (internal citations omitted). The notice must also "contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977); *Achtman v. Kirby, McInerney & Squire*, LLP, 464 F.3d 328, 338 (2d Cir. 2006).

The substance of the Notice here is designed to be clear and concise and inform Settlement Class Members of the general terms of the Settlement, the allocation of attorneys' fees, and provide specific information regarding the date, time, and place of the final approval hearing. *See* Agr., Exs. A-C. As such, the proposed Notice Plan should be approved.

## VI.     CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable settlement that guarantees Settlement Class Members significant relief. The Settlement Agreement is well within the range of reasonable results, and an initial assessment of both Rule 23 and the *Grinnell* factors demonstrates that final approval is likely, and Notice should issue to the class. For these and the above reasons, Plaintiffs respectfully request this Court certify the class for settlement purposes and grant her Motion for Preliminary Approval of Class Action Settlement.

Dated: March10, 2023                                       Respectfully submitted,

                                                           */s/ Gary M. Klinger*
                                                           Gary M. Klinger (*admitted pro hac vice*)
                                                           **MILBERG COLEMAN BRYSON**
                                                           **PHILLIPS GROSSMAN, PLLC**
                                                           227 W. Monroe Street, Suite 2100
                                                           Chicago, IL 60606
                                                           Telephone: 866-252-0878
                                                           gklinger@milberg.com

                                                           *Attorneys for Plaintiffs and the Class*

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on March 10, 2023, caused a true and correct copy of the foregoing document to be filed electronically with the Clerk of the Court using this Court's CM/ECF system, which will automatically send notice of such filing to all counsel of record.

*/s/ Gary M. Klinger*
Gary M. Klinger
