# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **PATRICK REYNOLDS, DANIEL LEWIS, LUCIA MARANO, KRISTEN FRANCE, ABBEY ABRECHT and JAHIDAH DIAAB,** individually and on behalf of all others similarly situated**,** | Case No. 1:22-cv-06846 |
| Plaintiffs, | JUDGE LORNA G. SCHOFIELD |
| v. | |
| **MARYMOUNT MANHATTAN COLLEGE,** | |
| Defendant. | |

---

**DECLARATION OF GARY M. KLINGER IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT**

---

I, Gary M. Klinger being competent to testify, make the following declaration:

1.  I am an adult, I have personal knowledge of the facts stated herein, and I am competent to

    so testify.

2.  I am currently a partner of the law firm Milberg Coleman Bryson Phillips Grossman, PLLC

    ("Milberg"). I am counsel at Milberg for the proposed Settlement Class. I submit this

    declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class

    Action Settlement ("Motion for Preliminary Approval"). Except as otherwise noted, I have

    personal knowledge of the facts set forth in this declaration and could testify competently

    to them if called upon to do so. A true and correct copy of the Settlement Agreement

    ("Settlement Agreement") is attached hereto as **<u>Exhibit A</u>**. Included with the Agreement

    are true and correct copies of following sub-exhibits:

Sub-Exhibit 1:      **Claim Form**

Sub-Exhibit 2:      **Long Notice**

Sub-Exhibit 3:      **Short Notice**

Sub-Exhibit 4:      **[Proposed] Preliminary Approval Order**

Sub-Exhibit 5:      **[Proposed] Final Order and Judgment**

## Counsel Qualifications

3. I have extensive experience prosecuting complex class actions, especially in data breach litigation. I have been licensed to practice law in the State of Illinois since 2010, am a member of the bars of numerous federal district and appellate courts, and have decades of litigation and class action experience.

4. I have extensive experience in class action litigation generally and data breach class actions in particular. My experience, and that of my law partners, is described below.

5. Milberg Attorneys have served as Lead Counsel, Co-Counsel, or Class Counsel on hundreds of complicated and complex class actions. *See* Milberg Firm Resume, **Exhibit B.**

6. These cases recently include cutting-edge litigation, including: *In re Dealer Management Systems Antitrust Litigation*, Case No. 1:18-cv-00864 (N.D. Ill. 2018) (appointed co- lead counsel; partial settlement of $29.5 million, case on-going); *In re Seresto Flea and Tick Collar Marketing, Sales Practices, and Products Liability Litigation,* Case No. 1:21-cv-04447 (N.D. Ill. 2021) (appointed co-lead counsel; case on-going); and *Carder v. Graco Children's Products, Inc. et al.*, Case No. 2:20-cv-00137 (N.D. Ga. 2020) (appointed interim co-lead counsel; case on-going)

7. With respect to privacy cases, Milberg is presently litigating more than fifty (50) cases across the country involving violations of the Telephone Consumer Protection Act, 47

U.S.C. § 227 et seq., privacy violations, data breaches, and ransomware attacks. Milberg Attorneys have served as Lead Counsel, Co-Counsel, or Class Counsel on data breach and privacy litigations, including *In re Blackbaud, Inc. Consumer Data Security Breach Litigation*, MDL 2972, Case No. 3:20-mn-02972 (D.S.C. 2020) (appointed co-lead counsel; case on-going).

8. Milberg Attorneys have also participated in other data breach and privacy litigation, recently, which includes: *Veiga, et al. v. Respondus, Inc*., Case No., 1:21-cv-02620 (N.D. Ill. 2021); *Dickerson v. CDPQ Colonial Partners, L.P., et. al,* Case No. 1:21-cv-02098 (N.D. Ga. 2021); *In re Wawa, Inc. Data Security Litigation,* 2:19-cv-06019 (E.D. Pa. 2019); *Whalen v. Facebook, Inc*., Case No.4:20-cv-06361 (N.D. Cal. 2020); and *K.F.C. v. Snap, Inc.,* No. 21-2247 (7th Cir. 2021).

9. Milberg Attorneys were Co-Lead Counsel in *In re Department of Veterans Affairs (VA) Data Theft Litigation,* No. 1:06-MC-00506, 2007 WL 7621261 (D.D.C. Nov. 16, 2007) (unlawful disclosure of PPI of 28.5 million military veterans and active-duty personnel; $20 million settlement fund).

10. Milberg Attorneys were court-appointed Lead Counsel in *In re Google Buzz Privacy Litigation,* No. C 10-00672 JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011) ($10 million settlement fund in case arising for unauthorized disclosure or personal information).

11. Milberg Attorneys have also served as Lead Counsel, Co-Counsel, or Class Counsel on dozens of class actions ranging from defective construction materials, e.g., defective radiant heating systems, siding, shingles, and windows, to misrepresented and recalled products, *e.g.,* dog food, prenatal vitamins, to environmental incidents, such as the Exxon Valdez, BP Oil Spill.

12. It is noteworthy that, just in the time since 2020 through the present, I (either individually, or as a member of the law firms in which I have been a partner during that timeframe) have been appointed class counsel in a number of data breach and/or data privacy cases, including, but not limited to, the following:

a. *Kenney et al. v. Centerstone of America, Inc.*, Case No. 3:20-cv-01007 (M.D. Tenn.) (appointed co-class counsel in data breach class action settlement involving over 63,000 class members; final approval granted Aug. 2021);

b. *Baksh v. Ivy Rehab Network, Inc.*, Case No. 7:20-cv-01845-CS (S.D.N.Y.) (class counsel in a data breach class action settlement; final approval granted Feb. 2021);

c. *Mowery et al. v. Saint Francis Healthcare System*, Case No. 1:20-cv-00013-SRC (E.D. Mo.) (appointed class counsel; final approval granted Dec. 2020);

d. *Chatelain et al. v. C, L and W PLLC d/b/a Affordacare Urgent Care Clinics*, Case No. 50742-A (42nd District Court for Taylor County, Texas) (appointed class counsel; settlement valued at over $7 million; final approval granted Feb. 2021);

e. *Jackson-Battle v. Navicent Health, Inc.,* Civil Action No. 2020-CV-072287 (Superior Court of Bibb County, Georgia) (appointed class counsel in data breach case involving 360,000 patients; final approval granted Aug. 2021);

f. *Bailey v. Grays Harbor County Public Hospital District et al.*, Case No. 20-2-00217-14 (Grays Harbor County Superior Court, State of Washington) (appointed class counsel in hospital data breach class action involving approximately 88,000 people; final approval granted Sept. 2020);

g. *Richardson v. Overlake Hospital Medical Center et al.*, Case No. 20-2-07460-8 SEA (King County Superior Court, State of Washington) (appointed class counsel in data breach case, final approval granted September 2021);

h. *Klemm et al. v. Maryland Health Enterprises Inc.*, Case No. C-03-CV-20-022899 (Circuit Court for Baltimore County, Maryland) (appointed class counsel; final approval granted November 2021);

i. *In re: GE/CBPS Data Breach Litigation*, 1:2020-cv-02903, Doc. 35 (S.D.N.Y.) (appointed co-lead counsel in nationwide class action);

j. *Nelson, et al. v. Idaho Central Credit Union*, No. CV03-20-00831 (Bannock County, Idaho) (appointed co-lead counsel in data breach class action involving

17,000 class members; granted final approval of settlement valued at $3.3 million);

k.  *In Re: Canon U.S.A. Data Breach Litigation*, Master File No. 1:20-cv-06239-AMD-SJB (E.D.N.Y.) (appointed co-lead counsel);

l.  *Suren et al. v. DSV Solutions, LLC*, Case No. 2021CH000037 (Circuit Court for the Eighteenth Judicial Circuit of DuPage County, Illinois) (appointed Settlement Class Counsel, final approval granted Sept. 27, 2021);

m.  *Chacon v. Nebraska Medicine*, Case No. 8:21-cv-00070-RFR-CRZ (D. Neb.) (appointed class counsel in data breach settlement, final approval granted Sept. 2021);

n.  *Aguallo et al v. Kemper Corporation et al.,* Case No. 1:21-cv-01883 (N.D. Ill.) (appointed Co-lead Counsel, final approval granted of $17.1 million class settlement);

o.  *In re: Herff Jones Data Breach Litigation*, Master File No. 1:21-cv-1329-TWP-DLP (S.D. Ind.) (appointed co-lead counsel in data breach involving over 1 million persons; preliminary approval of $4.35 million settlement granted Jan. 2022);

p.  *In Re: CaptureRx Data Breach Litigation*, No. 5:21-cv-00523-OLG (W.D. Tex.) (appointed co- lead counsel in data breach case involving over 2.4 million class members; preliminary approval of $4.75 million settlement granted Feb. 2022);

q.  *In re Arthur J. Gallagher Data Breach Litigation*, No. 1:21-cv-04056 (N.D. Ill.) (appointed co- lead counsel in data breach case involving over 3 million class members);

r.  *Heath v. Insurance Technologies Corp.*, No. 21-cv-01444 (N.D. Tex.) ($11 million settlement for a major data breach involving more than 4 million consumers);

s.  *Hough v. Navistar, Inc.*, Case No.: 2021L001161 (Ill. 18th Jud. Cir. Crt., DuPage Cnty.); (appointed co-lead class counsel; final approval granted May 2022);

t.  *Clark v. Mercy Hospital, et al*, Case No. CVCV082275 (Iowa Dist. Crt, Johnson Cnty.) (appointed class counsel; final approval granted July 2022);

u.      *Myschka, et al v. Wolfe Clinic, P.C. d/b/a Wolfe Eye Clinic*, (Iowa Dist. Crt., Marshall Cnty.) (appointed class counsel; final approval granted June 2022);

v.      *Devine, et al v. Health Aid of Ohio, Inc.,* (Ohio Court of Common Pleas, Cuyahoga Cnty.) (appointed class counsel; final approval granted September 2022);

w.      *Davidson v. Healthgrades Operating Company, Inc.,* Case No. 1:21-cv-01250-RBJ (D. Colo.), (appointed class counsel; final approval granted August 2022);

x.      *Bodie v. Capitol Wholesale Meats, Inc.*, Case No. 2022CH000020 (Ill. 18th Jud. Cir. Crt., DuPage Cnty.) (appointed class counsel; final approval granted March 2022);

y.      *Culp v. Bella Elevator LLC*, Case No. 2021-CH-00014 (Ill. 10th Jud. Cir. Crt., Peoria Cnty.) (appointed class counsel; final approval granted May 2022);

z.      *Cain, et al. v. OSF Healthcare*, Case No. 21-L-00231 (Circuit Court for the Tenth Judicial Circuit of Peoria County, Illinois) (appointed settlement class counsel; preliminary approval granted September 2022);

aa.     *Nelson, et al. v. Bansley & Kiener*, Case No. 2021-CH-06274 (Ill. Cir. Ct., Cook Cnt'y) (appointed class counsel; preliminary approval granted August 2022);

bb.     *Steen v. The New London Hospital Association, Inc.,* Civil Action No. 217-2021- CV-00281 (Merrimack Superior Court, New Hampshire) (appointed class counsel; preliminary approval granted September 8, 2022);

cc.     *Summers II v. Sea Mar Community Health Ctrs.*, Case No. 22-2-00773-7 SEA (Wash. Sup. Ct., King Co.) (appointed class counsel; preliminary approval granted August 2022);

dd.     *In re Forefront Data Breach Litigation*, Master File No. 1:21-cv-00887-LA (E.D. Wisc.) (appointed settlement class counsel; preliminary approval granted October 2022);

ee.     *Engle v. Talbert House*, Case No.: A2103650 (Court of Common Pleas, Hamilton County, Ohio) (appointed class counsel; preliminary approval granted August 2022);

ff.     *Cain et al. v. OSF Healthcare*, Case No. 21-L-00231 (Tenth Judicial Circuit, Peoria County, Illinois (appointed Class Counsel; preliminary approval granted September 1, 2022);

gg.    *Henderson et al. v. San Juan Regional Medical Center*, Case No. D-1116-CV-2021-01043 (11th Jud. Dist. Ct., County of San Juan, NM) (appointed class counsel; preliminary approval granted October 13, 2022);

hh.    *Cathy Shedd v. Sturdy Memorial Hospital, Inc.*, Civ. Action No: 2173 CV 00498 (Mass. Sup. Ct. Dept.) (appointed class counsel; preliminary approval granted October 17, 2022), and;

ii.    *Hawkins et al. v. Startek, Inc.*, Case No. 1:22-cv-00258-RMR-NRN (USDC CO)(appointed class counsel; preliminary approval granted October 21, 2022).

13. I have been appointed by state and federal courts to act as Class Counsel for millions of consumers and recovered hundreds of millions of dollars for consumers throughout the country. Presently, I am lead or co-lead counsel in more than thirty (30) active class action lawsuits pending in state and federal courts across the country.

14. Indeed, I recently obtained final approval of a class-wide settlement for a major data breach class action involving more than six million consumers. See *Carrera Aguallo v. Kemper Corp.*, Case No. 1:21-cv-01883 (N.D. Ill. Oct. 27, 2021) (where I, as appointed co-lead counsel, obtained preliminary approval of a $17.6 million dollar settlement to resolve similar data breach class action claims against Kemper Corporation in a case involving more than six million class members).

15. I presently serve as one of two Court-appointed Lead Counsel in the data breach case, *In re Canon U.S.A. Data Breach Litigation,* No. 1:20-cv-06239-AMD-SJB (S.D.N.Y. filed Dec. 23, 2020).

16. I was also appointed Co-Lead Counsel in the data breach case, *In re: Herff Jones Data Breach Litigation,* Master File No. 1:21-cv-1329-TWP-DLP (S.D. Ind.), which involved more than one million class members and was finally approved on a class-wide basis for a $4.35 million settlement.

17. I also served as co-lead counsel in the consolidated data breach litigation styled, *In Re: CaptureRx Data Breach Litigation,* No. 5:21-cv-00523-OLG (W.D. Tex.), which involved more than 2.4 million class members and was finally approved on a class-wide basis for a $4.75 million settlement.

18. I was also recently as appointed co-lead counsel to represent more than three million class members in another major data breach class action in the Seventh Circuit. See *In re Arthur J. Gallagher Data Breach Litig.*, No. 1:21-cv-04056 (N.D. Ill.).

19. I have successfully litigated privacy class actions through class certification. *In Karpilovsky v. All Web Leads, Inc.,* No. 17 C 1307, 2018 WL 3108884, at *1 (N.D. Ill. June 25, 2018), where I certified, over objection, a nationwide privacy class action involving more than one million class members.

20. In a recent nationwide privacy class settlement hearing in the U.S. District Court for the Northern District of California, Judge Richard Seeborg personally commended me for having achieved "quite a substantial recovery for class members." Judge Seeborg further stated he could not recall any class action case where "the amounts going to each class member were as substantial" as that obtained by me (and my co-counsel).

21. In addition to concentrating my practice on class action litigation involving consumer, privacy, and product liability matters, I also make substantial efforts to stay apprised of the current law on these issues. In recent years, I have attended various legal training seminars and conferences, such as the dri™ conference for Class Actions, The Consumer Rights Litigation Conference and Class Action Symposium, as well as attended various seminars offered by Strafford on class action issues.

22. I am also a member of the International Association of Privacy Professionals and a Certified Information Privacy Professional (CIPP/US).

23. I graduated from the University of Illinois at Urbana-Champaign in 2007 (B.A. Economics), and from the University of Illinois College of Law in 2010 (J.D., cum laude). While at the U of I College of Law, I was a member of, and ultimately appointed as the Executive Editor for the Illinois Business Law Journal. My published work includes: *The U.S. Financial Crisis: Is Legislative Action the Right Approach?*, Ill. Bus. L. J. (Mar. 2, 2009).

24. I am presently pursuing my Master of Laws (LLM) in Data Privacy and Cybersecurity from the University of Southern California Gould School of Law.

25. I became licensed to practice law in the State of Illinois in 2010 and am a member of the Trial Bar for the Northern District of Illinois, as well as the U.S. Bankruptcy Court for the Northern District of Illinois. Additionally, I am admitted to practice in federal courts across the country, including, but not limited to, the U.S. District Courts for the District of Colorado, the Central District of Illinois, the Northern District of Illinois, Northern District of Indiana, Southern District of Indiana, Eastern District of Michigan, and the Eastern District of Texas.

26. My years of experience representing individuals in complex class actions— including data breach actions—contributed to an awareness of Plaintiffs' settlement leverage, as well as the needs of Plaintiffs and the proposed Settlement Class. I believe that our clients would ultimately prevail in the litigation on a class-wide basis. However, I am also aware that a successful outcome is uncertain and would be achieved, if at all, only after prolonged, arduous litigation with the attendant risk of drawn-out appeals.

27. In the sections that follow, I will detail the hard-fought negotiations that resulted in the Agreement now before the Court for preliminary approval. As described below, the Settlement provides significant relief to Members of the Settlement Classes, and I strongly believe that it is favorable for the Settlement Class. It is, in the opinion of the undersigned, fair, reasonable, adequate, and in the best interests of the Settlement Class Members, and is and worthy of preliminary approval.

**Initial Investigation and Communications**

28. On or about November 12, 2021, Defendant Marymount Manhattan College ("Defendant" or "MMC") was the victim of a data incident in which unauthorized parties gained access to and obtained data from MMC's network, potentially compromising the personally identifiable information ("PII") of 191,752 individuals. (hereinafter, the "Data Incident").

29. Plaintiffs alleged the following facts in Plaintiffs' Consolidated Class Action Complaint:

    a.    Defendant is a private college located in New York, New York;[1]

    b.    In the ordinary course of doing business with Defendant, Defendant collects sensitive PII from consumers such as: names, addresses, phone numbers, driver's license numbers, social security numbers, and dates of birth;[2]

    c.    In the course of collecting PII from consumers, including Plaintiffs, Defendant promises to provide confidentiality and security for personal information, including by promulgating and placing privacy policies on its website;[3]

    d.    Defendant began notifying consumers and state Attorneys General about a data breach that occurred on November 12, 2021, on or about August 3, 2022;[4]

---

[1] Consolidated Class Action Compl. ("Compl."), at Doc. 22, ¶ 40.
[2] Compl. ¶ 2.
[3] Compl. ¶¶ 3-5.
[4] Compl. ¶ 8.

e.    According to the Notice of Data Breach letters and letters sent to state Attorneys General, MMC "experienced a network disruption" and filed on its network were accessed and acquired by an unknown actor.[5]

30.    Defendant reported its forensic investigation and internal investigation efforts confirmed that Plaintiffs and Class Members' Private information, including but not limited to full names and Social Security numbers) was present and potentially stolen by the unauthorized person at the time of the Data Incident.[6]

31.    MMC notified 191,752 individuals that there PII had been impacted by the Data Incident.

32.    After receiving notice that their PII had been impacted by the Data Incident, Plaintiffs retained Counsel. After an internal investigation, Plaintiffs filed complaints in this matter. Plaintiffs' cases were later combined into the instant matter and this Consolidated Class Action Complaint was filed on October 24, 2022.

## PROCEDURAL POSTURE

33.    On August 11, 2022, Plaintiffs Patrick Reynolds and Daniel Lewis filed the original class action complaint in the Southern District of New York. Plaintiffs Lucia Marano, and Jahidah Diaab subsequently filed complaints on October 6, 2022. The Court consolidated these cases and on October 24, 2022, Plaintiffs filed their Consolidated Class Action Complaint, alleging eight causes of action:[7]

a.    Negligence;

b.    Negligence *Per Se*;

---

[5] Compl. ¶ 8.
[6] Compl. ¶ 16.
[7] Complaint, Doc. 1 ("Compl.").

c.   Unjust enrichment;

d.   Breach of express contract;

e.   Breach of implied contract;

f.   Violations of the New York General Business Law Sec. 349;

g.   Invasion of Privacy; and

h.   Declaratory Judgment.[8]

34.   The Complaint sought certification of a single national class.[9]

35.   Plaintiffs allege that the Data Incident put them at risk of imminent, immediate and continuing risk of harm from fraud and identity theft. They also allege that they, and other class members, have been forced to spend time dealing with the effects of the Data Incident.[10]

36.   Plaintiffs sought equitable relief enjoining Defendant from engaging in the wrongful conduct complained of and compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety.[11]

37.   Plaintiffs further sought an order requiring Defendant to provide credit monitoring services or funds for the purchase of credit monitoring services to herself and the rest of the class.[12]

38.   Finally, Plaintiffs sought an award of actual, compensatory, and statutory damages as well as attorneys' fees and costs, and any such further relief as may be deemed just and proper.[13]

39.   Soon after Plaintiffs filed their Consolidated Complaint, the Parties, by and through their respective counsel, began discussing the possibility for early resolution.

---

[8] Compl. ¶¶ 244-346.
[9] Compl. ¶ 228.
[10] Compl. ¶¶ 136-226.
[11] Compl. ¶ 346
[12] *Id*.
[13] *See* Comp. Prayer for Relief

40.     The Parties agreed that an early resolution of the above-captioned litigation (the "Litigation") was warranted.

41.     On November 9, 2022, the Parties jointly wrote the Court to inform it of the Settlement and seek a stay until January 31, 2023. The parties subsequently requested additional extensions to continue with their negotiations and finalizing an MPA. On February 17, 2023, this Court issued an order granting a final extension of the stay to March 10, 2023.

42.     Over the next few months, the Parties, through their respective counsel, engaged in extensive arm's length settlement negotiations.

43.     Negotiations included a significant exchange of information, allowing both Parties to evaluate the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses, and mediation with an experienced mediator.

44.     In late January, the Parties reached an agreement as to the material terms of the Settlement at mediation.

45.     The Parties have diligently negotiated, drafted, and finalized the settlement agreement, notice forms, and came to an agreement on a claims process and administrator.

46.     The Settlement Agreement ("Agr.") was finalized by the Parties March 10, 2023, and is hereto as **Exhibit A**.

47.     It is my opinion, and the opinion of the other proposed settlement class counsel, based on our experience and investigation, that the Settlement Agreement presents a favorable result for the Class.

### *Settlement Benefits*

48.     The Settlement Class is defined as: "All persons who are identified on the Settlement Class List, including all individuals who were sent notification by MMC that their personal information was or may have been compromised in the Data Incident." Agr. ¶ 39.

49.     The Settlement Class specifically excludes: (1) the judges presiding over this Action, and members of their direct families; (2) MMC, its subsidiaries, parent companies, successors, predecessors, and any entity in which MMC or its parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid a Request for Exclusion prior to the Opt-Out Deadline. *Id.* ¶ 39.

50.     The Settlement Class consists of approximately 191,752 individuals. *Id.*

51.     The Settlement negotiated on behalf of the Class provides for three separate forms of relief: (1) monetary relief; (2) credit monitoring; and (3) equitable relief in the form of information security enhancements.

### *Monetary Relief*

52.     The monetary relief provided for by the Settlement Agreement consists of up to $7,500 per Settlement Class Member including: (a) reimbursement of out of pocket expenses for Settlement Class Members who submit a valid claim; (b) compensation for up to five hours of lost time; and (c) reimbursement for actual, documented losses, more likely than not caused by the Data Breach and not already covered by one of the Ordinary Reimbursement categories. Agr. ¶ 54.

53.     Settlement Class Members can submit a claim for reimbursement of documented out-of-pocket losses fairly traceable to the Data Incident, including, but not limited to unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees,

accountants' fees and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after; and miscellaneous expenses such as notary, fax, postage, copying, mileage and long-distance telephone charges. *Id.*

54.     Settlement Class Members can also submit claim for compensation for up to five (5) hours of lost time spent in response to the Data Incident, e.g., time spent dealing with replacement card issues, reversing fraudulent charges, (calculated at the rate of Twenty Dollars and Zero Cents ($20.00) per hour). Agr. ¶ 56. The Settlement Class member must include an attestation that any lost time incurred is/was reasonably spent in response to the Data Incident together with a description of the time incurred. *Id.*

55.     Monetary benefits are capped at $7,500 per Settlement Class Member and are subject to a pro rata adjustment based on the number of valid claims made and the funds available in the Settlement Fund. Agr. ¶ 69.

### *Credit Monitoring and Identity Theft Protections*

56.     All Settlement Class Members who submit a valid claim using the Claim Form (**Exhibit 1** to this Settlement Agreement) are eligible to enroll in a total of one (1) year of three bureau credit monitoring services. Agr. ¶ 59.

### *Data Security Measures*

57.     In addition to the monetary relief and credit monitoring services provided, MMC has represented that it has implemented significant data security measures, which it continues to assess, such as updated policies and procedures, annual audits of its Information Security Infrastructure, deployment of multi-factor authentication for all access to MMC's systems, and updated employee education and training. Agr. ¶ 71.

*__Release__*

58.     The release in this case is tailored to the claims that have been plead or could have been plead in this case. Agr. Sec. XIV.

59.     Settlement Class Members who do not exclude themselves from the Settlement Agreement will release claims against Defendant and its affiliates related to the Data Incident and/or the recordkeeping or data security practices in place at the time of the Data Incident. Agr. ¶ 92.

*__Notice__*

60.     The Parties agreed to use Kroll Settlement Administration ("Kroll") the Notice Specialist and Claims Administrator in this case (the "Claims Administrator"). Agr. ¶ 38.

61.     The cost of CAFA notice and Notice to Settlement Class Members will be paid out of the Settlement Fund. Agr. ¶¶ 5, 25.

62.     The current and agreed upon Notice Plan requires direct notice be provided U.S. mail. Agr. ¶ 76.

63.     Within thirty (30) days of the date the Preliminary Approval Order is entered, the Claims Administrator will mail the Short Form Notice to each of the approximately 191,752 Settlement Class Members. *See* Agr. Ex. 4.

64.     The Claims Administrator will also establish a dedicated settlement website and will maintain and update the website throughout the claim period, with the forms of Short Notice, Long Notice, and Claim Form approved by the Court, as well as the Settlement Agreement and relevant filings. *See* Agr. ¶ 44.

65.     The Claims Administrator will also make a toll-free help line available to provide Settlement Class Members with additional information about the Settlement and will establish a P.O. Box for correspondence and claims. *Id.*; *see also* Agr. ¶ 80(f).

### *Claims Process*

66.     The timing of the claims process is structured to ensure that all Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their claim, and decide whether they would like to opt-out or object.

67.     Class Members will have no less than ninety (90) days after Notice is issued to complete and submit their Claim Form to the Claims Administrator, either by mail or online. Agr. ¶ 7.

68.     The Claim Form, attached to the Settlement Agreement at Exhibit A, is written in plain language to facilitate Settlement Class Members' ease in completing it. *See* Agr. Ex. 1.

69.     The Claim Form does not need to be notarized. *See* Agr. Ex. 1.

70.     The Claims Administrator will be responsible for reviewing the Claim Forms and determine if they are complete and valid. Agr. ¶ 80.

71.     Should a claim be incomplete or lacking sufficient documentation, the Claims Administrator may reach out to the claimant for supplementation. *Id.*

### *Exclusions*

*72.*     Settlement Class Members will have up to and including sixty (60) days after the Notice Date to exclude themselves from the Settlement. Agr. ¶ 77.

73.     To be excluded from the Settlement, Settlement Class Members must make their request in writing, and must clearly manifest their intent to be excluded from the class. Agr. ¶ 77.

74.     Any Member of the Settlement Class who elects to be excluded shall not (i) be bound by any order or the Judgment; (ii) be entitled to relief under the Settlement Agreement; (iii) gain any rights by virtue of the Settlement Agreement; or (iv) be entitled to object to any aspect of the Settlement Agreement.

***Objections***

75.     Settlement Class Members will have up to and including sixty (60) days after the Notice Date to object to the Settlement. Agr. ¶ 78.

76.     Similar to the timing of the claims process, the timing with regard to objections is structured to give Settlement Class Members sufficient time to review the Settlement documents—including Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards, which will be filed fourteen (14) days prior to the deadline for Settlement Class Members to object or exclude themselves from the Settlement. Agr. Ex. 4.

77.     Any Settlement Class Member who wishes to object shall file notice of his/her intention to do so and concurrently serve them upon Proposed Settlement Class Counsel. Agr. ¶ 78.

78.     The objection to the Settlement Agreement must include: (1) the objector's full name, address, and current telephone number; (2) the name and number of this case; (3) all grounds for the objection, with factual and legal support for the stated objection, including any supporting materials; (4) the identification of any other objections he/she has filed, or has had filed on his/her behalf, in any other class action cases in the last four years; and (5) the objector's signature. If represented by counsel, the objecting Settlement Class Member must also provide the name and telephone number of his/her counsel. Agr. ¶ 78.

*Service Award, Fees, and Costs*

79.    The Settlement Agreement calls for a reasonable service awards to Plaintiffs in the amount of $3,500 to each Plaintiff. Agr. ¶ 93.

80.    The Service Award is meant to compensate Plaintiffs for their efforts on behalf of the Settlement Class, including maintaining contact with counsel, assisting in the investigation of the case, reviewing the Complaint, remaining available for consultation throughout settlement negotiations, reviewing the Settlement Agreement, and answering counsel's many questions.

81.    After agreeing to the terms of the settlement on behalf of the Class, counsel for Plaintiffs negotiated their fees and costs separate from the benefit to Class Members, in the amount of 30% of the Settlement Fund ($390,000) for fees and $10,000 for costs. Agr. ¶ 95.

82.    Plaintiffs' service award, and Attorneys' costs and fees are to be paid out of the Settlement Fund. Agr. ¶¶ 93, 95.

83.    Class Counsel will submit a separate motion seeking attorneys' fees, costs, and Plaintiff's Service Award prior to filing the Motion for Final Approval of Class Action Settlement, and prior to Settlement Class Members' deadline to exclude themselves from or object to the Settlement Agreement.

\*        \*        \*        \*        \*        \*        \*        \*        \*        \*        \*        \*        \*

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct, and that this declaration was executed in Chicago, Illinois on this 10th day of March, 2023.

*/s/ Gary M. Klinger*
Gary M. Klinger (*admitted pro hac vice*)

*Attorney for Plaintiffs and the Class*

# **EXHIBIT A**

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Settlement Agreement" or "Agreement") is entered into by and between PATRICK REYNOLDS, DANIEL LEWIS, LUCIA MARANO, KRISTEN FRANCE, ABBEY ABRECHT and JAHIDAH DIAAB ("Plaintiffs"), individually and on behalf of Participating Settlement Class Members (as defined in Paragraph 29) (together "Plaintiffs"), and MARYMOUNT MANHATTAN COLLEGE ("Defendant" or "MMC") (collectively the "Parties"), in the action *Reynolds et al. v. Marymount Manhattan College*, Case No. 1:22-cv-06846-LGS, pending in the U.S. District Court for the Southern District of New York (the "Action").

## RECITALS

WHEREAS, on August 12, 2022, Patrick Reynolds and Daniel Lewis filed a Complaint against MMC in the United States District Court for the Southern District of New York relating to a data security incident affecting MMC which occurred in or around November 2021;

WHEREAS, on August 17, 2022, Lucia Marano filed a Complaint against MMC in the United States District Court for the Southern District of New York relating to the same data security incident;

WHEREAS, on October 6, 2022, the Court approved consolidation of the actions filed by Patrick Reynolds and Daniel Lewis, on the one hand, and Lucia Marano, on the other hand, pursuant to Federal Rule of Civil Procedure 42;

WHEREAS, on October 24, 2022, Plaintiffs filed a Consolidated Amended Complaint against MMC in the Action;

WHEREAS, MMC denies the allegations and all liability with respect to any and all facts and claims alleged in the Action, that the class representative and the class which they purport to represent have suffered any damage(s), and/or that the Action satisfies the requirements to be tried as a class action under Federal Rule of Civil Procedure 23; and

WHEREAS, following prolonged and extensive arm's length settlement negotiations and a mediation session, the Parties reached an agreement of the essential terms of settlement.

NOW, THEREFORE, in exchange for the mutual promises and valuable consideration provided for in this Agreement, the Parties agree to a full, complete, and final settlement and resolution of the Action, subject to Court approval, on the following terms and conditions:

## I.    DEFINITIONS

In addition to terms defined at various points within this Agreement, the following defined terms shall have the meanings set forth below:

1.      "Action" means the class action lawsuit captioned *Reynolds et al. v. Marymount Manhattan College*, Case No. 1:22-cv-06846-LGS, pending in the U.S. District Court for the Southern District of New York before the Honorable Lorna G. Schofield.

2.      "Alternative Cash Payment" means a cash payment of One Hundred Fifty Dollars and Zero Cents ($150.00), which a Class Member may claim in lieu of any other benefits under this Settlement Agreement, as set forth in Paragraph 60.

3.      "Approved Claim" means the timely submission of a Claim Form by a Participating Settlement Member that has been approved by the Settlement Administrator.

4.      "Attested Time" means time spent remedying issues related to the Data Incident.

5.      "CAFA Notice" means a notice of the proposed Settlement in compliance with the requirements of the Class Action Fairness Act, 28 U.S.C. Sec. 1711, et seq. ("CAFA"), to be served upon the appropriate State official in each State where a Class Member resides and the appropriate federal official. Costs for preparation and issuance of the CAFA Notice will be paid from the Settlement Fund.

6.      "Claim Form" or "Claim" means the form(s) Settlement Class Members must submit to be eligible for reimbursement of Out-of-Pocket Losses or Attested Time, and/or to claim Credit Monitoring Services under the terms of the Settlement, which is attached hereto as Exhibit 3.

7.      "Claims Deadline" means the last day to submit a timely Claim Form(s), which will occur ninety (90) days after the Notice Deadline.

8.      "Claims Period" means the period of time during which Settlement Class Members may submit Claim Forms to receive settlement benefits, which will end ninety (90) days after the Notice Deadline.

9.      "Class Counsel" means: (1) Victoria Jennings Maniatis, Gary M. Klinger and David K. Lietz of Milberg Coleman Bryson Phillips Grossman, PLLC; (2) Jonathan M. Sedgh, John A. Yanchunis and Ryan D. Maxey of Morgan & Morgan, P.A.; (3) Samuel J. Strauss and Raina C. Borelli of Turke & Strauss LLP; and (4) Terence R. Coates and Justin C. Walker of Markovits, Stock & DeMarco, LLC.

10.      "Class Representatives" means Patrick Reynolds, Daniel Lewis, Lucia MArano, Kristen France, Abbey Abrecht and Jahidah Diaab.

11.      "Court" means the United States District Court for the Southern District of New York.

12.      "Credit Monitoring Services" means one (1) year of three-bureau credit monitoring services provided by Experian (or other comparable provider) to Participating Settlement Class Members under the Settlement. These services include daily three-bureau credit monitoring with

Equifax, Experian, and TransUnion; identity restoration services; and $1 million in identity theft insurance, among other features.

13.     "Data Incident" means the data security incident affecting MMC which occurred in or around November 2021.

14.     "Effective Date" means one business day following the latest of: (i) the date upon which the time expires for filing or noticing any appeal of the Judgment or one (1) business day following entry of an order granting final approval of the settlement if no parties have standing to appeal; (ii) if there is an appeal or appeals, other than an appeal or appeals solely with respect to attorneys' fees and reimbursement of expenses, the date of completion, in a manner that finally affirms and leaves in place the Judgment without any material modification, of all proceedings arising out of the appeal(s) (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal(s) following decisions on remand); or (iii) the date of final dismissal of any appeal or the final dismissal of any proceeding on certiorari with respect to the Judgment.

15.     "Extraordinary Out-of-Pocket Losses" means documented out-of-pocket costs or expenditures that a Settlement Class Member actually incurred that is/are: (i) an actual, documented and unreimbursed monetary loss; (ii) more likely than not caused by the Data Incident; (iii) occurred on or after November 12, 2021; and (iv) is not already covered by one or more of the normal reimbursement categories, and the Settlement Class Member made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance, as set forth in Paragraph 54.

16.     "Fee Award and Costs" means the amount of attorneys' fees and reimbursement of Litigation Costs and Expenses awarded by the Court to Class Counsel.

17.     "Final Approval Order and Judgment" means an order and judgment that the Court enters after the Final Approval Hearing, which finally approves the Settlement Agreement, certifies the Settlement Class, dismisses the Action with prejudice, and otherwise satisfies the settlement-related provisions of Federal Rule of Civil Procedure 23, and is consistent with all material provisions of this Agreement, substantially in the form annexed hereto as Exhibit 5.

18.     "Final Approval Hearing" means the hearing to be conducted by the Court to determine the fairness, adequacy, and reasonableness of the Settlement pursuant to Federal Rule of Civil Procedure 23 and whether to issue the Final Approval Order and Judgment.

19.     "Litigation Costs and Expenses" means costs and expenses incurred by counsel for Plaintiffs in connection with commencing, prosecuting, and settling the Action.

20.     "MMC's Counsel" or "Defendant's Counsel" means Joseph Salvo, Brian E. Middlebrook and John T. Mills of Gordon Rees Scully Mansukhani, LLP.

DocuSign Envelope ID: 7E830DE4-D82A-48B2-AC34-894F5720B344

21.     "Net Settlement Fund" means the amount of funds that remain in the Settlement Fund after funds are paid from or allocated for payment from the Settlement Fund for the following: (i) Notice and Administrative Expenses, (ii) Taxes and Tax-Related Expenses, (iii) Service Awards Payments approved by the Court, (iv) Fee Award and Costs approved by the Court.

22.     "Non-Profit Residual Recipient" means Hour Children, subject to approval by the Court.

23.     "Notice" means notice of the proposed class action Settlement to be provided to Settlement Class Members, substantially in the form attached hereto as Exhibit 1 ("Short Form Notice") and Exhibit 2 ("Long Form Notice")

24.     "Notice Deadline" means the last day by which Notice must issue to the Settlement Class Members, and will occur thirty (30) days after entry of the Preliminary Approval Order.

25.     "Notice and Administrative Expenses" means all of the expenses incurred in the administration of this Settlement, including, without limitation, all expenses or costs associated with providing Notice to the Settlement Class, locating Settlement Class Members, performing National Change of Address search(es) and/or skip tracing, processing claims, determining the eligibility of any person to be a Settlement Class Member, and administering, calculating and distributing the Settlement Fund to Settlement Class Members. Administrative Expenses also includes all reasonable third-party fees and expenses incurred by the Settlement Administrator in administering the terms of this Agreement.

26.     "Objection Deadline" is the last day on which a Settlement Class Member may file an objection to the Settlement, which will be sixty (60) days after the Notice Deadline.

27.     "Opt-Out Deadline" is the last day on which a Settlement Class member may file a request to be excluded from the Settlement Class, which will be sixty (60) days after the Notice Deadline.

28.     "Ordinary Out-of-Pocket Losses" means documented out-of-pocket costs or expenditures that a Settlement Class Member actually incurred that are fairly traceable to the Data Breach, and that have not already been reimbursed by a third party, as set forth in Paragraph 52. Out-of-Pocket Losses may include, without limitation, unreimbursed costs associated with fraud or identity theft including professional fees including attorneys' fees, accountants' fees, and fees for credit repair services and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges, as well as costs for credit monitoring costs or other mitigative services that were incurred on or after November 12, 2021.

29.     "Participating Settlement Class Member" means a Settlement Class Member who does not submit a valid Request for Exclusion prior to the Opt-Out Deadline.

30.     "Preliminary Approval Order" means an order directing issuance of Notice to Settlement Class Members, determining that the Court will likely be able to approve the Settlement

under Federal Rule of Civil Procedure 23(e)(2), and determining that the Court will likely be able to certify the Settlement Class for purposes of judgment. Such order will include the forms and procedure for providing notice to the Settlement Class, including notice of the procedure for Settlement Class Members to object to or opt-out of the Settlement, and set a date for the Final Approval Hearing, substantially in the form annexed hereto as Exhibit 4.

31.     "Released Claims" means any and all claims or causes of action of every kind and description, including any causes of action in law, claims in equity, complaints, suits or petitions, and any allegations of wrongdoing, demands for legal, equitable or administrative relief (including, but not limited to, any claims for injunction, rescission, reformation, restitution, disgorgement, constructive trust, declaratory relief, compensatory damages, consequential damages, penalties, exemplary damages, punitive damages, attorneys' fees, costs, interest or expenses) that the Releasing Parties had or have (including, but not limited to, assigned claims and any and all "Unknown Claims" as defined below) that have been or could have been asserted in the Action or in any other action or proceeding before any court, arbitrator(s), tribunal or administrative body (including but not limited to any state, local or federal regulatory body), regardless of whether the claims or causes of action are based on federal, state, or local law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether they are known or unknown, foreseen or unforeseen, suspected or unsuspected, or fixed or contingent, arising out of, or related or connected in any way with the claims or causes of action of every kind and description that were brought, alleged, argued, raised or asserted in any pleading or court filing in the Action, including but not limited to those concerning: (1) the alleged access, disclosure and/or acquistion of Settlement Class Members' personal information in the Data Incident; (2) MMC's maintenance of Settlement Class Members' personal information as it relates to the Data Incident; (3) MMC's information security policies and practices as it relates to the Data Incident; and/or (4) MMC's provision of notice to Settlement Class Members following the Data Incident.

32.     "Released Parties" means MMC and each and every of their respective predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, and any and all of their past, present, and future officers, directors, employees, stockholders, partners, servants, agents, successors, attorneys, representatives, insurers, reinsurers, subrogees and assigns of any of the foregoing. Each of the Released Parties may be referred to individually as a "Released Party."

33.     "Releasing Parties" means the Class Representatives and Participating Settlement Class Members, and each of their respective heirs, executors, administrators, representatives, agents, partners, successors, attorneys and assigns.

34.     "Request for Exclusion" is the written communication by or on behalf of a Settlement Class Member in which he or she requests to be excluded from the Settlement Class in the form and manner provided for in the Notice.

35.     "Residual Settlement Fund" means the amount of funds that remain in the Settlement Fund after funds are paid from or allocated for payment from the Settlement Fund for the following: (i) Notice and Administrative Expenses, (ii) Taxes and Tax-Related Expenses, (iii) Approved Claim(s) for Ordinary Out-of-Pocket Losses; (iv) Approved Claim(s) for

Extraordinary Out-of-Pocket Losses; (v) Approved Claim(s) for Attested Time; (vi) Approved Claim(s) for Credit Monitoring Services; (vii) Approved Claim(s) for Alternative Cash Payment(s); (viii) Service Awards Payments approved by the Court; and (ix) Fee Award and Costs approved by the Court.

36. "Service Award Payment" means compensation awarded by the Court and paid to the Class Representatives in recognition of their role in this litigation.

37. "Settlement" means the settlement of the Action by and between the Parties, and the terms thereof as stated in this Settlement Agreement.

38. "Settlement Administrator" means Kroll Settlement Administration, subject to Court approval.

39. "Settlement Class" means the persons who are identified on the Settlement Class List, including all individuals who were sent notification by MMC that their personal information was or may have been compromised in the Data Incident. Excluded from the Settlement Class are: (1) the judges presiding over this Action, and members of their direct families; (2) MMC, its subsidiaries, parent companies, successors, predecessors, and any entity in which MMC or its parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid a Request for Exclusion prior to the Opt-Out Deadline.

40. "Settlement Class List" means the list generated by MMC containing the full namesand current or last known addresses for Settlement Class Members, which MMC shall provide to the Settlement Administrator within fourteen (14) days of the Preliminary Approval Order.

41. "Settlement Class Member" means an individual who falls within the definition of the Settlement Class.

42. "Settlement Fund" means the sum of One Million Three Hundred Thousand Dollars and Zero Cents ($1,300,000.00) to be paid by or on behalf of MMC as specified in Paragraphs 46, including any interest accrued thereon after payment.  This payment is the limit and extent of the monetary obligations of MMC, its respective predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, and any and all of their past, present, and future officers, directors, employees, stockholders, partners, servants, agents, successors, attorneys, representatives, insurers, reinsurers, subrogees and assigns of any of the foregoing, with respect to this Agreement and the settlement of this matter.

43. "Settlement Payment" or "Settlement Check" mean the payment to be made via mailed check or via electronic means to a Participating Settlement Class Member pursuant to Paragraph 62.

44. "Settlement Website" means the website that the Settlement Administrator will establish as soon as practicable following entry of the Preliminary Approval Order, but prior to the

mailing of the Notice, as a means for Settlement Class Members to obtain notice of and information about the Settlement and relevant case documents and deadlines. The Settlement Website shall contain relevant documents, including, but not limited to, the Notice, this Agreement, Plaintiff's motion for preliminary approval of the Settlement, the Preliminary Approval Order, Plaintiff's motion for an award of attorneys' fees, costs and expenses, and/or service awards, and the operative complaint in the Action. The Settlement Website shall also include a toll-free telephone number, e-mail address, and mailing address through which Settlement Class Members may contact the Settlement Administrator directly. The Settlement Website shall not include any advertising and shall remain operational until at least sixty (60) days after all Settlement Payments have been distributed.

45.    "Taxes and Tax-Related Expenses" means any and all applicable taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) arising in any jurisdiction, if any, with respect to the income or gains earned by or in respect of the Settlement Fund, including, without limitation, any taxes that may be imposed upon PCS with respect to any income or gains earned by or in respect of the Settlement Fund for any period while it is held in the Settlement Fund.

## II.    <u>SETTLEMENT FUND</u>

46.    **Establishment of Settlement Fund**. Within ten (10) days of the Preliminary Approval Order, MMC shall deposit or cause to be deposited the total sum of One Million Three Hundred Thousand Dollars and Zero Cents ($1,300,000.00) into an interest bearing  account established and administered by the Settlement Administrator at a financial institution agreed upon by the Settlement Administrator and MMC.

47.    **Non-Reversionary**. The Settlement Fund is non-reversionary. As of the Effective Date, all rights of MMC in or to the Settlement Fund shall be extinguished, except in the event this Settlement Agreement is terminated, as described in Paragraph 88.

48.    **Qualified Settlement Fund**. The Parties agree that the Settlement Fund is intended to be maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468 B-1, and that the Settlement Administrator, within the meaning of Treasury Regulation § 1.468 B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Settlement Fund and paying from the Settlement Fund any Taxes and Tax-Related Expenses owed with respect to the Settlement Fund. The Parties agree that the Settlement Fund shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election required to treat the Settlement Fund as a qualified settlement fund from the earliest date possible. Any and all funds held in the Settlement Fund shall be held in an interest-bearing account insured by the Federal Deposit Insurance Corporation. Funds may be placed in a non-interest bearing account as may be reasonably necessary during the check clearing process. The Settlement Administrator shall provide an accounting of any and all funds in the Settlement Fund, including any interest accrued thereon and payments made pursuant to this Agreement, upon request of any of the Parties.

49.    **Custody of Settlement Fund**. The Settlement Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the

entirety of the Settlement Fund is distributed pursuant to this Settlement Agreement or the balance returned to those who paid the Settlement Fund in the event this Settlement Agreement is terminated in accordance with Paragraph 88.

50.     **Use of the Settlement Fund**. As further described in this Agreement, the Settlement Fund shall be used by the Settlement Administrator to pay for the following: (i) Notice and Administrative Expenses, (ii) Taxes and Tax-Related Expenses, (iii) Approved Claim(s) for Ordinary Out-of-Pocket Losses; (iv) Approved Claim(s) for Extraordinary Out-of-Pocket Losses; (v) Approved Claim(s) for Attested Time; (vi) Approved Claim(s) for Credit Monitoring Services; (vii) Approved Claim(s) for Alternative Cash Payment(s); (viii) Service Awards Payments approved by the Court; and (ix) Fee Award and Costs approved by the Court.  Following payment of all of the above expenses, any amount remaining in the Residual Settlement Fund shall be paid to the Non-Profit Residual Recipient in accordance with Paragraph 70.  No amounts may be withdrawn from the Settlement Fund unless expressly authorized by this Agreement or approved by the Court.

51.     **Taxes and Representations**. Taxes and Tax-Related Expenses relating to the Settlement Fund shall be considered Notice and Administrative Expenses and shall be timely paid by the Settlement Administrator out of the Settlement Fund without prior order of the Court. Further, the Settlement Fund shall indemnify and hold harmless the Parties, their counsel, and their insurers and reinsurers for Taxes and Tax-Related Expenses (including, without limitation, taxes payable by reason of any such indemnification payments). The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Class Representative or any Settlement Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund. Each Class Representative and Participating Settlement Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her or it of the receipt of funds from the Settlement Fund pursuant to this Agreement.

## III.     REIMBURSEMENT FOR OUT-OF-POCKET LOSSES AND ATTESTED TIME

52.     **Reimbursement for Ordinary Out-of-Pocket Losses**. All Settlement Class Members may submit a claim for up to Seven Hundred Fifty Dollars and Zero Cents ($750.00) for reimbursement of Ordinary Out-of-Pocket Losses. "Ordinary Out-of-Pocket Losses" are unreimbursed costs or expenditures incurred by a Settlement Class Member that are fairly traceable to the Data Incident including, without limitation, the following: (i) unreimbursed costs, expenses, losses or charges incurred a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of class member's personal information; (ii) costs incurred on or after November 12, 2021, associated with purchasing or extending additional credit monitoring or identity theft protection services and/or accessing or freezing/unfreezing credit reports with any credit reporting agency; and (iii) other miscellaneous expenses incurred related to any Ordinary Out-of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges. Settlement Class Members who elect to submit a claim for Reimbursement of Ordinary Out-of-Pocket Losses must provide to the Settlement Administrator the information required to evaluate the claim, including: (1) the Settlement Class Member's name and current address; (2) documentation supporting their claim; (3) a brief description of the documentation describing the

nature of the loss, if the nature of the loss is not apparent from the documentation alone; and (4) whether the Settlement Class Member has been reimbursed for the loss by another source. Documentation supporting Ordinary Out-of-Pocket Losses can include receipts or other documentation not "self-prepared" by the Settlement Class Member that documents the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity to or support other submitted documentation. Settlement Class Members shall not be reimbursed for Ordinary Out-of-Pocket Losses if they have already been reimbursed for the same Ordinary Out-of-Pocket Losses by another source. A claim for reimbursement for Ordinary Out-of-Pocket Losses may be combined with a claim for Attested Time but in no circumstance will a Settlement Class Member be eligible to receive more than the Seven Hundred Fifty Dollars and Zero Cents ($750.00) cap.

53.     **Assessing Claims for Ordinary Out-of-Pocket Losses**. The Settlement Administrator shall verify that each person who submits a Claim Form is a Settlement Class Member. The Settlement Administrator shall have the sole discretion and authority to determine whether and to what extent documentation for Ordinary Out-of-Pocket Losses reflects valid Ordinary Out-of-Pocket Losses actually incurred that are fairly traceable to the Data Incident, but may consult with Class Counsel and MMC's Counsel in making individual determinations. In assessing what qualifies as "fairly traceable," the Parties agree to instruct the Settlement Administrator to consider (i) whether the timing of the loss occurred on or after November 12, 2021; and (ii) whether the Personal Information used to commit identity theft or fraud consisted of the same type of Personal Information that was potentially impacted as a result of the Data Incident. The Settlement Administrator is authorized to contact any Settlement Class Member (by e-mail, telephone, or U.S. mail) to seek clarification regarding a submitted claim prior to making a determination as to its validity.

54.     **Reimbursement for Extraordinary Out-of-Pocket Losses**. All Settlement Class Members may submit a claim for up to Seven Thousand Five Hundred Dollars and Zero Cents ($7,500.00) for reimbursement of Extraordinary Out-of-Pocket Losses. "Extraordinary Out-of-Pocket Losses" are unreimbursed costs or expenditures incurred by a Settlement Class Member that are fairly traceable to the Data Breach including, without limitation, the following: (i) unreimbursed costs, expenses, losses or charges incurred a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of class member's personal information; (ii) costs incurred on or after November 12, 2021 associated with purchasing or extending additional credit monitoring or identity theft protection services and/or accessing or freezing/unfreezing credit reports with any credit reporting agency; and (iii) other miscellaneous expenses incurred related to any Extraordinary Out-of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges.   Settlement Class Members who elect to submit a claim for Reimbursement of Extraordinary Out-of-Pocket Losses must provide to the Settlement Administrator the information required to evaluate the claim, including: (1) the Class Member's name and current address; (2) documentation supporting their claim; (3) a brief description of the documentation describing the nature of the loss, if the nature of the loss is not apparent from the documentation alone; and (4) whether the Class Member has been reimbursed for the loss by another source. Documentation supporting Extraordinary Out-of-Pocket Losses can include receipts or other documentation not "self-prepared" by the Class Member that documents the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient

to receive reimbursement, but can be considered to add clarity to or support other submitted documentation.

55.     **Assessing Claims for Extraordinary Out-of-Pocket Losses**. The Settlement Administrator shall verify that each person who submits a Claim Form is a Settlement Class Member. The Settlement Administrator shall have the sole discretion and authority to determine whether the claim for Reimbursement of Extraordinary Out-of-Pocket Losses, including whether and to what extent documentation for Extraordinary Out-of-Pocket Losses reflects losses incurred, are valid claims and are fairly traceable to the Data Incident based upon, including but not limited to, the timing of the loss and the type of information used to commit identity theft or fraud and whether that information is fairly traceable to the Data Breach.  Additionally, in determining whether a claim for Reimbursement of Extraordinary Out-of-Pocket Losses is valid, the Settlement Administrator must determine that: (1) the loss is an actual, documented, and unreimbursed monetary loss; (2) the loss was more likely than not caused by the Data Incident; (3) the loss occurred on or after November 12, 2021; (4) the loss is not already covered by one or more of the normal reimbursement categories provided under this Settlement Agreement; and (5) the Settlement Class Member has made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of the benefits made available to the Settlement Class Member under any applicable credit card, credit monitoring/identity protection or financial service(s).  The Settlement Administrator may contact Class Members to seek clarification regarding submitted claims prior to determining their validity.  The Settlement Administrator is authorized to contact any Settlement Class Member (by e-mail, telephone, or U.S. mail) to seek clarification regarding a submitted claim prior to making a determination as to its validity.

56.     **Reimbursement for Attested Time**. All Settlement Class Members may submit a claim for reimbursement of Attested Time up to five (5) hours at Twenty Dollars and Zero Cents ($20.00) per hour. Settlement Class Members can receive reimbursement of Attested Time with a brief description of the actions taken in response to the Data Breach and the time associated with each action. Claims for Attested Time are capped at One Hundred Dollars and Zero Cents ($100.00) per individual. A claim for Attested Time may be combined with a claim for reimbursement for Ordinary Out-of-Pocket Losses but in no circumstance will a Settlement Class Member be eligible to receive more than the Seven Hundred Fifty Dollars and Zero Cents ($750.00) individual cap.

57.     **Assessing Claims for Attested Time**. The Settlement Administrator shall have the sole discretion and authority to determine whether the prerequisites have been met in order to award payments of Attested Time, but may consult with Class Counsel and MMC's Counsel in making individual determinations. The Settlement Administrator is authorized to contact any Settlement Class Member (by e-mail, telephone, or U.S. mail) to seek clarification regarding a submitted claim prior to making a determination as to its validity.

58.     **Disputes**. To the extent the Settlement Administrator determines a claim for Out-of-Pocket Losses or Attested Time is deficient in whole or part, within a reasonable time of making such a determination, the Settlement Administrator shall notify the Settlement Class Member of the deficiencies and give the Settlement Class Member twenty-one (21) days to cure the deficiencies. Such notifications shall be sent via e-mail, unless the claimant did not provide an e-

DocuSign Envelope ID: 7E830DE4-D82A-48B2-AC84-694F57E0B344

mail address, in which case such notifications shall be sent via U.S. mail. If the Settlement Class Member attempts to cure the deficiencies but, at the sole discretion and authority of the Settlement Administrator, fails to do so, the Settlement Administrator shall notify the Settlement Class Member of that determination within ten (10) days of the determination. The Settlement Administrator may consult with Class Counsel and MMC's Counsel in making such determinations.

## IV.  CREDIT MONITORING

59.    **Credit Monitoring Services**. All Settlement Class Members are eligible to enroll in one (1) year of three-bureau Credit Monitoring Services provided by Experian or other comparable provider, regardless of whether the Settlement Class Member submits a claim for reimbursement of Ordinary Out-of-Pocket Losses, Extraordinary Out-of-Pocket Losses or Attested Time. The Settlement Administrator shall send an activation code to each valid Credit Monitoring Services claimant within thirty (30) days of the Effective Date which can be used to activate Credit Monitoring Services.  Such enrollment codes shall be sent via e-mail, unless the claimant did not provide an e-mail address, in which case such codes shall be sent via U.S. mail.  The provider shall provide Credit Monitoring Services to all valid claimants who timely activate those services for a period of  one (1) year from the date of activation, including daily three-bureau credit monitoring with Equifax, Experian, and TransUnion; identity restoration services; and $1 million in identity theft insurance, among other features.

## V.  ALTERNATIVE CASH PAYMENTS

60.    **Alternative Cash Payments**. In lieu of the benefits made available to Settlement Class Members under Sections III and IV, Paragraphs 52-59 above, all Settlement Class Members may submit a claim for an Alternative Cash Payment of One Hundred Fifty Dollars and Zero Cents ($150.00).

61.    **Assessing Claims for Alternative Cash Payments**. The Settlement Administrator shall verify that each person who submits a Claim Form is a Settlement Class Member. A Settlement Class Member shall not be required to submit any documentation or additional information in support of their claim for an Alternative Cash Payment.  However, the Claim Form must clearly indicate that the Settlement Class Member is electing to claim the Alternative Cash Payment in lieu of any other benefits made available under this Settlement Agreement and, specifically, Sections III and IV, Paragraphs 52-59 above.  The Settlement Administrator is authorized to contact any Settlement Class Member (by e-mail, telephone, or U.S. mail) to seek clarification regarding a submitted claim prior to making a determination as to its validity.  In the event of any ambiguities in the Claim Form, the Settlement Administrator must contact the Settlement Class Member prior to making a determination as to its validity and, specifically, to determine whether the Settlement Class Member wishes to file a claim for an Alternative Cash Payment or any other benefits made available under this Settlement Agreement.

## VI.  PAYMENTS TO PARTICIPATING SETTLEMENT CLASS MEMBERS

62.    **Payment Timing**. Payments for Approved Claims for reimbursement for Ordinary Out-of-Pocket Losses, Extraordinary Out-of-Pocket Losses, Attested Time, and/or Alternative

Cash Payments shall be issued in the form of a check, or via electronic means, sent as soon as practicable after the allocation and distribution of funds are determined by the Settlement Administrator following the Effective Date.

63. **Timing**. Settlement Checks shall bear in the legend that they expire if not negotiated within ninety (90) days of their date of issue.

64. **Returned Checks**. For any Settlement Check returned to the Settlement Administrator as undeliverable (including, but not limited to, when the intended recipient is no longer located at the address), the Settlement Administrator shall make reasonable efforts to locate a valid address and resend the Settlement Payment within thirty (30) days after the check is returned to the Settlement Administrator as undeliverable. In attempting to locate a valid address, the Settlement Administrator is authorized to send an e-mail and/or place a telephone call to that Participating Settlement Class Member to obtain updated address information. Any replacement Settlement Checks issued to Participating Settlement Class Members shall remain valid and negotiable for sixty (60) days from the date of their issuance and may thereafter automatically be canceled if not cashed by the Participating Settlement Class Members within that time.

65. **Uncashed Checks**. To the extent that a Settlement Check is not cashed within ninety (90) days after the date of issue, the Settlement Administrator shall undertake the following actions: (1) attempt to contact the Participating Settlement Class Member by e-mail and/or telephone to discuss how to obtain a reissued check; (2) if those efforts are unsuccessful, make reasonable efforts to locate an updated address for the Participating Settlement Class Member using advanced address searches or other reasonable methods; and (3) reissuing a check or mailing the Participating Settlement Class Member a postcard (either to an updated address if located or the original address if not) providing information regarding how to obtain a reissued check. Any reissued Settlement Checks issued to Participating Settlement Class Members shall remain valid and negotiable for sixty (60) days from the date of their issuance and may thereafter automatically be canceled if not cashed by the Participating Settlement Class Members within that time.

66. **Deceased Class Members**. If the Settlement Administrator is notified that a Participating Settlement Class Member is deceased, the Settlement Administrator is authorized to reissue the Settlement Check to the Participating Settlement Class Member's estate upon receiving proof the Participating Settlement Class Member is deceased and after consultation with Class Counsel and MMC's Counsel.

## VII.    CLAIMS;    DISTRIBUTION    OF    SETTLEMENT    FUNDS;    RESIDUAL SETTLEMENT FUND

67. **Submission of Electronic and Hard Copy Claims**. Settlement Class Members may submit Claim Forms to the Settlement Administrator electronically via a claims website or physically by mail to the Settlement Administrator. Claim Forms must be submitted electronically or postmarked during the Claims Period and on or before the Claims Deadline.

68. **Order of Distribution of Funds**. The Settlement Administrator must first use the funds available in the Settlement Fund (after payment of Notice and Administrative Expenses and Taxes and Tax-Related Expenses) to make payments for Approved Claims for Ordinary Out-of-

Pocket Losses, followed by Approved Claims for Extraordinary Out-of-Pocket Losses, followed by Approved Claims for Attested Time, followed by Approved Claims for Credit Monitoring Services. The Settlement Administrator shall then utilize the remaining funds to make payments for Approved Claims for Alternative Cash Payments.

69. **Pro-Rata Contingencies**.

a. In the event that the funds remaining in the Net Settlement Fund after payments for Approved Claims for Ordinary Out-of-Pocket Losses are not sufficient to make payment for Approved Claims for Extraordinary Out-of-Pocket Losses, then the value of the payments for Approved Claims for Extraordinary Out-of-Pocket Losses shall be reduced on a pro rata basis, such that the aggregate value of all payments for Approved Claims for Ordinary Out-of-Pocket Losses and Approved Claims for Extraordinary Out-of-Pocket Losses does not exceed the Net Settlement Fund. In such an event, no Net Settlement Funds will be distributed for Approved Claims for Attested Time, Credit Monitoring Services or Alternative Cash Payments.

b. In the event that the funds remaining in the Net Settlement Fund after payments for Approved Claims for Ordinary Out-of-Pocket Losses and Approved Claims for Extraordinary Out-of-Pocket Losses are not sufficient to make payment for Approved Claims for Attested Time, then the value of the payments for Approved Claims for Attested Time shall be reduced on a pro rata basis, such that the aggregate value of all payments for Approved Claims for Ordinary Out-of-Pocket Losses, Approved Claims for Extraordinary Out-of-Pocket Losses and Approved Claims for Attested Time does not exceed the Net Settlement Fund. In such an event, no Net Settlement Funds will be distributed for Approved Claims for Credit Monitoring Services or Alternative Cash Payments.

c. In the event that the funds remaining in the Net Settlement Fund after payments for Approved Claims for Ordinary Out-of-Pocket Losses, Approved Claims for Extraordinary Out-of-Pocket Losses and Approved Claims for Attested Time are not sufficient to make payment/distribution for Approved Claims for Credit Monitoring Services, then the number of years of Credit Monitoring Services provided to each Settlement Class Member who claims that benefit shall be reduced to ensure that the aggregate value of all payments for Approved Claims for Ordinary Out-of Pocket Losses, Approved Claims for Extraordinary Out-of-Pocket Losses, Approved Claims for Attested Time, and Approved Claims for Credit Monitoring Services does not exceed the Net Settlement Fund. In such an event, no Net Settlement Funds will be distributed for Approved Claims for Alternative Cash Payments.

d. In the event that the funds remaining in the Net Settlement Fund after payments for Approved Claims for Ordinary Out-of-Pocket Losses, Approved Claims for Extraordinary Out-of-Pocket Losses, Approved Claims for Attested Time, and Approved Claims for Credit Monitoring Services are not sufficient to make payment for Approved Claims for Alternative Cash Payments, then the value of the payments for Approved Claims for Alternative Cash Payments shall be reduced on a pro rata basis, such that the aggregate value of all payments for Approved Claims for Ordinary Out-of-Pocket Losses, Approved Claims for Extraordinary Out-of-Pocket Losses, Approved Claims for Attested Time, Approved Claims for Credit Monitoring Services and Approved Claims for Alternative Cash Payments does not exceed the Net Settlement Fund.

13

70.     **Unclaimed Property**. No portion of the Settlement Fund shall revert or be repaid to MMC after the Effective Date. To the extent any monies remain in the Residual Settlement Fund more than 150 days after the distribution of Settlement payments to the Participating Settlement Class Members, or 30 days after all reissued Settlement Checks are no longer negotiable, whichever occurs later or as otherwise agreed to by the Parties, any remaining monies shall be distributed as required by state law or to the Non-Profit Residual Recipient.

## VIII.     CONFIRMATORY DISCOVERY; ADDITIONAL SECURITY MEASURES

71.     **Confirmatory Discovery**.  Within thirty (30) days of the Preliminary Approval Order, MMC will provide reasonable access to confidential confirmatory discovery to Class Counsel which will include documents showing the remedial measures taken by MMC in response to the Data Incident, including but not limited to: annual audits of Information Security infrastructure; review and update of policies and procedures; updated firewall and changes; deployment of multi-factor authentication for all access to MMC's systems; Active Directory auditing of account access via domain controllers; updated password policies; and updated employee education and training.

72.     **Additional Security Measures**.  Within thirty (30) days of the Preliminary Approval Order, MMC will delete all PII that is the subject of the Data Incident, other than that which is required to be maintained by federal and state law or regulation, or as otherwise required by other regulatory or oversight body(ies) and their applicable requirements or regulations. Additionally, MMC agrees to encrypt all PII that is the subject of the Data Incident containing Social Security Numbers, drivers' license numbers, passport numbers, and any other government issued ID number, including while the data is in transit and at rest.

73.     **Confidentiality**. The information provided by MMC pursuant to this Section VIII or Paragraph 71 shall be treated as confidential and cannot be used for any purpose other than enforcement of this Settlement Agreement.

74.     **No Other Rights or Remedies**.  Nothing about this Section VIII or Paragraphs 71-72 shall create any rights to any present or future contractual or equitable remedy requiring MMC to make or maintain any particular security processes or procedures in the future.

## IX.     SETTLEMENT CLASS NOTICE

75.     **Timing of Notice**. Within fourteen (14) days after the date of the Preliminary Approval Order, MMC shall provide the Settlement Class List to the Settlement Administrator. Within thirty (30) days after the date of the Preliminary Approval Order, the Settlement Administrator shall disseminate the Short Form Notice to the members of the Settlement Class. The Settlement Administrator shall make the Long Form Notice and Claim Form available to Settlement Class Members on the Settlement Website.

76.     **Form of Notice**. Notice shall be disseminated U.S. mail to Settlement Class Members.

## X.   OPT-OUTS AND OBJECTIONS

77.     **Opt-Outs**. The Notice shall explain the procedure for Settlement Class Members to exclude themselves or "opt-out" of the Settlement by submitting a Request for Exclusion to the Settlement Administrator postmarked no later than sixty (60) days after the Notice Deadline. The Request for Exclusion must include the name of the proceeding, the individual's full name, current address, personal signature, and the words "Request for Exclusion" or a comparable statement that the individual does not wish to participate in the Settlement at the top of the communication. The Notice must state that any Settlement Class Member who does not file a timely Request for Exclusion in accordance with this Paragraph will lose the opportunity to exclude himself or herself from the Settlement and will be bound by the Settlement.

78.     **Objections**. The Notice shall explain the procedure for Settlement Class Members to object to the Settlement by submitting written objections to the Settlement Administrator postmarked no later than sixty (60) days after the Notice Deadline. The written objection must include (i) the name of the proceedings; (ii) the Settlement Class Member's full name, current mailing address, and telephone number; (iii) a statement that states with specificity the grounds for the objection, as well as any documents supporting the objection; (iv) a statement as to whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (v) the identity of any attorneys representing the objector; (vi) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; (vii) a list of all other matters in which the objecting Settlement Class Member and/or his/her attorney has lodged an objection to a class action settlement; and (viii) the signature of the Settlement Class Member or the Settlement Class Member's attorney. The Notice must set forth the time and place of the Final Approval Hearing (subject to change) and state that any Settlement Class Member who does not file a timely and adequate objection in accordance with this Paragraph waives the right to object or to be heard at the Final Approval Hearing and shall be forever barred from making any objection to the Settlement.

79.     Within seven (7) days after the deadline for opt-out as set forth in this Paragraph and as approved by the Court, the Settlement Administrator shall furnish to counsel for the Parties a complete list of all timely and valid request for exclusions.  In the event that within seven (7) days after receipt of the list from the Settlement Administrator, there have been more than twenty-five (25) Opt-Outs (exclusions), MMC may, by notifying Class Counsel in writing, void this Agreement.  If MMC voids the Agreement pursuant to this Paragraph, MMC shall be obligated to pay all settlement expenses already incurred, excluding any attorneys' fees, costs, and expenses of Class Counsel and service awards.

## XI.   DUTIES OF THE SETTLEMENT ADMINISTRATOR

80.     **Duties of Settlement Administrator**. The Settlement Administrator shall perform the functions and duties necessary to effectuate the Settlement and as specified in this Agreement, including, but not limited to, the following:

   a.   Creating, administering, and overseeing the Settlement Fund;

b.  Obtaining the Settlement Class List for the purpose of disseminating Notice to Settlement Class Members;

c.  Performing National Change of Address searches and/or skip tracing on the Settlement Class List;

d.  Providing Notice to Settlement Class Members via U.S. mail;

e.  Establishing and maintaining the Settlement Website;

f.  Establishing and maintaining a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answering the questions of Settlement Class Members who call with or otherwise communicate such inquiries within one (1) business day;

g.  Responding to any mailed or emailed Settlement Class Member inquiries within one (1) business day;

h.  Reviewing, determining the validity of, and processing all claims submitted by Settlement Class Members;

i.  Receiving Requests for Exclusion and objections from Settlement Class Members and providing Class Counsel and MMC's Counsel a copy thereof no later than three (3) days following the deadline for submission of the same. If the Settlement Administrator receives any Requests for Exclusion, objections, or other requests from Settlement Class Members after the Opt-Out and Objection Deadlines, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and MMC's Counsel;

j.  Working with the provider of Credit Monitoring Services to receive and send activation codes within thirty (30) days of the Effective Date;

k.  After the Effective Date, processing and transmitting Settlement Payments to Settlement Class Members;

l.  Providing weekly or other periodic reports to Class Counsel and MMC's Counsel that include information regarding the number of Settlement Checks mailed and delivered or checks sent via electronic means, Settlement Checks cashed, undeliverable information, and any other requested information relating to Settlement Payments. The Settlement Administrator shall also, as requested by Class Counsel or MMC's Counsel and from time to time, provide the amounts remaining in the Net Settlement Fund;

m. In advance of the Final Approval Hearing, preparing an affidavit to submit to the Court that: (i) attests to implementation of Notice in accordance with the Preliminary

16

DocuSign Envelope ID: 7E830DE4-D82A-48B2-AC34-894F5720B344

Approval Order; and (ii) identifies each Settlement Class Member who timely and properly submitted a Request for Exclusion; and

n.    Performing any function related to settlement administration as provided for in this Agreement or at the agreed-upon instruction of Class Counsel or MMC's Counsel, including, but not limited to, verifying that Settlement Payments have been distributed.

81.    **Limitation of Liability**. The Parties, Class Counsel, MMC's Counsel, and MMC's insurers and reinsurers, shall not have any liability whatsoever with respect to (i) any act, omission or determination of the Settlement Administrator, or any of its respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes and Tax-Related Expenses.

82.    **Indemnification**. The Settlement Administrator shall indemnify and hold harmless the Parties, Class Counsel, MMC's Counsel, and MMC's insurers and reinsurers for (i) any act or omission or determination of the Settlement Administrator, or any of Settlement Administrator's designees or agents, in connection with the Notice Plan and the administration of the Settlement; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes and Tax-Related Expenses.

## XII.    PRELIMINARY APPROVAL, FINAL APPROVAL, AND JURISDICTION

83.    **Certification of the Settlement Class**. For purposes of this Settlement only, the Parties stipulate to the certification of the Settlement Class, which is contingent upon the Court entering the Final Approval Order and Judgment of this Settlement and the occurrence of the Effective Date. Should: (1) the Settlement not receive final approval from the Court, or (2) the Effective Date not occur, the certification of the Settlement Class shall be void. MMC reserves the right to contest class certification for all other purposes. The Parties further stipulate to designate the Class Representatives as the representatives for the Settlement Class.

84.    **Preliminary Approval**. Following execution of this Agreement, Class Counsel shall file a motion for preliminary approval of this Settlement with the Court on or before March 10, 2023.  Class Counsel shall provide MMC's counsel with a draft of the motion for preliminary approval within a reasonable time frame prior to filing same to ensure that there are no requested revisions from MMC.

85.    **Final Approval**. Class Counsel shall move the Court for a Final Approval Order and Judgment of this Settlement, to be issued following the Final Approval Hearing; within a

reasonable time after the Notice Deadline, Objection Deadline, and Opt-Out Deadline; and at least 90 days after Class Counsel notifies the appropriate government officials of this Settlement Agreement pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. In connection with the motion for preliminary approval, counsel for the parties shall request that the Court set a date for the Final Approval Hearing that is no earlier than 120 days after entry of the Preliminary Approval Order. Class Counsel shall provide MMC's counsel with a draft of the motion for final approval within a reasonable time frame prior to filing same to ensure that there are no requested revisions from MMC.

86. **Jurisdiction**. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall retain jurisdiction with respect to the administration, consummation and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice and the Settlement Administrator. As part of its agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose.

## XIII. MODIFICATION AND TERMINATION

87. **Modification**. The terms and provisions of this Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that, after entry of the Preliminary Approval Order, the Parties may, by written agreement, effect such amendments, modifications, or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Settlement Class or approval by the Court if such changes are consistent with the Court's Preliminary Approval Order and do not materially alter, reduce, or limit the rights of Settlement Class Members under this Agreement.

88. **Termination**. Class Counsel (on behalf of the Settlement Class Members) and Defendant shall have the right to terminate this Agreement by providing written notice of their or its election to do so ("Termination Notice"): (1) within seven (7) days of either of the following: (a) the Court's refusal to grant preliminary approval of the Settlement in any material respect; or (b) MMC's receipt of the opt-out list from the Settlement Administrator that includes more than twenty-five (25) Opt-Outs which right may be exercised solely by MMC as set forth above in Paragraph 79; or (2) within fourteen (14) days of either of the following: (a) the Court's refusal to enter the Judgment in any material respect, or (b) the date upon which the Judgment is modified or reversed in any material respect by any appellate or other court.

89. **Effect of Termination**. In the event of a termination as provided in Paragraph 88, this Agreement shall be considered null and void; all of the Parties' obligations under the Agreement shall cease to be of any force and effect and the Parties shall return to the status quo ante in the Action as if the Parties had not entered into this Agreement. In addition, in the event of

such a termination, all of the Parties' respective pre-Settlement claims and defenses will be preserved.

## XIV.  **RELEASES**

90.    **The Release**. Upon the Effective Date, and in consideration of the Settlement benefits described herein, each Releasing Party shall be deemed to have released, acquitted, and forever discharged Defendant and each of the Released Parties from any and all Released Claims.

91.    **Unknown Claims**. The Released Claims include the release of Unknown Claims. "Unknown Claims" means claims that could have been raised in the Action and that Plaintiffs, any member of the Settlement Class or any Releasing Party, do not know or suspect to exist, which, if known by him, her or it, might affect his, her or its agreement to release the Released Parties or the Released Claims or might affect his, her or its decision to agree, object or not to object to the Settlement. Upon the Effective Date, Plaintiffs, the Settlement Class, and any Releasing Party shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Upon the Effective Date, each of the Releasing Parties shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state, the District of Columbia or territory of the United States, by federal law, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to Section 1542 of the California Civil Code. Class Representatives, the Settlement Class, and the Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Release, but that it is their intention to finally and forever settle and release the Released Claims, including but not limited to any Unknown Claims they may have, as that term is defined in this Paragraph.

92.    **Bar to Future Suits**.  Upon entry of the Final Approval Order and Judgment, the Class Representatives and other Settlement Class Members shall be enjoined from prosecuting any claim they have released in the preceding paragraphs in any proceeding against any of the Released Parties or based on any actions taken by any of the Released Parties that are authorized or required by this Agreement or by the Final Approval Order.  It is further agreed that the Settlement may be pleaded as a complete defense to any proceeding subject to this section.

## XV.     SERVICE AWARD PAYMENTS

93.     **Service Award Payments**. At least fourteen (14) days before the Opt-Out and Objection Deadlines, Class Counsel will file a motion seeking a service award payment for the Class Representatives in recognition for their contributions to this Action. MMC agrees not to oppose Class Counsel's request for a service award not to exceed Three Thousand Five Dollars and Zero Cents ($3,500.00) per representative, for a total of Twenty-One Thousand Dollars and Zero Cents ($21,000.00). The Settlement Administrator shall make the Service Award Payments to the Class Representatives from the Settlement Fund. Such Service Award Payment shall be paid by the Settlement Administrator, in the amount approved by the Court, no later than seven (7) days after the Effective Date.

94.     **No Effect on Agreement**. In the event the Court declines to approve, in whole or in part, the payment of service awards in the amount requested, the remaining provisions of this Agreement shall remain in full force and effect. No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the amount of the service awards shall constitute grounds for termination of this Agreement.

## XVI.     ATTORNEYS' FEES, COSTS, EXPENSES

95.     **Attorneys' Fees and Costs and Expenses**. At least fourteen (14) days before the Opt-Out and Objection Deadlines, Class Counsel will file a motion for an award of attorneys' fees and litigation costs and expenses to be paid from the Settlement Fund. MMC agrees not to oppose Class Counsel's request for an award of attorneys' fees not to exceed thirty percent (30%) of the Settlement Fund and reimbursement of litigation costs and expenses not to exceed Ten Thousand Dollars and Zero Cents ($10,000.00). Fee Award and Costs shall be paid by the Settlement Administrator from the Settlement Fund, in the amount approved by the Court, no later than seven (7) days after the Effective Date. This amount was negotiated after the primary terms of the settlement were negotiated.

96.     **Allocation**. Unless otherwise ordered by the Court, Class Counsel shall have the sole and absolute discretion to allocate any approved Fee Award and Costs amongst Plaintiffs' counsel and any other attorneys for Plaintiffs. MMC and its insurers and reinsurers shall have no liability or other responsibility for allocation of any such attorneys' fees and costs.

97.     **No Effect on Agreement**. In the event the Court declines to approve, in whole or in part, the payment of attorneys' fees and costs and expenses in the amount requested, the remaining provisions of this Agreement shall remain in full force and effect. No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the amount of the service awards shall constitute grounds for termination of this Agreement.

## XVII.     NO ADMISSION OF LIABILITY

98.     **No Admission of Liability**. The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this

Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

99.     **No Use of Agreement**. Neither the Settlement Agreement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (i) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by Plaintiffs; or (ii) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission by MMC in the Action or in any proceeding in any court, administrative agency or other tribunal.

## XVIII. MISCELLANEOUS

100.    **Integration of Exhibits**. The exhibits to this Agreement and any exhibits thereto are a material part of the Settlement and are incorporated and made a part of the Agreement.

101.    **Entire Agreement**. This Agreement, including all exhibits hereto, shall constitute the entire Agreement among the Parties with regard to the subject matter hereof and shall supersede any previous agreements, representations, communications and understandings among the Parties. This Agreement may not be changed, modified, or amended except in writing signed by all Parties, subject to Court approval. The Parties contemplate that, subject to Court approval or without such approval where legally permissible, the exhibits to this Agreement may be modified by subsequent Agreement of counsel for the Parties prior to dissemination of the Settlement Class Notice to the Settlement Class.

102.    **Deadlines**. If any of the dates or deadlines specified herein falls on a weekend or legal holiday, the applicable date or deadline shall fall on the next business day. All reference to "days" in this agreement shall refer to calendar days unless otherwise specified.

103.    **Singular and Plurals**. As used in this Agreement, all references to the plural shall also mean the singular and to the singular shall also mean the plural whenever the context so indicates.

104.    **Headings**. The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

105.    **Construction**. For the purpose of construing or interpreting this Agreement, the Parties agree that this Agreement is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party.

106.    **Cooperation of Parties**. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, defend Court approval, and to do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

107.   **Obligation to Meet and Confer**. Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have consulted in good faith.

108.   **No Conflict Intended**. Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

109.   **Governing Law**. The Agreement shall be construed in accordance with, and be governed by, the laws of the State of New York, without regard to the principles thereof regarding choice of law.

110.   **Counterparts**. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all signatories do not sign the same counterparts. Original signatures are not required. Any signature submitted electronically, by facsimile, or through e-mail of an Adobe PDF shall be deemed an original.

111.   **Notices**. All notices to Class Counsel provided for herein, shall be sent by overnight mail and email to:

Victoria Jennings Maniatis
Gary M. Klinger
David K. Lietz
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
100 Garden City Plaza, Suite 500
Garden City, New York 11530
vmaniatis@milberg.com
gklinger@milberg.com
dlietz@milberg.com

Jonathan M. Sedgh
John A. Yanchunis
Ryan D. Maxey
**MORGAN & MORGAN COMPLEX BUSINESS DIVISION**
850 3rd Avenue, Suite 402
Brooklyn, New York 11232
jsedgh@forthepeople.com
jyanchunis@forthepeople.com
rmaxey@forthepeople.com

Samuel J. Strauss
Raina C. Borelli
**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703
sam@turkestrauss.com
raina@turkestrauss.com

Terence R. Coates
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court Street, Suite 350
Cincinnati, Ohio 45202
tcoates@msdlegal.com

All notices to MMC provided for herein, shall be sent by overnight mail and email to:

Joseph Salvo
Brian E. Middlebrook
John T. Mills
**GORDON REES SCULLY MANSUKHANI, LLP**
One Battery Park Plaza
New York, New York 10004
jsalvo@grsm.com
bmiddlebrook@grsm.com
jtmills@grsm.com

The notice recipients and addresses designated above may be changed by written notice.

112.    **Authority**. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

## SIGNATURES

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
*On Behalf Of and As Counsel for Plaintiffs and the Class*

By: David Lietz

Name: David Lietz

Date: March 10, 2023 | 9:57 AM PST

**MORGAN & MORGAN COMPLEX BUSINESS DIVISION**
*On Behalf Of and As Counsel for Plaintiffs and the Class*

By: John Yanchunis

Name: John Yanchunis

Date: March 10, 2023 | 2:04 PM EST

**TURKE & STRAUSS LLP**
*On Behalf Of and As Counsel for Plaintiffs and the Class*

By: Raina Borrelli

Name: Raina Borrelli

Date: March 10, 2023 | 10:24 AM PST

**MARKOVITS, STOCK & DEMARCO, LLC**
*On Behalf Of and As Counsel for Plaintiffs and the Class*

By: Terence R Coates

Name: Terence R Coates

Date: March 10, 2023 | 12:48 PM EST

**MARYMOUNT MANHATTAN COLLEGE**

By: Bill Reuter          Kerry Walk

Title: Bill Reuter          President
Interim Vice President for Finance and Administration/CFO

Date: March 10, 2023 | 10:13 AM PST
March 10, 2023 | 1:59 PM EST

**GORDON REES SCULLY MANSUKHANI, LLP**
*Counsel for Defendant (as to form only)*

By: Brian Middlebrook

Name: Brian Middlebrook

Date: March 10, 2023 | 9:52 AM PST

**<u>EXHIBIT 1</u>**

## CLAIM FORM

This claim form should be filled out online or submitted by mail if you received a notification from Marymount Manhattan College that your personal information was or may have been compromised in the data security incident in or about November 2021 (the "Data Incident"), and you had out-of-pocket expenses or lost time spent dealing with the Data Incident, or you wish to claim credit monitoring and identity protection services to be paid for by Virginia Mason Medical Center, or you wish to claim an alternative cash payment in lieu of any other benefits that may be available under the settlement. You may get a check if you fill out this claim form, if the settlement is approved, and if you are found to be eligible for a payment.

The settlement notice describes your legal rights and options. Please visit the official settlement administration website, www._____.com, or call 1-_____ for more information.

If you wish to submit a claim for a settlement payment, you need to provide the information requested below. Please print clearly in blue or black ink. This claim form must be mailed and postmarked by _____, **2023**.

*Si necesita ayuda en español, comuníquese con el administrador al [insertar número].*

1.  CLASS MEMBER INFORMATION (ALL INFORMATION IS REQUIRED):

Name: _____

Address: _____

_____

Telephone: _____     Email: _____

2.  PAYMENT ELIGIBILITY INFORMATION.

Please review the notice and Section II of the Settlement Agreement (available at www._____.com) for more information on who is eligible for a payment and the nature of the expenses or losses that can be claimed.

Please provide as much information as you can to help us figure out if you are entitled to a settlement payment.

PLEASE PROVIDE THE INFORMATION LISTED BELOW:

Check the box for each category of benefits you would like to claim. Categories include: out-of-pocket expenses that you had to pay as a result of the Data Incident, time you had to spend dealing with the effects of the Data Incident, and up to one year of credit monitoring and identity protection services. Alternatively, you may claim an alternative cash payment in lieu of any other benefits that may be available under this settlement.

Please be sure to fill in the total amount you are claiming for each category and to attach documentation of the charges as described in bold type (if you are asked to provide account statements as part of proof required for any part of your claim, you may mark out any unrelated transactions if you wish).

a.  Ordinary Out-of-Pocket Expenses Resulting from the Data Incident:

_____ I incurred unreimbursed charges incurred as a result of the Data Incident.

Examples - unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after November 12, 2021 through [INSERT CLAIM DEADLINE]; and miscellaneous expenses such as notary, fax, postage, copying, mileage and long-distance telephone charges, that were incurred on or after November 12, 2021 through [INSERT CLAIM DEADLINE].

Total amount for this category $ _____

*If you are seeking reimbursement for fees, expenses, or charges, please attach a copy of a statement from the company that charged you, or a receipt for the amount you incurred.*

*If you are seeking reimbursement for credit reports, credit monitoring, or other identity theft insurance product purchased between November 12, 2021 through [INSERT CLAIM DEADLINE, please attach a copy of a receipt or other proof of purchase for each credit report or product purchased.* (Note: By claiming reimbursement in this category, you certify that you purchased the credit monitoring or identity theft insurance product primarily because of the Data Incident and not for any other purpose).

Supporting documentation must be provided. You may mark out any transactions that are not relevant to your claim before sending in the documentation.

b.    Extraordinary Out-of-Pocket Expenses Resulting from the Data Incident:

_____ I incurred unreimbursed charges incurred as a result of the Data Incident.

Examples - unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after November 12, 2021 through [INSERT CLAIM DEADLINE]; and miscellaneous expenses such as notary, fax, postage, copying, mileage and long-distance telephone charges, that were incurred on or after November 12, 2021 through [INSERT CLAIM DEADLINE].

Total amount for this category $ _____

*If you are seeking reimbursement for fees, expenses, or charges, please attach a copy of a statement from the company that charged you, or a receipt for the amount you incurred.*

*If you are seeking reimbursement for credit reports, credit monitoring, or other identity theft insurance product purchased between November 12, 2021 through [INSERT CLAIM DEADLINE, please attach a copy of a receipt or other proof of purchase for each credit report or product purchased.* (Note: By claiming reimbursement in this category, you certify that you purchased the credit monitoring or identity theft insurance product primarily because of the Data Incident and not for any other purpose).

*Additionally, you must provide documentation demonstrating that you made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of the benefits made available any credit card, credit monitoring/identity protection or financial service(s).*

Supporting documentation must be provided. You may mark out any transactions that are not relevant to your claim before sending in the documentation.

c.    Between one and five hours of documented time spent dealing with the Data Incident

_____ I certify that I spent time dealing with the effects of the Data Incident.

Examples – You spent at least one full hour calling customer service lines, writing letters or emails, or on the Internet in order to get fraudulent charges reversed or in updating automatic payment programs because your card number changed. You spent at least one full hour rescheduling medical appointments and/or finding alternative medical care and treatment, retaking or submitting to medical tests, locating medical records, retracing medical history as a result of the Data Incident.

I certify that the following amount of time in response to the Data incident:

_____ 1 hour                _____ 2 hours                _____ 3 hours

_____ 4 hours                _____ 5 hours

Please describe the time spent dealing with the effects of the Data Incident:

_____
_____
_____

d.   <u>Claim up to 1-year of credit monitoring and identity protection services.</u>

_____ I would like to claim 1-year of credit monitoring and identity protection services.

The Settlement requires Marymount Manhattan College to provide up to one-year of credit monitoring and identity protection services to any class member who timely claims it.

e.   <u>In lieu of any other benefits above, claim an alternative cash payment.</u>

_____ I would like to claim an alternative cash payment.

The Settlement requires Marymount Manhattan College to provide an alternative cash payment to any class member who timely claims it. This is in lieu of any other benefits which may be available under the settlement outlined above.  You may not file a claim for both an alternative cash payment or any other benefits under (a) through (d) above.

3.   SIGN AND DATE YOUR CLAIM FORM.

I declare under penalty of perjury under the laws of the United States and the laws of my State of residence that the information supplied in this claim form by the undersigned is true and correct to the best of my recollection, and that this form was executed on the date set forth below.

I understand that I may be asked to provide supplemental information by the Settlement Administrator or Claims Referee before my claim will be considered complete and valid.

_____     _____     ____/____/_____
Signature                                  Print Name                                                      Date

4.   MAIL YOUR CLAIM FORM, OR SUBMIT YOUR CLAIM FORM ONLINE.

This claim form must be:

Postmarked by _____, 2023 and mailed to: _____, c/o _____; OR

Emailed by midnight on _____, 2023 to:_____; OR

Submitted through the Settlement Website by midnight on _____, 2023 at: _____.

**<u>EXHIBIT 2</u>**

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*Reynolds, et al. v. Marymount Manhattan College*, Case No. 1:22-cv-06846-LGS

# If Marymount Manhattan College notified you of a Data Incident in or around November 2021, you may be eligible for benefits from a class action settlement.

*A court authorized this Notice. This is not a solicitation from a lawyer.*

*Si necesita ayuda en español, comuníquese con el administrador al [insertar número].*

- A Settlement has been reached in a class action lawsuit against Marymount Manhattan College ("MMC" or "Defendant") concerning a data security incident that occurred in or around November 2021 (the "Data Incident").

- The lawsuit is called *Reynolds, et al. v. Marymount Manhattan Colelge*, Case No. 1:22-cv-06846-LGS (the "Action"). The lawsuit alleges that the Data Incident potentially exposed certain personal identifying information ("PII") of Plaintiffs and the members of the putative class.

- The Settlement Class includes all individuals who were sent notification by MMC that their personal information was or may have been compromised in the Data Incident.  It excludes: (1) the judges presiding over this Action, and members of their direct families; (2) MMC, its subsidiaries, parent companies, successors, predecessors, and any entity in which MMC or its parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid a Request for Exclusion prior to the Opt-Out Deadline.

- Your legal rights are affected regardless of whether you act. Please read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | This is the only way you may receive benefits from this Settlement. The deadline to submit a Claim Form is [_____ __], 202_. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT** | You will receive no payment, but you will retain any rights you currently have with respect to Defendant and the issues in this case.  The deadline to exclude yourself from the Settlement is [_____ __], 202_. |
| **OBJECT TO THE SETTLEMENT** | Write to the Court explaining why you do not agree with the Settlement. The deadline to object is [_____ __], 202_. |
| **ATTEND THE FINAL APPROVAL HEARING** | You or your attorney may attend and speak about your objection at the Final Approval Hearing. The Final Approval Hearing will be held on [_____ __], 202_. |

| **DO NOTHING** | You will not get any benefits from the Settlement and you will give up certain legal rights. You will remain in the Class and be subject to the Release. |

- These rights and options, and the deadlines to exercise them, are explained in this Notice.  For complete details, please see the Settlement Agreement, whose terms control, available at [InsertWebsiteLink].

- The Court in charge of this case still has to decide whether to approve the Settlement. No Settlement benefits or payments will be provided unless the Court approves the Settlement and it becomes final.

### BASIC INFORMATION

| **1.** | **What is this Notice and why should I read it?** |

The Court authorized this Notice to inform you about a proposed Settlement with MMC. You have legal rights and options that you may act on before the Court decides whether to approve the proposed Settlement.  This Notice explains the lawsuit, the Settlement, and your legal rights.

Judge Lorna G. Schofield of the United States District Court for the Southern District of New York is overseeing this class action. The case is called *Reynolds, et al. v. Marymount Manhattan College,* Case No. 1:22-cv-06846-LGS.

| **2.** | **What is a class action lawsuit?** |

A class action is a lawsuit in which one or more plaintiffs—in this case, Plaintiffs and Class Representatives Patrick Reynolds, Daniel Lewis, Lucia Marano, Kristen France, Abbey Abrecht and Jahidah Diaab—sue on behalf of a group of people who have similar claims.  Together, this group is called a "Class" and consists of "Class Members."  In a class action, the court resolves the issues for all class members, except those who exclude themselves from the class.

### THE CLAIMS IN THE LAWSUIT AND THE SETTLEMENT

| **3.** | **What is this lawsuit about?** |

Plaintiffs claim that Defendant failed to implement and maintain reasonable security measures to adequately protect the PII in its possession and to prevent the Data Incident from occurring.

Defendant denies that it is liable for the claims made in the lawsuit and deny any allegations of wrongdoing.  More information about the complaint in the lawsuit can be found on the Settlement Website at [InsertWebsiteLink].

| **4.** | **Why is there a Settlement?** |

The Court has not decided whether the Plaintiffs or Defendant should win this case. Instead, both sides agreed to this Settlement. That way, they can avoid the uncertainty, risks, and expense of ongoing litigation, and Settlement Class Members will be eligible to get compensation now rather than years later—if ever. The Class Representatives and attorneys for the Settlement Class

Members, called Class Counsel, agree the Settlement is in the best interests of the Settlement Class Members. The Settlement is not an admission of wrongdoing by the Defendant.

## WHO'S INCLUDED IN THE SETTLEMENT?

**5.     How do I know if I am in the Settlement Class?**

You are part of the Settlement as a Settlement Class Member if you received a notification letter from MMC stating that your personal information was or may have been compromised in the Data Incident.

Settlement Class Members will have been mailed notice of their eligibility. If you are still not sure whether you are included, you can contact the Settlement Administrator by calling [InsertPhoneNumber], by emailing [InsertEmail], or by visiting the website [InsertWebsiteLink].

This Settlement Class does not include (1) the judges presiding over this Action, and members of their direct families; (2) MMC, its subsidiaries, parent companies, successors, predecessors, and any entity in which MMC or its parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid a Request for Exclusion prior to the Opt-Out Deadline.

## THE SETTLEMENT BENEFITS

**6.     What does the Settlement provide?**

Under the proposed Settlement, MMC will pay (or cause to be paid) $1,300,000.00 into a Settlement Fund. The Settlement Fund, plus interest accrued thereon, will pay notice and administration costs, Court-approved attorneys' fees and expenses, Court-approved service awards for class representatives, and certain Settlement Fund taxes and tax expenses (the "Net Settlement Fund"). The Net Settlement Fund will be used to provide eligible Settlement Class Members with payments and benefits described below.[1]

**Reimbursement for Lost Time and Ordinary Out-of-Pocket Expenses**:  If you spent time responding to the Data Incident, you may be eligible to receive compensation for Lost Time. If you incurred financial losses that are fairly traceable to the Data Incident, you may be eligible to receive reimbursement for Ordinary Out-of-Pocket Expenses.

A. **Lost Time:** A claim for reimbursement may also include a claim for up to 5 hours of time spent in response to the Data Incident. Lost Time will be compensated at $20.00/hour and requires a brief description of the action taken in response to the Data Incident and the time associated with those actions.

B. **Ordinary Out-of-Pocket Expenses or Losses:** A claim for reimbursement may include, but are not limited to the following provided the expenses were incurred

---

[1] If the benefits claimed by all Settlement Class Members meets or exceeds the amount of the Net Settlement Fund, then the payments and/or benefits for your Claim may be reduced *pro rata* by the Settlement Administrator so that the aggregate cost of all payments and benefits does not exceed the amount of the Net Settlement Fund.

primarily as a result of the Data Incident: (1) costs associated with purchasing credit monitoring or identity theft insurance; (2) costs associated with requesting a credit report; (3) costs associated with a credit freeze; (4) costs associated with cancelling a payment card and/or obtaining a replacement payment card; (5) costs associated with closing a bank account and/or opening a new bank account; (6) postage, long-distance phone charges, express mail and other incidental expenses, if you provide documentation of the charges and an explanation satisfactory to the Settlement Administrator of their relationship to the Data Incident; (7) unrefunded overdraft and/or overdraft protection fees; (8) unrefunded late and/or missed payment fees and/or charges; and (9) damage and costs associated with any stolen benefits or tax returns. Claims for ordinary out-of-pocket expenses or losses are subject to a $750.00 cap, which is aggregated with a claim for lost time.

**Reimbursement of Extraordinary Out-of-Pocket Expenses:**  In addition to a claim for ordinary out-of-pocket expenses, you may file a claim for reimbursement of extraordinary out-of-pocket expenses.  Expenses qualify for reimbursement under this category if: (1) the loss is an actual, documented, and unreimbursed monetary loss; (2) the loss was more likely than not caused by the Data Incident; (3) the loss occurred on or after November 12, 2021; (4) the loss is not already covered by one or more of the normal reimbursement categories provided under this Settlement Agreement; and (5) the Settlement Class Member has made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of the benefits made available to the Settlement Class Member under any applicable credit card, credit monitoring/identity protection or financial service(s).  Claims for extraordinary out-of-pocket expense are subject to a $7,500.00 cap.

**Credit Monitoring:** All Settlement Class Members are eligible to receive one (1) year of identity theft protection and credit monitoring, which includes identity theft monitoring, alerts, three bureau credit monitoring, fraud resolution, and up to $1 million identity theft insurance coverage for certain costs, identity restoration, and unauthorized electronic fund transfers.

**Alternative Cash Payment**: In lieu of filing a claim for reimbursement of ordinary out-of-pocket expenses, extraordinary out-of-pocket expenses or attested time, or for credit monitoring, all Settlement Class Members may file a claim for an alternative cash payment of $150.00.  By filing a claim for an alternative cash payment, Settlement Class Members are giving up their right to file a claim for any other benefits made available under this settlement.

**Confirmatory Discovery:** Defendant has also agreed to provide documents and information to Class Counsel showing that MMC has taken data security measures to remedy the issues that led to the Data Security Incident and has implemented other business practices to help ensure information security. For complete details, please see the Settlement Agreement, whose terms control, available at [InsertWebsiteLink].

## HOW TO GET BENEFITS

## 7.    How do I make a Claim?

To qualify for a Settlement benefit, you must complete and submit a Claim Form.

Settlement Class Members who want to submit a Claim must fill out and submit a Claim Form online at [InsertWebsiteLink] or by mail to the Settlement Administrator. Claim Forms are available through the Settlement website at [InsertWebsiteLink] or by calling [InsertSettlementNumber].

**All Claim Forms must be submitted no later than [_____ __], 202_.**

| 8. | When will I get my payment? |
|---|---|

The hearing to consider the fairness of the Settlement is scheduled for [_____], 202_. If the Court approves the Settlement, eligible Settlement Class Members whose claims were approved by the Settlement Administrator will be sent payment after all appeals and other reviews, if any, are completed.  Please be patient.

## THE LAWYERS REPRESENTING YOU

| 9. | Do I have a lawyer in this case? |
|---|---|

Yes, the Court has appointed Milberg Coleman Bryson Phillips Grossman, PLLC, Morgan & Morgan, P.A., Turke & Strauss LLP and Markovits, Stock & DeMarco, LLC as "Class Counsel" to represent you and all class members. You will not be charged for these lawyers. You can ask your own lawyer to appear in Court for you at your own expense if you want someone other than Class Counsel to represent you.

| 10. | How will the lawyers be paid? |
|---|---|

To date, Class Counsel has not received any payment for their services in conducting this litigation on behalf of the Class and have not been paid for their out-of-pocket expenses.  Class Counsel will ask the Court for an award of attorneys' fees not to exceed 30% of the Settlement Fund and for the reimbursement of litigation costs and expenses not to exceed $10,000, which were incurred in connection with the Action.  Such sums as may be approved by the Court will be paid from the Settlement Fund.

Class Counsel will also request a service award of $3,500.00 for each of the Plaintiffs.  To be paid from the Settlement Fund.

The Court will determine the proper amount of any attorneys' fees, costs, and expenses to award Class Counsel and the proper amount of any service awards to Plaintiffs.

Class Counsel will file their request for attorneys' fees, costs, and expenses and Service Awards for Plaintiffs with the Court, which will also be posted on the Settlement Website, at [InsertWebsiteLink].

## YOUR RIGHTS AND OPTIONS

| 11. | What claims do I give up by participating in this Settlement? |
|---|---|

If you do not exclude yourself from the Settlement, you will not be able to sue MMC about the Data Incident, and you will be bound by all decisions made by the Court in this case, the

Settlement, and its included Release. This is true regardless of whether you submit a Claim Form. However, you may exclude yourself from the Settlement (*see* Question 14). If you exclude yourself from the Settlement, you will not be bound by any of the Released Claims, which are described in the Settlement Agreement at [InsertWebsiteLink].

## 12.   What happens if I do nothing at all?

If you do nothing, you will receive no benefits under the Settlement.  You will be in the Settlement Class, and if the Court approves the Settlement, you will also be bound by all orders and judgments of the Court, the Settlement, and its included Release.  You will be deemed to have participated in the Settlement and will be subject to the provisions of Section 11 above.  Unless you exclude yourself, you won't be able to file a lawsuit or be part of any other lawsuit against MMC for the claims or legal issues released in this Settlement.

## 13.   What happens if I ask to be excluded?

If you exclude yourself from the Settlement, you will receive no benefits under the Settlement. However, you will not be in the SetRtlement Class and will not be legally bound by the Court's judgments related to the Settlement Class and MMC in this class action.

## 14.   How do I ask to be excluded?

You can ask to be excluded from the Settlement.  To do so, you must send a letter to the Settlement Administrator stating that you want to be excluded from the Settlement in *Reynolds, et al. v. Marymount Manhattan College,* Case No. 1:22-cv-06846-LGS. Your letter must include (1) your full name and current address; (2) a statement that you wish to be excluded from the Settlement Class; and (3) your signature.  You must mail your exclusion request, postmarked no later than [_____ __], 202_, to the following address:

<mark>Marymount Manhattan College Data Incident Settlement Administrator</mark>
[InsertAddress]

You cannot exclude yourself by phone or email.  Any individual who wants to be excluded from the Settlement must submit his or her own exclusion request. No group opt-outs shall be permitted.

## 15.   If I don't exclude myself, can I sue MMC for the same thing later?

No.  Unless you exclude yourself, you give up any right to sue MMC for the claims or legal issues released in this Settlement, even if you do nothing.

## 16.   If I exclude myself, can I get anything from this Settlement?

No.  If you exclude yourself, do not submit a Claim Form to ask for any benefits.

## 17.   How do I object to the Settlement?

If you do not exclude yourself from the Settlement Class, you can object to the Settlement if you do not agree with any part of it. You can give reasons why you think the Court should deny approval by filing an objection. To object, you must mail a written objection to the Settlement

Administrator, Class Counsel and Defendant's Counsel stating that you object to the Settlement in *Reynolds, et al. v. Marymount Manhattan College,* Case No. 1:22-cv-06846-LGS. Your objection must be filed no later than [_____ __], 202_.

The objection must be in writing and be personally signed by you. The objection must include: (i) the name of the proceedings; (ii) the Settlement Class Member's full name, current mailing address, and telephone number; (iii) a statement that states with specificity the grounds for the objection, as well as any documents supporting the objection; (iv) a statement as to whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (v) the identity of any attorneys representing the objector; (vi) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; (vii) a list of all other matters in which the objecting Settlement Class Member and/or his/her attorney has lodged an objection to a class action settlement; and (viii) the signature of the Settlement Class Member or the Settlement Class Member's attorney.

You must mail the objection to the Settlement Administrator at the address listed below, postmarked no later than [_____ __], 202_:

Marymount Manhattan College Data Incident Settlement Administrator
[InsertAddress]

You must also mail copies of your objection and any supporting documents to both Class Counsel and Defendant's lawyers at the addresses listed below, postmarked no later than [_____ __], 202_:

**Class Counsel**

Victoria Jennings Maniatis
Gary M. Klinger
David K. Lietz
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
100 Garden City Plaza, Suite 500
Garden City, New York 11530


Jonathan M. Sedgh
John A. Yanchunis
Ryan D. Maxey
**MORGAN & MORGAN COMPLEX BUSINESS DIVISION**
850 3rd Avenue, Suite 402
Brooklyn, New York 11232


Samuel J. Strauss
Raina C. Borelli
**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703

**Defendant's Counsel**

Brian E. Middlebrook
John T. Mills
**GORDON REES SCULLY MANSUKHANI, LLP**
One Battery Park Plaza, 28th Floor
New York, New York 10004

Terence R. Coates
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court Street, Suite 350
Cincinnati, Ohio 45202

## 18.   What's the difference between objecting and excluding myself from the Settlement?

Objecting simply means telling the Court that you don't like something about the Settlement.  You can object only if you stay in the Settlement Class.  Excluding yourself from the Settlement Class is telling the Court that you don't want to be part of the Settlement Class.  If you exclude yourself, you have no basis to object because the case no longer affects you.

### THE COURT'S FAIRNESS HEARING

## 19.   When and where will the Court hold a hearing on the fairness of the Settlement?

The Court will hold the Final Approval Hearing on [InsertHearingDate] at the Courthouse located at [Insert Address or Videoconference Information].  The purpose of the hearing is for the Court to determine whether the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class.  At the hearing, the Court will hear any objections and arguments concerning the fairness of the proposed Settlement, including those related to the amount requested by Class Counsel for attorneys' fees, costs, and expenses and the service awards to Plaintiffs.

The location, date and time of the Final Approval Hearing are subject to change by Court order. Any changes will be posted at the Settlement Website, [InsertWebsiteLink], or through the Court's publicly available docket. You should check the Settlement Website to confirm the date and time have not been changed.

## 20.   Do I have to come to the hearing?

No.  Class Counsel will answer any questions the Court may have.  But you are welcome to attend the hearing at your own expense.  If you send an objection, you don't have to come to Court to talk about it.  If your written objection was filed or mailed on time and meets the other criteria described in the Settlement, the Court will consider it.  However, you may appear on your behalf or pay a lawyer to attend on your behalf to assert your objection if you would like.

## 21.   May I speak at the hearing?

Yes. If you do not exclude yourself from the Settlement Class, you (or your attorney) may appear and speak at the Final Approval Hearing concerning any part of the proposed Settlement.

## GETTING MORE INFORMATION

| 22. | Where can I get additional information? |
|---|---|

This Notice summarizes the proposed Settlement. More details are in the Settlement Agreement, which is available at [InsertWebsiteLink] or by writing to [InsertAddress].

| 23. | How do I get more information? |
|---|---|

**Go to [INSERTWEBSITELINK], call [InsertToll-FreeNumber], email [InsertEmail] or write to [INSERTADDRESS]**

**PLEASE DO NOT CALL THE COURT, THE CLERK OF THE COURT, THE JUDGE, OR THE DEFENDANT WITH QUESTIONS ABOUT THE SETTLEMENT OR CLAIMS PROCESS.**

**<u>EXHIBIT 3</u>**

**IF YOU WERE NOTIFIED BY MARYMOUNT MANHATTAN COLLEGE REGARDING THE NOVEMBER 2021 DATA INCIDENT, YOU MAY BE ELIGIBLE FOR  PAYMENT AND CREDIT MONITORING SERVICES FROM A CLASS ACTION SETTLEMENT.**

*Si desea recibir esta notificación en español, llámenos o visite nuestra página web.*

A settlement has been reached in a class action lawsuit against Marymount Manhattan College ("MMC" or "Defendant") relating to cyberattack against MMC's computer systems that occurred in or around November 2021 (the "Data Incident"). The computer systems possibly affected by the Data Incident potentially contained personal information of certain individuals. The Plaintiffs claim that MMC was responsible for the Data Incident and assert claims for negligence, negligence per se, unjust enrichment, breach of express contract, breach of implied contract, violation of the New York General Business Law, declaratory judgment and injunctive relief, and invasion of privacy.  MMC denies all of the claims.

**WHO IS INCLUDED?** Defendant's records show you received a notification from MMC regarding the Data Incident, and, therefore, you are included in this Settlement as a "Settlement Class member."

**SETTLEMENT BENEFITS**. The Settlement provides payments to people who submit valid claims for out-of-pocket expenses and lost time relating to the Data Incident, and for credit monitoring and identity protection services. The Settlement also provides an option for Settlement Class Members to submit a claim for an alternative cash payment.  Defendant also represents that it has adopted and implemented additional security measures following the Data Incident to further strengthen the security of its systems.

**THE ONLY WAY TO RECEIVE A BENEFIT IS TO FILE A CLAIM**. To get a Claim Form, visit the website or call 1-XXX- XXX-XXXX. The claim deadline is Month Day, 2023.

**OTHER OPTIONS**. If you do nothing, you will remain in the class, you will not be eligible for benefits, and you will be bound by the decisions of the Court and give up your rights to sue Defendants for the claims resolved by this Settlement. If you do not want to be legally bound by the Settlement, you must exclude yourself by Month Day, 2023. If you stay in the Settlement, you may object to it by Month Day, 2023. A more detailed notice is available to explain how to exclude yourself or object. Please visit the website or call 1-XXX-XXX-XXXX for a copy of the more detailed notice. On Month Day, 2023, the Court will hold a Fairness Hearing to determine whether to approve the Settlement, Class Counsel's request for attorneys' fees and litigation expenses of 30% of the Settlement Fund, and an incentive award of $3,500 for each of the Representative Plaintiff.s The Motion for attorneys' fees will be posted on the website after it is filed. You or your own lawyer, if you have one, may ask to appear and speak at the hearing at your own cost, but you do not have to. This is only a summary. For more information, call or visit the website below.

www.XXXXXXXXX.com                    1-XXX-XXX-XXXX

**<u>EXHIBIT 4</u>**

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PATRICK REYNOLDS, DANIEL LEWIS,
LUCIA MARANO, KRISTEN FRANCE, ABBEY
ABRECHT and JAHIDAH DIAAB, individually
and on behalf of all others similarly situated,

               Plaintiff(s),

     v.

MARYMOUNT MANHATTAN COLLEGE,

             Defendant.

Case No. 1:22-CV-06846-LGS

**PRELIMINARY APPROVAL
ORDER**

       This matter came before the Court on Plaintiff's Motion for Preliminary Approval of Class

Settlement Agreement. Plaintiffs Patrick Reynolds, Daniel Lewis, Lucia Marano, Kristen France,

Abbey Abrecht and Jahidah Diaab ("Plaintiffs" or "Representative Plaintiffs"), individually and

on behalf of the proposed Settlement Class, and Defendant Marymount Manhattan College

("Defendant"), have entered into a Settlement Agreement (the "Settlement Agreement") that

settles the above-captioned litigation.

       In or around November 2021, Defendant was the victim of a criminal cyberattack in which

criminals gained access to Defendant's network and servers which contained certain personally

identifiable information ("PII") of Plaintiffs and the members of the proposed Settlement Class

(hereinafter, the "Data Incident"). Defendant promptly responded to and investigated the Data

Incident and provided all potentially impacted individuals with notice of the Data Incident.  The

notification letter detailed Defendant's investigation and restoration efforts, and provided an offer

of a complimentary credit monitoring and identity theft protection services.  Defendant also

provided notice to applicable regulating entities.

On or about August 12, 2022, Patrick Reynolds and Daniel Lewis filed a putative class action complaint against MMC in this Court relating to the Data Incident. On or about August 17, 2022, Lucia Marano filed a putative class action complaint against MMC in this Court relating to the Data Incident. On or about October 6, 2022, the Court approved consolidation of the actions filed by Patrick Reynolds and Daniel Lewis, on the one hand, and Lucia Marano, on the other hand, pursuant to Federal Rule of Civil Procedure 42. On or about October 24, 2022, Plaintiffs filed a Consolidated Class Action Complaint (the "Complaint") against Defendant.

The complaint ("Complaint") asserts eight causes of action, all of which allegedly arise from the Data Incident: (1) negligence; (2) negligence per se; (3) unjust enrichment; (4) breach of express contract; (5) breach of implied contract; (6) violation of the New York General Business Law; (7) declaratory judgment and injunctive relief; and (8) invasion of privacy. MMC denies all of the claims.

Representative Plaintiff and Defendant agreed that an early resolution and mediation of the above-captioned litigation (the "Litigation") was warranted. Through their counsel, Representative Plaintiff and Defendant engaged in extensive discussions regarding potential resolution before ultimately reaching a settlement in principle as to all claims. The Parties also participated in a mediation session on or about January 9, 2023. The Parties have agreed to settle this action, pursuant to the terms of the Settlement Agreement, and subject to the approval and determination of the Court as to the fairness, reasonableness, and adequacy of the Settlement which, if approved, will result in dismissal of this action with prejudice.

Having reviewed the Settlement Agreement, including the exhibits attached thereto, and all prior proceedings herein, and for good cause shown, it is hereby ordered that Plaintiff's Motion for Preliminary Approval is granted as set forth herein.[2]

1. **<u>Class Certification for Settlement Purposes Only</u>**. For settlement purposes only and pursuant to Fed. R. Civ. P. 23(b)(3) and (e), the Court provisionally certifies a Settlement Class in this matter defined as follows:

> All persons who were sent notification by MMC that their personal information was or may have been compromised in the Data Incident.

The Settlement Class includes approximately 191,752 people. The Settlement Class specifically excludes: (1) the judges presiding over this Action, and members of their direct families; (2) MMC, its subsidiaries, parent companies, successors, predecessors, and any entity in which MMC or its parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid a Request for Exclusion prior to the Opt-Out Deadline.

The Court provisionally finds, for settlement purposes only, that: (a) the Settlement Class is so numerous that joinder of all Settlement Class Members would be impracticable; (b) there are issues of law and fact common to the Settlement Class; (c) the claims of the Settlement Class Representatives are typical of and arise from the same operative facts and seek similar relief as the claims of the Settlement Class Members; (d) the Settlement Class Representatives and Settlement Class Counsel will fairly and adequately protect the interests of the Settlement Class as the Settlement Class Representatives has no interest antagonistic to or in conflict with the Settlement Class and has retained experienced and competent counsel to prosecute this matter on behalf of the Settlement Class; (e) questions of law or fact common to Settlement Class Members

---

[2] Unless otherwise indicated, capitalized terms used herein have the same meaning as in the Settlement Agreement.

predominate over any questions affecting only individual members; and (f) a class action and class settlement is superior to other methods available for a fair and efficient resolution of this controversy.

      **2.**        **Settlement Class Representatives and Settlement Class Counsel**.

PATRICK REYNOLDS, DANIEL LEWIS, LUCIA MARANO, KRISTEN FRANCE, ABBEY ABRECHT and JAHIDAH DIAAB are hereby provisionally designated and appointed as the Settlement Class Representatives. The Court provisionally finds that the Settlement Class Representatives are similarly situated to absent Class Members and therefore typical of the Class and that they will be an adequate Settlement Class Representatives.

The Court finds that the following counsel are experienced and adequate counsel and are hereby provisionally designated as Settlement Class Counsel under Fed. R. Civ. P. 23(a)(4): (1) Victoria Jennings Maniatis, Gary M. Klinger and David K. Lietz of Milberg Coleman Bryson Phillips Grossman, PLLC; (2) Jonathan M. Sedgh, John A. Yanchunis and Ryan D. Maxey of Morgan & Morgan, P.A.; (3) Samuel J. Strauss and Raina C. Borelli of Turke & Strauss LLP; and (4) Terence R. Coates and Justin C. Walker of Markovits, Stock & DeMarco, LLC.

      **3.**        **Preliminary Settlement Approval**. Upon preliminary review, the Court concludes and finds that the proposed Settlement is fair, reasonable, and adequate to warrant providing Notice of the Settlement to the Settlement Class and accordingly is preliminarily approved.

      **4.**        **Jurisdiction**. The Court concludes that it has subject matter jurisdiction and personal jurisdiction over the Parties before it for the purposes of the Settlement. Additionally, venue is proper in this Court as a substantial portion of the acts and transactions complained of occurred in this county and Defendant conducts substantial business throughout this county.

5.      **Final Approval Hearing**. A Final Approval Hearing shall be held on _____ at ___:_0 _.m. on Month , 2023, in the United States District Court for the Southern District of New York, at the Courthouse located at _____, _____, _____, _____ by videoconference to determine, among other things, whether: (a) this matter should be finally certified as a class action for settlement purposes pursuant to Fed. R. Civ. P. 23(b)(3) and (e); (b) the Settlement should be finally approved as fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e); (c) the action should be dismissed with prejudice pursuant to the terms of the Settlement Agreement; (d) Settlement Class Members should be bound by the releases set forth in the Settlement Agreement; (e) the motion of Settlement Class Counsel for an award of attorneys' fees, costs, and expenses (the "Fee Request") should be approved; and (f) the motion of the Settlement Class Representatives for an Service Award (the "Service Award Request") should be approved. Plaintiffs' Motion for Final Approval of the Settlement, Service Award Request, and Fee Request shall be filed with the Court at least 30 Days prior to the Final Approval Hearing. By no later than 14 Days prior to the Final Approval Hearing, the Parties shall file responses, if any, to any objections, and any replies in support of final approval of the Settlement and/or the Service Award Request and Fee Request.

6.      **Administration**. The Court appoints Kroll Settlement Administration as the Settlement Administrator, with responsibility for class notice and claims administration and to fulfill the duties of the Settlement Administrator set forth in the Settlement Agreement. Defendants shall pay all costs and expenses associated with providing notice to Settlement Class Members including, but not limited to, the Settlement Administrator's fees, as well as the costs associated with administration of the Settlement.

7.     **Notice to the Class**. The proposed Notice Program set forth in the Settlement Agreement, and the Claim Form, Short-Form Notice, and Long-Form Notice attached to the Settlement Agreement as Exhibits A, B, and C satisfy the requirements of Fed. R. Civ. P. 23(c)(2) and (e), provide the best notice practicable under the circumstances, and are hereby approved. Non-material modifications to these Exhibits may be made without further order of the Court. The Settlement Administrator is directed to carry out the Notice Program in conformance with the Settlement Agreement.

Within **30 days from the date of this Order** (the "Notice Deadline"), the Settlement Administrator shall complete the Notice Program in the manner set forth in Section 3 of the Settlement Agreement.

8.     **Findings and Conclusions Concerning Notice**. The Court finds that the form, content, and method of giving notice to the Settlement Class as described in Paragraph 8 of this Order and the Settlement Agreement (including the exhibits thereto): (a) will constitute the best practicable notice to the Settlement Class; (b) are reasonably calculated to apprise Settlement Class Members of the pendency of the action, the terms of the proposed Settlement, and their rights under the proposed Settlement, including but not limited to their rights to object to or exclude themselves from the proposed Settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Class Members and other persons entitled to receive notice; and the Court concludes that the Notice Program meets all applicable requirements of law, including Fed. R. Civ. P. 23(c) and (e), and the Due Process Clause(s) of the United States Constitution. The Court further finds that the Notice is written in plain language, uses simple terminology, and is designed to be readily understandable by Class Members.

9.      **Exclusion from Class**. Any Settlement Class Member who wishes to be excluded from the Settlement Class must mail a written notification of the intent to exclude himself or herself from the Settlement Class to the Settlement Administrator at the address provided in the Notice, postmarked no later than **60 Days from the date of Notice** (the "Opt-Out Period"). The written notification must include the name of the proceeding, the individual's full name, current address, personal signature, and the words "Request for Exclusion" or a comparable statement that the individual does not wish to participate in the Settlement at the top of the communication.

The Settlement Administrator shall provide the Parties with copies of all completed opt-out notifications, and a final list of all who have timely and validly excluded themselves from the Settlement Class, which Settlement Class Counsel may move to file with the Court no later than **10 Days prior to the Final Approval Hearing**.

Any Settlement Class Member who does not timely and validly exclude herself or himself from the Settlement shall be bound by the terms of the Settlement Agreement. If Final Order and Judgment is entered, any Settlement Class Member who has not submitted a timely, valid written notice of exclusion from the Settlement Class shall be bound by all proceedings, orders, and judgments in this matter, including but not limited to the Release set forth in the Final Order and Judgment, including Settlement Class Members who have previously initiated or who subsequently initiate any litigation against any or all of the Released Persons relating to the claims and transactions released in the Settlement Agreement. All Settlement Class Members who submit valid and timely notices of exclusion from the Settlement Class shall not be entitled to receive any benefits of the Settlement.

10. **Objections and Appearances**. A Settlement Class Member who complies with the requirements of this paragraph may object to the Settlement, the Service Award Request, or the Fee Request.

No Settlement Class Member shall be heard, and no papers, briefs, pleadings, or other documents submitted by any Settlement Class Member shall be received and considered by the Court, unless the objection is mailed first-class postage prepaid to the Settlement Administrator, Plaintiff's Counsel and Defendant's Counsel at the addresses listed in the Notice, and postmarked by no later than the Objection Date, as specified in the Notice. For an objection to be considered by the Court, the objection must also include all of the information set forth in Paragraph 78 of the Settlement Agreement, which is as follows: (i) the name of the proceedings; (ii) the Settlement Class Member's full name, current mailing address, and telephone number; (iii) a statement that states with specificity the grounds for the objection, as well as any documents supporting the objection; (iv) a statement as to whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (v) the identity of any attorneys representing the objector; (vi) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; (vii) a list of all other matters in which the objecting Settlement Class Member and/or his/her attorney has lodged an objection to a class action settlement; and (viii) the signature of the Settlement Class Member or the Settlement Class Member's attorney.

Any Settlement Class Member who fails to comply with the provisions in this Paragraph may waive and forfeit any and all rights he or she may have to object, and shall be bound by all the terms of the Settlement Agreement, this Order, and by all proceedings, orders, and judgments

in this matter, including, but not limited to, the release in the Settlement Agreement if Final Order and Judgment is entered.

Any Settlement Class Member, including a Settlement Class Member who serves a written objection, as described above, may appear at the Final Approval Hearing, either in person or through counsel hired at the Settlement Class Member's expense, to object to or comment on the fairness, reasonableness, or adequacy of the Settlement, the Service Award Request, or the Fee Request.

If Final Order and Judgment is entered, any Settlement Class Member who fails to object in the manner prescribed herein shall be deemed to have waived his or her objections and shall be forever barred from making any such objections in this action or in any other proceeding or from challenging or opposing, or seeking to reverse, vacate, or modify any approval of the Settlement Agreement, the Service Award Request, or the Fee Request.

11. **Claims Process and Distribution and Allocation Plan**. Settlement Class Representatives and Defendant have created a process for assessing and determining the validity and value of claims and a payment methodology to Settlement Class Members who submit a timely, valid Claim Form. The Court preliminarily approves the plan for remuneration described in the Settlement Agreement and directs that the Settlement Administrator effectuate the distribution of Settlement consideration according to the terms of the Settlement Agreement, should the Settlement be finally approved.

Settlement Class Members who qualify for and wish to submit a Claim Form shall do so in accordance with the requirements and procedures specified in the Notice and the Claim Form. If Final Order and Judgment is entered, all Settlement Class Members who qualify for any benefit under the Settlement but fail to submit a claim in accordance with the requirements and procedures

specified in the Notice and the Claim Form shall be forever barred from receiving any such benefit, but will in all other respects be subject to and bound by the provisions in the Settlement Agreement, the Release included in that Settlement Agreement, and the Final Order and Judgment.

12.     **Termination of Settlement**. This Order shall become null and void and shall be without prejudice to the rights of the Parties, all of whom shall be restored to their respective positions existing as of the date of the execution of the Settlement Agreement if the Settlement is not finally approved by the Court or is terminated in accordance with the Settlement Agreement. In such event, the Settlement and Settlement Agreement shall become null and void and be of no further force and effect, and neither the Settlement Agreement nor the Court's orders, including this Order, relating to the Settlement shall be used or referred to for any purpose whatsoever.

13.     **Use of Order**. This Order shall be of no force or effect if Final Order and Judgment is not entered or there is no Effective Date and shall not be construed or used as an admission, concession, or declaration by or against Defendants of any fault, wrongdoing, breach, liability, or the certifiability of any class. Nor shall this Order be construed or used as an admission, concession, or declaration by or against the Settlement Class Representative or any other Settlement Class Member that his or her claim lacks merit or that the relief requested is inappropriate, improper, unavailable, or as a waiver by any Party of any defense or claim he, she, or it may have in this litigation or in any other lawsuit.

14.     **Stay of Proceedings**. Except as necessary to effectuate this Order, all proceedings and deadlines in this matter are stayed and suspended pending the Final Approval Hearing and issuance of the Final Order and Judgment, or until further order of this Court.

15.     **Continuance of Hearing**. The Court reserves the right to adjourn or continue the Final Approval Hearing and related deadlines without further written notice to the Settlement

Class. If the Court alters any of those dates or times, the revised dates and times shall be posted on the website maintained by the Settlement Administrator.

16. **Summary of Deadlines**. The preliminarily approved Settlement shall be administered according to its terms pending the Final Approval Hearing. Deadlines arising under the Settlement Agreement and this Order include but are not limited to:

**Notice Completion Deadline**: 30 Days after Preliminary Approval

**Motion for Final Approval**: 30 Days before Final Approval Hearing

**Motion for Service Awards, Attorneys' Fees and Costs**: 14-Days prior to the Objection Deadline and Opt-Out Deadline

**Opt-Out Deadline**: 60 Days after Notice Completion

**Objection Deadline**: 60 Days after Notice Completion

**Replies in Support of Final Approval, Service Awards and Fee Requests**: 14 Days before Final Approval Hearing

**Claim Deadline**: 90 Days after Notice Completion

**Final Approval Hearing**: at least 110 Days after Preliminary Approval

IT IS SO ORDERED this _____ day of _____, 2023.

_____

By:    _____

**<u>EXHIBIT 5</u>**

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PATRICK REYNOLDS, DANIEL LEWIS, LUCIA MARANO, KRISTEN FRANCE, ABBEY ABRECHT and JAHIDAH DIAAB, individually and on behalf of all others similarly situated, | Case No. 1:22-CV-06846-LGS |
| Plaintiff(s), | **FINAL APPROVAL ORDER AND JUDGMENT** |
| v. | |
| MARYMOUNT MANHATTAN COLLEGE, | |
| Defendant. | |

**WHEREAS,** Plaintiffs PATRICK REYNOLDS, DANIEL LEWIS, LUCIA MARANO, KRISTEN FRANCE, ABBEY ABRECHT and JAHIDAH DIAAB, individually and on behalf of all others similarly situated (collectively "Plaintiffs), having moved this Court for an Order granting final approval of class action settlement, and Defendant MARYMOUNT MANHATTAN COLLEGE ("MMC" or "Defendants"), having appeared at the hearing;

**WHEREAS,** this Court granted preliminary approval of the parties' Settlement Agreement in the above-captioned action ("Action") on **[INSERT DATE]** ("Preliminary Approval Order");

**WHEREAS,** notice to the class members ("Class Members") was sent in accordance with the Preliminary Approval Order providing an opportunity for Class Members to receive benefits under the Settlement Agreement, opt-out, or submit objections;

**WHEREAS, [XX]** Class Members submitted objections or Opt-Out Statements;

**NOW,** upon the reading of the Affirmation of **[INSERT ATTORNEY NAME]** executed on **[INSERT DATE]** and annexed exhibits and memorandum of law in support of plaintiffs' motion for final approval of class action settlement, and after hearing counsel for all of the parties at the **[INSERT FINAL APPROVAL HEARING DATE]** fairness hearing and after due

deliberation having been held thereon, the Court grants final approval of the Settlement Agreement, and hereby find and orders for purposes of settlement only:

1.      Capitalized terms used in this Order and Judgment and not otherwise defined herein shall have the definitions assigned to them in the Settlement Agreement.

2.      This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Class Members with respect to the following Class certified under Rule 23 of the Federal Rules of Civil Procedure: All individuals who were sent notification by M that their personal information was or may have been compromised in the Data Incident.

3.      The Court hereby fully, finally and unconditionally approves the Settlement embodied in the Settlement Agreement as being a fair, reasonable and adequate settlement and compromise of the claims asserted in the Action.

4.      The Class Members have been given proper and adequate notice of the Settlement, fairness hearing, Class Counsel's application for attorneys' fees, and the service award to the Settlement Class Representative.

5.      An affidavit or declaration of the Settlement Administrator's compliance with the Notice process has been filed with the Court.  The Notice process as set forth in the Settlement Agreement and ordered in the Preliminary Approval Order constitutes the best notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Class Members in accordance with the requirements of Federal Rule of Civil Procedure 23(c)(2).

6.      The Court hereby orders that the Settlement Agreement shall be implemented in accordance with its terms and conditions pursuant to the Settlement Agreement.

7.      In accordance with Paragraph <mark>38</mark> of the Settlement Agreement, Class Counsel is hereby awarded attorneys' fees and costs in the total amount of _____, to be paid as specified in the Settlement Agreement.

8.      In accordance with Paragraph <mark>39</mark> of the Settlement Agreement, Settlement Class Representatives are hereby awarded Three Thousand Five Hundred Dollars and Zero Cents ($3,500.00) each, for a total of Twenty-One Thousand Dollars and Zero Cents ($21,000.00), to be paid as specified in the Settlement Agreement.

9.      Upon the Effective Date, the Action shall be, and hereby is dismissed with prejudice in its entirety as to the Defendant, with each party to bear their own costs and attorneys' fees, except as provided in the Settlement Agreement, and all of the claims of the Settlement Class Members shall be, and hereby are, dismissed and released pursuant to the Settlement Agreement.

10.     Each Settlement Class Member is bound by this Judgment and Order, including, without limitation, the release of certain claims as set forth in the Settlement Agreement, which includes as follows:

> any and all claims or causes of action of every kind and description, including any causes of action in law, claims in equity, complaints, suits or petitions, and any allegations of wrongdoing, demands for legal, equitable or administrative relief (including, but not limited to, any claims for injunction, rescission, reformation, restitution, disgorgement, constructive trust, declaratory relief, compensatory damages, consequential damages, penalties, exemplary damages, punitive damages, attorneys' fees, costs, interest or expenses) that the Releasing Parties had or have (including, but not limited to, assigned claims and any and all "Unknown Claims" as defined below) that have been or could have been asserted in the Action or in any other action or proceeding before any court, arbitrator(s), tribunal or administrative body (including but not limited to any state, local or federal regulatory body), regardless of whether the claims or causes of action are based on federal, state, or local law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether they are known or unknown, foreseen or unforeseen, suspected or unsuspected, or fixed or contingent, arising out of, or related or connected in any way with the claims or causes of action of every kind and description that were brought, alleged, argued, raised or asserted in any pleading or court filing in the Action, including but not limited to those concerning: (1) the alleged access, disclosure and/or acquistion of Settlement Class Members' personal information in the Data Incident;

(2) MMC's maintenance of Settlement Class Members' personal information as it relates to the Data Incident; (3) MMC's information security policies and practices as it relates to the Data Incident; and/or (4) MMC's provision of notice to Settlement Class Members following the Data Incident.

11.     As of the final date of the Opt-Out Period, _____ potential Class Members have submitted a valid request to be excluded from the Settlement. The names of those persons are set forth in Exhibit A to this Order. Those persons are not bound by this Final Order and Judgment, as set forth in the Settlement Agreement.

12.     The Court has considered all of the documents filed in support of the Settlement, and has fully considered all matters raised, all exhibits and affidavits filed, all evidence received at the Final Approval Hearing, all other papers and documents comprising the record herein, and all oral arguments presented to the Court.

13.     This Judgment and Order, and the Settlement Agreement, and all papers related thereto, are not, and shall not be construed to be, an admission by the Defendant of any liability, claim or wrongdoing in this Action or in any other proceeding.

14.     In the event that the Settlement Agreement does not become effective in accordance with the Settlement Agreement, then this Judgment and Order shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement and shall be vacated, and in such event, all orders entered in connection herewith shall be null and void to the extent provided by and in accordance with the Settlement Agreement.

15.     The Court hereby find that there is no just reason for delay of entry of this Judgment and hereby directs its entry.

Without affect the finality of this Judgment in any way, this Action shall remain open and the Court hereby retains continuing jurisdiction over (a) implementation of this Settlement

Agreement; (b) disposition of the settlement funds; and (c) all parties hereto for the purpose of construing, enforcing and administering the Settlement Agreement and this Judgment.

      **IT IS SO ORDERED** this ___ day of _____, 202___.


_____
Hon. Lorna G. Schofield
United States District Judge

# <u>EXHIBIT B</u>



Firm Resume

## FIRM PROFILE

MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN LLP ("MILBERG") IS A LEADING GLOBAL PLAINTIFFS' FIRM, successfully pioneering and litigating complex litigations in the following practice areas: class actions, antitrust and competition law, securities fraud, consumer protection, cyber security and data breach litigation, financial and insurance litigation, environmental law, securities litigation, and product liability. Our attorneys possess a renowned depth of legal expertise, employ the highest ethical and legal standards, and pride themselves on providing stellar service and achieving extraordinary results for their clients.

Milberg was founded in 1965, taking the lead in landmark cases that have set groundbreaking legal precedents and prompted changes in corporate governance benefiting shareholders and consumers. For more than 50 years, the firm has protected victims' rights, recovering over $50 billion in verdicts and settlements. Milberg was one of the first law firms to prosecute class actions in federal courts on behalf of investors and consumers. The firm pioneered this type of litigation and became widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing.

Milberg has offices in Illinois, New York, California, Florida, Georgia, Kentucky, Louisiana, Mississippi, North Carolina, South Carolina, Kentucky, Tennessee, Puerto Rico and Washington D.C. Recently, Milberg opened offices in London, Belguim and Germany that serve clients in the European Union. In addition, Milberg has expanded in South America, with primary emphasis in Brazil. Milberg has more than 100 attorneys worldwide.

The firm's reputation has been built by successfully taking on challenging cases across a spectrum of practice areas for the past half-century. From resolving business disputes to proving antitrust conspiracies, Milberg is equipped to handle complex, high-stakes cases at any stage of the litigation process.

The firm's lawyers have been regularly recognized as leaders in the plaintiffs' bar by the National Law Journal, Legal 500, Chambers USA, and Super Lawyers, among others.

## Notable Class Action Cases

### Antitrust

*In re: TFT-LCD (Flat Panel) Antitrust Litigation,* No. 3:07-cv-01827, MDL No. 1827 (N.D. Cal.) (combined settlement totaling nearly $1.1 billion in suit alleging the illegal formation of an international cartel to restrict competition in the LCD panel market) (2012).

### Apartment Fee

*Stewart v. Southwood Realty Company* (Cumberland Co., NC) (settlement of class claims arising from apartment communities allegedly assessing improper eviction fees) (2020).

*Lewis et al. v. Bridge Property Management, LLC et al.* (Wake Co., NC) (settlement of class claims arising from apartment communities allegedly assessing improper eviction fees) (2020).

*Hargrove v. Grubb Management, Inc. et al.* (Wake Co., NC) (settlement of class claims arising from apartment communities allegedly assessing improper eviction fees) (2020).

*Rush v. The NRP Group LLC* (USDC MD NC) (settlement of class claims arising from apartment communities allegedly assessing improper eviction fees) (2020).

*Hamilton v. Arcan Capital, LLC et al.* (Forsyth Co., NC) (settlement of class claims arising from apartment communities allegedly assessing improper eviction fees) (2021).

*Suarez v. Camden Development, Inc. et al.* (USDC ED NC) (settlement of class claims arising from apartment communities allegedly assessing improper eviction fees) (2021).

*Milroy et al. v. Bell Partners Inc. et al.* (USDC ED NC) (settlement of class claims arising from apartment communities allegedly assessing improper eviction fees) (2021).

*Davis v. RAM Partners, LLC* (USDC MD NC) (settlement of class claims arising from apartment communities allegedly assessing improper eviction fees) (2021).

*Hampton v. KPM et al.* (USDC WD NC) (settlement of class claims arising from apartment communities allegedly assessing improper eviction fees) (2021).

*Brogden v. Kenney Properties, Inc. et al.* (Wake Co., NC) (settlement of class claims arising from apartment communities allegedly assessing improper eviction fees) (2021).

*Williams v. Pegasus Residential, LLC* (USDC MD NC) (preliminary approval of settlement of class claims arising from apartment communities allegedly assessing improper eviction fees) (2021).

*Medina v. Westdale et al*. (USDC ED NC) (settlement of class claims arising from apartment communities allegedly assessing improper eviction fees) (2021).

*Talley et al. v. Lincoln Property Company* (USDC ED NC) (preliminary approval of settlement of class claims arising from apartment communities allegedly assessing improper eviction fees pending) (2021).

*McCord v. PRG Real Estate Mgmt, Inc. et al.* (USDC MD NC) (pending final approval of settlement of class claims arising from apartment communities allegedly assessing improper eviction fees) (2021).

**<u>Appliances</u>**

*Ersler, et. al v. Toshiba America et. al*, No. 07- 2304 (D.N.J.) (settlement of claims arising from allegedly defective television lamps) (2009).

*Maytag Neptune Washing Machines* (class action settlement for owners of Maytag Neptune washing machines).

*Stalcup, et al. v. Thomson, Inc.* (Ill. Cir. Ct.) ($100 million class settlement of clams that certain GE, PROSCAN and RCA televisions may have been susceptible to temporary loss of audio when receiving broadcast data packages that were longer than reasonably anticipated or specified) (2004).

*Hurkes Harris Design Associates, Inc., et al. v. Fujitsu Computer Prods. of Am., Inc.* (settlement provides $42.5 million to pay claims of all consumers and other end users who bought certain Fujitsu Desktop 3.5" IDE hard disk drives) (2003).

*Turner v. General Electric Company*, No. 2:05-cv-00186 (M.D. Fla.) (national settlement of claims arising from allegedly defective refrigerators) (2006).

## Automobiles

*In re General Motors Corp. Speedometer Prods. Liability Litig.,* MDL 1896 (W.D. Wash.) (national settlement for repairs and reimbursement of repair costs incurred in connection with defective speedometers) (2007).

*Baugh v. The Goodyear Tire & Rubber Company* (class settlement of claims that Goodyear sold defective tires that are prone to tread separation when operated at highway speeds; Goodyear agreed to provide a combination of both monetary and non-monetary consideration to the Settlement Class in the form of an Enhanced Warranty Program and Rebate Program) (2002).

*Lubitz v. Daimler Chrysler Corp.,* No. L-4883-04 (Bergen Cty. Super. Ct, NJ 2006) (national settlement for repairs and reimbursement of repair costs incurred in connection with defective brake system; creation of $12 million fund; 7th largest judgment or settlement in New Jersey) (2007).

*Berman et al. v. General Motors LLC,* Case No. 2:18-cv-14371 (S.D. Fla.) (Co-Lead Counsel; national settlement for repairs and reimbursement of repair costs incurred in connection with Chevrolet Equinox excessive oil consumption).

## Civil Rights

*In re Black Farmers Discrimination Litigation*, Case No. 1:08-mc-00511 (D.D.C.) ($1.25 billion settlement fund for black farmers who alleged U.S. Department of Agriculture discriminated against them by denying farm loans) (2013).

*Bruce, et. al. v. County of Rensselaer et. al.,* Case No. 02-cv-0847 (N.D.N.Y.) (class settlement of claims that corrections officers and others employed at the Rensselaer County Jail (NY)

engaged in the practice of illegally strip searching all individuals charged with only misdemeanors or minor offenses) (2004).

## Commercial

*In re: Outer Banks Power Outage Litigation,* 4:17-cv-141 (E.D.N.C) (Co-Lead Counsel; $10.35 million settlement for residents, businesses, and vacationers on Hatteras and Ocracoke Islands who were impacted by a 9-day power outage) (2018)

## Construction Materials

*Cordes et al v. IPEX, Inc.*, No. 08-cv-02220-CMA-BNB (D. Colo.) (class action arising out of defective brass fittings; court-appointed member of Plaintiffs' Steering Committee) (2011).

*Elliott et al v. KB Home North Carolina Inc. et al* 08-cv-21190 (N.C. Super. Ct. Wake County) (Lead Counsel; class action settlement for those whose homes were constructed without a weather-resistant barrier)(2017)

*In re: Pella Corporation Architect and Designer Series Windows Marketing, Sales Practices and Products Liability Litigation,* MDL No. 2514 (D.S.C.)(class action arising from allegedly defective windows; Court-appointed Co-Lead Counsel).

*In re MI Windows and Doors, Inc., Products Liability Litigation*, MDL No. 2333 (D.S.C) (National class action settlement for homeowners who purchased defective windows; Court-appointed Co-Lead Counsel).

*In re: Atlas Roofing Corporation Chalet Shingle Products Liability Litig.*, MDL No. 2495 (N.D. Ga.) (class action arising from allegedly defective shingles; Court-appointed Co-Lead Counsel).

*Helmer et al. v. Goodyear Tire & Rubber Co*., No. 12-cv-00685-RBJ (D. Colo. 2012) (class action arising from allegedly defective radiant heating systems; Colorado class certified, 2014 WL 3353264, July 9, 2014)).

*In re: Zurn Pex Plumbing Products Liability Litigation*, No. o:08-md-01958, MDL No. 1958 (D. Minn.) (class action arising from allegedly plumbing systems; member of Executive Committee; settlement) (2012).

*Hobbie, et al. v. RCR Holdings II, LLC, et al.*, No. 10-1113 , MDL No. 2047 (E.D. La.) ($30 million settlement for remediation of 364 unit residential high-rise constructed with Chinese drywall) (2012).

*In re: Chinese Manufactured Drywall Products Liability Litigation,* No. 2:09-md-02047, MDL No. 2047 (E.D. La.) (litigation arising out of defective drywall) (appointed Co-Chair, Insurance Committee) (2012).

*Galanti v. Goodyear Tire & Rubber Co*., No. 03-209 (D.N.J. 2003) (national settlement and creation of $330 million fund for payment to owners of homes with defective radiant heating systems) (2003).

*In re Synthetic Stucco Litig.,* Civ. Action No. 5:96-CV-287-BR(2) (E.D.N.C.) (member of Plaintiffs' Steering Committee; settlements with four EIFS Manufacturers for North Carolina homeowners valued at more than $50 million).

*In re Synthetic Stucco (EIFS) Prods. Liability Litig.,* MDL No. 1132 (E.D.N.C.) (represented over 100 individuals homeowners in lawsuits against homebuilders and EIFS manufacturers).

*Posey, et al. v. Dryvit Systems, Inc.,* Case No. 17,715-IV (Tenn. Cir. Ct) (Co-Lead Counsel; national class action settlement provided cash and repairs to more than 7,000 claimants) (2002).

*Sutton, et al. v. The Federal Materials Company, Inc., et al,* No. 07-CI-00007 (Ky. Cir. Ct) (Co-Lead Counsel; $10.1 million class settlement for owners of residential and commercial properties constructed with defective concrete).

*Staton v. IMI South, et al.* (Ky. Cir. Ct.) ((Co-Lead Counsel; class settlement for approximately $30 million for repair and purchase of houses built with defective concrete).

*In re Elk Cross Timbers Decking Marketing, Sales Practices and Products Liability Litigation*, No. 15-cv-0018, MDL No. 2577 (D.N.J.) (Lead Counsel; national settlement to homeowners who purchased defective GAF decking and railings).

*Bridget Smith v. Floor and Decor Outlets of America, Inc*., No. 1:15-cv-4316 (N.D. Ga.) (Co-Lead Counsel; National class action settlement for homeowners who purchased unsafe laminate wood flooring).

*In re Lumber Liquidators Chinese-Manufactured Flooring Products Marketing, Sales Practices and Products Liability Litigation* MDL No. 1:15-md-2627 (E.D.Va.) (Formaldehyde case; $36 million national class action settlement for member who purchased a certain type of laminate flooring).

*In re Lumber Liquidators Chinese-Manufactured Laminate Flooring Durability Marketing, Sales Practices Litigation* MDL No. 1:16-md-2743 (E.D.Va.) (Co-Lead Counsel; Durability case; $36 million national class action settlement for member who purchased a certain type of laminate flooring).

*In re Windsor Wood Clad Window Products Liability Litigation* MDL No. 2:16-md-02688 (E.D. Wis.) (National class action settlement for homeowners who purchased defective windows; Court-appointed Lead Counsel).

*In re Allura Fiber Cement Siding Products Liability Litigation* MDL No. 2:19-md-02886 (D.S.C.) (class action arising from allegedly defective cement board siding; Court-appointed Lead Counsel).

## Environmental

*Nnadili, et al. v. Chevron U.S.A., Inc*, No. 02-cv-1620 (D.D.C.) ($6.2 million settlement for owners and residents of 200 properties located above underground plume of petroleum from former Chevron gas station) (2008).

## Fair Labor Standards Act/Wage and Hour

*Craig v. Rite Aid Corporation*, Civil No. 08-2317 (M.D. Pa.) (FLSA collective action and class action settled for $20.9 million) (2013).

*Stillman v. Staples, Inc.,* Civil No. 07-849 (D.N.J. 2009) (FLSA collective action, plaintiffs' trial verdict for $2.5 million; national settlement approved for $42 million) (2010).

*Lew v. Pizza Hut of Maryland, Inc.*, Civil No. CBB-09-CV-3162 (D. Md.) (FLSA collective action, statewide settlement for managers-in-training and assistant managers, providing recompense of 100% of lost wages) (2011).

## Financial

*Roberts v. Fleet Bank (R.I.), N.A.*, Civil Action No. 00-6142 (E. D. Pa.) ($4 million dollar settlement on claims that Fleet changed the interest rate on consumers' credit cards which had been advertised as "fixed.") (2003).

*Penobscot Indian Nation et al v United States Department of Housing and Urban Development*, N. 07-1282 (PLF) (D.D.C. 2008) (represented charitable organization which successfully challenged regulation barring certain kinds of down-payment assistance; Court held that HUD's promulgation of rule violated the Administrative Procedure Act) (2008).

## Impact Fees

*Town of Holly Springs,* No. 17-cvs-6244, 17-cvs-6245, 18-cvs-1373 (Wake Co., NC) (Court appointed Class Counsel; Class action settlement with a $7.9 million fund for builders and developers to recover improper capacity replacement and transportation fees paid to the town) (2019).

*Larry Shaheen v. City of Belmont,* No. 17-cvs-394 (Gaston Co., NC) (Court appointed Class Counsel; Class action settlement with a $1.65 million fund for builders and developers to recover improper capacity replacement and transportation fees paid to the city) (2019).

*Upright Builders Inc. et al. v. Town of Apex,* No. 18-cvs-3720 & 18-cvs-4384, (Wake Co., NC) (Court appointed Class Counsel; Class action settlement with a $15.3 million fund for builders and developers to recover improper capacity replacement and transportation paid fees to the town) (2019).

*Mayfair Partners, LLC et al. v. City of Asheville,* No. 18-cvs-04870 (Buncombe County) (Court appointed Class Counsel; Class action settlement with a $1,850,000 million fund for builders and developers to recover improper impact fees paid to the city) (2020).

*Shenandoah Homes, LLC v. Town of Clayton*, No. 19-cvs-640 (Johnston County) (Court appointed Class Counsel; Class action settlement with a $2.7 million fund for builders and developers to recover improper impact fees paid to the town) (2020).

*Brookline Homes LLC v. City of Mount Holly*, Gaston County file no. 19-cvs-1163 (Gaston County) (Court appointed Class Counsel; Class action settlement with a $483,468 fund for builders and developers to recover improper impact fees paid to the city) (2020).

*Eastwood Construction, LLC et. al v. City of Monroe*, Union County file nos. 18-CVS-2692 (Union County) (Court appointed Class Counsel; Class action settlement with a $1,750,000 million fund for builders and developers to recover improper impact fees paid to the city) (2020).

## Insurance

*Young, et al. v. Nationwide Mut. Ins. Co, et al.*, No. 11-5015 (E.D. Ky.) (series of class actions against multiple insurance companies arising from unlawful collection of local taxes on premium payments; class certified and affirmed on appeal, 693 F.3d 532 (6th Cir., 2012); settlements with all defendants for 100% refund of taxes collected) (2014).

*Nichols v. Progressive Direct Insurance Co., et al.*, No. 2:06cv146 (E.D. Ky.) (Class Counsel; class action arising from unlawful taxation of insurance premiums; statewide settlement with Safe Auto Insurance Company and creation of $2 million Settlement Fund; statewide settlement with Hartford Insurance Company and tax refunds of $1.75 million) (2012).

## Privacy/Data Breach

*Baksh v. Ivy Rehab Network, Inc.*, Case No. 7:20-cv-01845-CS (S.D. N.Y.) (class counsel in a data breach class action settlement; final approval granted).

*In re: GE/CBPS Data Breach Litigation*, 1:2020-cv-02903, Doc. 35 (S.D.N.Y.) (appointed co-lead counsel in nationwide class action).

*Mowery et al. v. Saint Francis Healthcare System*, Case No. 1:20-cv-00013-SRC (E.D. Mo.) (appointed class counsel; final approval granted);

*Chatelain et al. v. C, L and W PLLC d/b/a Affordacare Urgent Care Clinics*, Case No. 50742-A (42nd District Court for Taylor County, Texas) (appointed class counsel; settlement valued at over $7 million; final approval granted).

*Bailey v. Grays Harbor County Public Hospital District et al.*, Case No. 20-2-00217-14 (Grays Harbor County Superior Court, State of Washington) (appointed class counsel in hospital data breach class action involving approximately 88,000 people; final approval granted Septem 2020).

*Nelson, et al. v. Idaho Central Credit Union*, No. CV03-20-00831 (Bannock County, Idaho) (appointed co-lead counsel in data breach class action involving 17,000 class members; granted final approval of settlement valued at $3.3 million).

*In Re: Canon U.S.A. Data Breach Litigation*, Master File No. 1:20-cv-06239-AMD-SJB (E.D.N.Y.) (appointed co-lead counsel).

*Richardson v. Overlake Hospital Medical Center et al.*, Case No. 20-2-07460-8 SEA (King County Superior Court, State of Washington (appointed class counsel in data breach case; final approval granted September 2021).

*Kenney et al. v. Centerstone of America, Inc. et al.*, Case No. 3:20-cv-01007-EJR (M.D. Tenn.) (appointed lead class counsel; final approval of $1.5 million settlement granted August 9, 2021).

*Jackson-Battle v. Navicent Health, Inc.,* Civil Action No. 2020-CV-072287 (Superior Court of Bibb County, Georgia) (appointed class counsel in data breach case involving 360,000 patients; final approval granted Aug. 2021);

*Suren et al. v. DSV Solutions, LLC*, Case No. 2021CH000037 (Circuit Court for the Eighteenth Judicial Circuit of DuPage County, Illinois) (appointed Settlement Class Counsel, final approval granted September 27, 2021).

*Chacon v. Nebraska Medicine*, Case No. 8:21-cv-00070-RFR-CRZ (D. Neb.) (appointed class counsel in data breach settlement, final approval granted September 2021);

*Aguallo et al v. Kemper Corporation et al.,* Case No. 1:21-cv-01883 (N.D. Ill.) (appointed Co-lead Counsel, final approval granted of $17.1 million class settlement).

*Martinez et al. v. NCH Healthcare System, Inc.*, Case No. 2020-CA-000996 (Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida) (appointed Settlement Class Counsel; final approval granted).

*Carr et al. v. Beaumont Health et al.*, Case No. 2020-181002-NZ (Circuit Court for the County of Oakland, Michigan) (appointed co-class counsel in data breach case involving 112,000 people; final approval granted October 2021).

*Klemm et al. v. Maryland Health Enterprises, Inc. D/B/A Lorien Health Services,* C-03-CV-20-002899 (Circuit Court for Baltimore County, Maryland) (appointed Settlement Class Counsel, preliminary approval granted November 2021).

*Cece et al. v. St. Mary's Health Care System, Inc. et al.*, Civil Action No. SU20CV0500 (Superior Court of Athens-Clarke County, Georgia) (appointed Settlement Class Counsel in data breach case involving 55,652 people; final approval granted April 2022).

*In re: Herff Jones Data Breach Litigation*, Master File No. 1:21-cv-1329-TWP-DLP (S.D. Ind.) (appointed co-lead counsel in data breach involving over 1 million persons; preliminary approval of $4.35 million settlement granted January 2022).

Milberg Firm Resume
Page 10 of 11

*In Re: CaptureRx Data Breach Litigation*, No. 5:21-cv-00523-OLG (W.D. Tex.) (appointed co-lead counsel in data breach case involving over 2.4 million class members; preliminary approval of $4.75 million settlement granted February 2022).

*In re Arthur J. Gallagher Data Breach Litigation*, No. 1:21-cv-04056 (N.D. Ill.) (appointed co-lead counsel in data breach case involving over 3 million class members).

*Heath v. Insurance Technologies Corp.*, No. 21-cv-01444 (N.D. Tex.) ($11 million settlement for a major data breach involving more than 4 million consumers).

*Powers, Sanger et al v. Filters Fast LLC*, Case 3:20-cv-00982-jdp (appointed co-lead Settlement Class Counsel; preliminary approval granted November 2021).

*Garcia v. Home Medical Equipment Specialists, LLC*, Case No. D-202-cv-2021-06846 (appointed class counsel; final approval granted June 2022).

*Baldwin et al. v. National Western life Insurance Company*, Case No. 2:21-cv-04066 (W.D. Mo.) (appointed co-class counsel; final approval granted June 2022 in settlement valued at approximately $4.4 million).

*Hashemi, et. al. v. Bosley, Inc.*, Case No. 21-cv-00946-PSG (RAOx) (C.D. CA) (appointed co-class counsel; preliminary approval granted February 2022).

*In re: Blaukbaud, Inc. Customer Data Security Breach Litigation* (MDL 2972) (Milberg attorneys appointed co-lead counsel).

*Paras, et al v. Dental Care Alliance, LLC*, Case No. 22EV000181 (Ga. State Court Fulton Cnty.); (appointed co-lead class counsel; preliminary approval granted April 2022).

*Hough v. Navistar, Inc.,* Case No.: 2021L001161 (Circuit Court for the Eighteenth Judicial Circuit, Dupage County, Illinois); (appointed co-lead class counsel; final approval granted May 2022).

*Purvis, et al v. Aveanna Healthcare, LLC*, Case No. 1:20-cv-02277-LMM (N.D. Ga.) (appointed class counsel; preliminary approval granted June 2022).

*Clark v. Mercy Hospital, et al*, Case No. CVCV082275 (Iowa Dist. Crt, Johnson Cnty.) (appointed class counsel; preliminary approval granted February 2022).

*Myschka, et al v. Wolfe Clinic, P.C. d/b/a Wolfe Eye Clinic*, (Iowa Dist. Crt., Marshall Cnty.) (appointed class counsel; final approval granted June 2022).

*Devine, et al v. Health Aid of Ohio, Inc.*, (Ohio Court of Common Pleas, Cuyahoga Cnty.) (appointed class counsel; preliminary approval granted March 2022).

*James v. CohnReznick LLP,* Case No. 1:21-cv-06544 (S.D.N.Y.), (appointed as co-class counsel; preliminary approval granted May 2022).

*Davidson v. Healthgrades Operating Company, Inc.*, Case No. 1:21-cv-01250-RBJ (D. Colo.), (appointed class counsel; preliminary approval granted April 2022).

*Bodie v. Capitol Wholesale Meats, Inc.,* Case No. 2022CH000020 (Ill. 18th Jud. Cir. Crt., DuPage Cnty.) (appointed class counsel; preliminary approval granted March 2022).

*Culp v. Bella Elevator LLC*, Case No. 2021-CH-00014 (Ill. 10th Jud. Cir. Crt., Peoria Cnty.) (appointed class counsel; final approval granted May 2022).