## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **PATRICK REYNOLDS, DANIEL LEWIS, LUCIA MARANO, KRISTEN FRANCE, ABBEY ABRECHT and JAHIDAH DIAAB,** individually and on behalf of all others similarly situated**,** | Case No. 1:22-cv-06846 |
| Plaintiffs, | JUDGE LORNA G. SCHOFIELD |
| v. | |
| **MARYMOUNT MANHATTAN COLLEGE,** | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF CLASS PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT <u>MARYMOUNT MANHATTAN COLLEGE</u>

## **TABLE OF CONTENTS**

I.    Introduction .................................................................................................................... 2

II.   Summary of the Action and Settlement ......................................................................... 3

      A.    Background ......................................................................................................... 4

      B.    Terms of the Settlement ..................................................................................... 4

III.  Preliminary Approval and Notice .................................................................................. 5

IV.   The Settlement Merits Final Approval by the Court ..................................................... 6

      A.    The Settlement Meets the Standards for Final Approval Under Rule 23(e) ................ 6

      1.    Plaintiffs and Settlement Class Counsel Have Adequately Represented the
            Settlement Class in this Action ........................................................................... 8

      2.    The Settlement Was Negotiated at Arm's Length and Aided by a Respected and
            Experienced Mediator ....................................................................................... 10

      3.    The Relief Provided for the Class Is Adequate ................................................. 11

            **a.  The Relief Provided is Superior to Continued Litigation** .......................... 12

            **b.  The Reaction of the Settlement Class** ...................................................... 13

            **c.  Stage of the Proceedings and Amount of Discovery Completed** ................ 14

            **d.  The Risks of Continued Litigation** ........................................................... 15

            **e.  The Ability of Defendant to Withstand Greater Judgment** ....................... 17

            **f.  The Reasonableness of the Settlement Amount in Light of the Best
            Possible Recovery and the Risks of Litigation** ........................................ 17

      4.    The Remaining Rule 23(e)(2) Factors Support Final Approval ............................... 18

V.    The Court Should Certify the Settlement Class ............................................................ 20

VI.   Notice To the Settlement Class Satisfied Rule 23 and Due Process .................................. 21

VII.  Conclusion ................................................................................................................... 23

# **TABLE OF AUTHORITIES**

**Page(s)**

## Cases

*Belton v. GE Capital Consumer Lending, Inc.*,
    No. 21-cv-9493-CM, 2022 WL 407404 (S.D.N.Y. Feb. 10, 2022) ........................................ 11

*Brinker Data Incident Litig.*,
    No. 3:18-cv-686-TJC-MCR,  2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) ........................ 16

*Castagna v. Madison Square Garden, L.P.*,
    2011 WL 2208614 (S.D.N.Y. June 7, 2011) .......................................................... 20

*Charron v. Pinnacle Group NY LLC*,
    874 F. Supp. 2d 179 (S.D.N.Y. 2012),
    *aff'd sub nom, Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013) ............................. 14

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)...................................................................... *passim*

*City of Providence v. Aéropostale, Inc.*,
    No. 11-cv-7132-CM-GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub nom.* ........ 7

*Arbuthnot v. Pierson*,
    607 F. App'x 73 (2d Cir. 2015) .................................................................... 7

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)......................................................................... 13

*Dupler v. Costco Wholesale Corp.*,
    705 F. Supp. 2d 231 (E.D.N.Y. 2010) ............................................................. 14

*Fleisher v. Phx. Life Ins. Co.*,
    No. 11-cv-8405 and 14-cv-8714-CM, 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)............. 15

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
    104 F.Supp.3d 290 (E.D.N.Y 2015) ............................................................... 15

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)......................................................................... 8

*Hall v. ProSource Techs., LLC*,
    No. 14-cv-2502-SIL, 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016)................................. 22

*Hammond v. The Bank of N.Y. Mellon Corp.*,

No. 08-cv-6060-RMB-RLE, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) .................. 12

*Hart v. RCI Hospital Holdings, Inc.*,
No. 09-cv-3043-PAE, 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015) ...................................... 7

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ...................................................................................... 17

*In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) .................................................................................... 20

*In re Countrywide Financial Corp Customer Data Sec. Breach Litig.*,
No. 3:08-md-01998, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ...................................... 14

*In re Currency Conversion Fee Antitrust Litig.*,
263 F.R.D. 110 (S.D.N.Y. 2009), *aff'd, Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d
Cir. 2010) ................................................................................................................................. 9

*In re Facebook, Inc., IPO Secs. & Deriv. Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018) .................................................................................... 10

*In re Giant Interactive Group, Inc. Securities Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ...................................................................................... 17, 20

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019) .......................................................................... 8, 10, 13

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
293 F.R.D. 21 (D. Me. 2013) ................................................................................................. 12

*In re Interpublic Sec. Litig.*,
No. 02 Civ. 6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ........................................... 12

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
No. 11-md-2262 and 12-cv-5822-NRB, 2020 WL 6290596 (S.D.N.Y. Oct. 27, 2020).......... 23

*In re LinkedIn User Priv. Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) ........................................................................................... 12

*In re Luxottica Grp. S.p.A. Secs. Litig.*,
233 F.R.D. 306 (E.D.N.Y. 2006) ........................................................................................... 12

*In re Marriott Int'l Inc. Customer Data Sec. Breach Litig.*,
No. 19-md-2879, 2022 WL 1396522 (D. Md. May 3, 2022) .................................................. 16

*In re Mexican Gov't Bonds Antitrust Litig.*,

No. 18-cv-02830-JPO, 2021 WL 5709215 (S.D.N.Y. Oct. 28, 2021).................................... 22

*In re Namenda Direct Purchaser Antitrust Litig.*,
  462 F. Supp. 3d 307 (S.D.N.Y. 2020)................................................................ 8

*In re Payment Card Interchange Fee & Merc. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019)................................................................... 15

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006) ................................................................... 9

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ................................................................. 20

*In re Sony SCRD Rear Projection Television Class Action Litig.*,
  No. 06-cv-5173-RPP, 2008 WL 1956267 (S.D.N.Y. May 1, 2008)........................................ 17

*In re Visa Check/Mastermoney Antitrust Litig.*,
  297 F. Supp. 2d 503 (E.D.N.Y. 2003) ............................................................. 13

*Joel A. v. Giuliani*,
  218 F.3d 132 (2d Cir. 2000)......................................................................... 6

*Kelen v. World Fin. Network Nat. Bank*,
  302 F.R.D. 56 (S.D.N.Y. 2014) .................................................................... 11

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................................ 13

*McGlenn v. Driveline Retail Merch., Inc.*,
  No. 18-cv-2097-SEM, 2021 WL 165121 (C.D. Ill. Jan. 19, 2021) ......................................... 12

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015)......................................................... 6, 17, 19

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950).............................................................................. 22

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972)....................................................................... 17

*Shapiro v. JPMorgan Chase & Co.*,
  No. 11 Civ. 8331-CM-MHD, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ......................... 10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d. Cir. 2005)..................................................................7, 21-22

iv

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008)........................................................................ 21

**Other Authorities**

*In re JPMorgan Treasury Spoofing Litig.*, No. 1:20-cv-03515-PAE, Fairness Hearing Transcript,
    (S.D.N.Y. May 31, 2022).............................................................................. *passim*

**Rules**

Fed. R. Civ. P.  23(a)(4)............................................................................................... 20

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................... 21, 23

Fed. R. Civ. P. 23(e)(2)......................................................................................... passim

**Treatises**

4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 (4th ed. 2002)........... 13

## I.     Introduction

Plaintiffs,[1] by and through the undersigned Settlement Class Counsel,[2] on behalf of themselves and the Settlement Class, respectfully submit this Memorandum of Law in support of their motion pursuant to Federal Rule of Civil Procedure ("Rule") 23(e) requesting final approval of this proposed class action settlement ("Settlement") on the terms set forth in the Settlement Agreement dated March 10, 2023 (ECF No. 46-1 Ex. A) and for certification of the Settlement Class.[3]

If approved, the Settlement will successfully resolve the claims of 191,581 individuals nationwide who were notified in August 2022 of a data security incident that occurred on or around November 12, 2021 (the "Data Incident"). The Settlement brings meaningful resolution and significant benefits to the Settlement Class without requiring further delay, risk, and expense. As discussed below, the Settlement calls for Defendant to establish a non-reversionary Qualified Settlement Fund of $1.3 million ("Settlement Amount") for the benefit of eligible Class Members. Defendant also has committed to maintain substantial business practice changes in relation to its

---

[1]  Plaintiffs are Patrick Reynolds, Daniel Lewis, Lucia Marano, Kristen France, Abbey Abrecht, and Jahidah Diaab (collectively, "Plaintiffs").

[2]  The Court appointed (1) Victoria Jennings Maniatis, Gary M. Klinger and David K. Lietz of Milberg Coleman Bryson Phillips Grossman, PLLC; (2) Jonathan M. Sedgh, John A. Yanchunis and Ryan D. Maxey of Morgan & Morgan, P.A.; (3) Samuel J. Strauss and Raina C. Borrelli of Turke & Strauss LLP; and (4) Terence R. Coates and Justin C. Walker of Markovits, Stock & DeMarco, LLC as Settlement Class Counsel. (ECF No. 55 at ¶ 3).

[3]  Unless otherwise defined, all capitalized terms have the meanings set forth in the Settlement Agreement or in the Declaration of Gary M. Klinger in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Klinger Decl.") (ECF No. 46-1) and the Joint Declaration of Counsel in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards to Class Representatives ("Joint Decl. in Support of Fees, Expenses, and Service Awards") (ECF No. 57-1). Both Declarations are an integral part of this submission and, for the sake of brevity herein, Plaintiffs respectfully refer the Court to the Declarations for a detailed description of, *inter alia*: the procedural history of the Action and the claims asserted, the negotiations resulting in the Settlement and the risks of continued litigation.

data security. Further, all costs of notice and administration, presently estimated to be at least $187,212.05, will be paid from the Settlement Fund. Exhibit A, Declaration of Scott M. Fenwick of Kroll Settlement Administration LLC in Connection with Final Approval of Settlement ("Fenwick Decl.") ¶ 18.

On May 18, 2023, the Court preliminarily approved the Settlement, finding that the Court "will likely be able to approve the proposal under Rule 23(e)(2)." (ECF No. 55) ("Preliminary Approval Order") ¶ 4. The Court-ordered Notice Plan has since been executed; nothing has changed to alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate. The Settlement Class's reaction to the Settlement has been overwhelmingly positive. Of the 191,581 individual potential Class Members who were sent Notice, only 24 have timely requested exclusion and none have submitted timely objections. This response weighs in favor of final approval.

For the reasons detailed below, Plaintiffs and Settlement Class Counsel respectfully submit that the Settlement meets the standards for final approval under Rule 23, and is a fair, reasonable, and adequate result for the Settlement Class. Plaintiffs request the Court to finally approve the Settlement, grant Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards to Class Representatives, and enter a final judgment dismissing this case.

## II.      Summary of the Action and Settlement

Plaintiffs respectfully refer the Court to their Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval (ECF No. 46) and their Memorandum of Law in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards to Class Representatives (ECF No. 57) for a thorough recitation of the substantive and procedural background of this litigation. For the purposes of final approval, Plaintiffs highlight the following:

## A.      Background

Plaintiffs allege that on or about November 12, 2021, Defendant was the victim of a data incident in which unauthorized parties gained access to and obtained data from Defendant's network, potentially compromising the personally identifiable information ("PII") of 191,752 individuals.  Soon after Plaintiffs filed their Consolidated Class Action Complaint, the Parties, by and through their respective counsel, began discussing the possibility for early resolution.  The Parties agreed that an early resolution was warranted. Over the next few months, the Parties engaged in extensive arm's length settlement negotiations.  Negotiations included a significant exchange of information, allowing both Parties to evaluate the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses. Class Counsel were in a well-informed position to mediate before Judge John W. Thornton (Ret.) and reach the very favorable Settlement before the Court.

## B.      Terms of the Settlement

If the Settlement receives final approval, the $1.3 million non-reversionary Qualified Settlement Fund established by Defendant will be used to: 1) provide up to $750.00 per person reimbursement of documented out-of-pocket losses fairly traceable to the Data Incident ("Ordinary Losses"), including, but not limited to unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs; and miscellaneous expenses such as notary, fax, postage, copying, mileage and long-distance telephone charges that were incurred on or after November 12, 2021, 2) provide reimbursement of up to $7,500 per person for actual, documented losses incurred on or after November 12, 2021, more likely than not caused by the Data Breach, and not already covered by one of the Ordinary Losses categories ("Extraordinary Losses"), 3) provide up to five (5) hours of

lost time spent in response to the Data Incident, *e.g.*, time spent dealing with replacement card issues, reversing fraudulent charges, calculated at the rate of Twenty Dollars and Zero Cents ($20.00) per hour, and 4) in lieu of submitting documentation and attestations for reimbursement of Ordinary Losses or Extraordinary Losses and/or lost time, provide an Alternative Cash Payment of $150, subject to a pro rata increase or reduction based on the number of valid claims submitted.

In addition to the cash payment offered, each Settlement Class Member is eligible to enroll in a total of one (1) year of three bureau credit monitoring services, the cost of which will be paid from the Settlement Fund.

In addition to the monetary relief and credit monitoring services provided, Defendant has represented that it has implemented significant data security measures, which it continues to assess.

Based upon their extensive experience in complex litigation and data privacy, Class Counsel believe that the $1.3 million Settlement Amount will be ample to pay the claims of Settlement Class Members. However, if there are insufficient monies to pay all claims, claims for out-of-pocket losses and lost time will be reduced on a pro rata basis.  If monies remain in the Qualified Settlement Fund after the payment of all claims, attorneys' fees and expenses, service awards to the Class Representatives, and notice and admin costs, the remaining funds will be used to increase the alternative cash payments pro rata until all monies are consumed. No monies will revert to Defendant.

In all, the total settlement value is greater than the $1.3 million that Defendant is paying to create the Qualified Settlement Fund inclusive of costs of notice and claims administration and agreed to implement the cybersecurity enhancements.

### III.    Preliminary Approval and Notice

On March 10, 2023, Plaintiffs moved the Court to grant preliminary approval of the Settlement, approve the proposed Notice Plan, direct notice be given to the Settlement Class, and

Schedule a Final Approval Hearing. (ECF No. 45). On May 18, 2023, the Court preliminarily approved the Settlement. (ECF No. 55). Consistent with the Preliminary Approval Order, the Settlement Administrator implemented the Notice Plan, disseminating notices to 191,581 potential members of the Settlement Class via U.S. mail. *See* Fenwick Decl. ¶ 10.   Notice was also provided via an internet website.  *Id.* ¶ 6.

Notice instructed Class Members of their legal rights and options in this Settlement, including: the option to submit a Claim Form to receive monetary payment for losses suffered; the option to ask to be excluded from the Settlement and retain the right to bring an individual action against Defendant; the option to object to the Settlement; the option to attend the Final Approval Hearing; and the option to do nothing and not receive a monetary payment from the Settlement. (ECF No. 54-1). The deadline for Class Members to exclude themselves or object to the proposed Settlement will pass on August 14, 2023, and only 24 exclusion requests and no objections have been received to date.  *Id.* ¶ 17.  The claim deadline is August 14, 2023, and approximately 3,040 claims have been received to date.  *Id.* ¶ 14.

## IV.   The Settlement Merits Final Approval by the Court

### A.  The Settlement Meets the Standards for Final Approval Under Rule 23(e)

Rule 23(e) requires judicial approval for any compromise or settlement of class action claims. "A court may approve a proposed class action settlement, provided it determines that the settlement is 'fair, adequate, and reasonable, and not a product of collusion.'" *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 661 (S.D.N.Y. 2015) (quoting, *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)). As this Court stated in *JPMorgan Treasury Spoofing*, in exercising its discretion over a proposed settlement, a court should review the settlement in light of "the general judicial policy favoring settlement." *In re JPMorgan Treasury Spoofing Litig.*, No. 1:20-cv-03515-PAE, Fairness Hearing Transcript, (S.D.N.Y. May 31, 2022) (hereafter "*Treasury Spoofing*") at

16 (citing *Hart v. RCI Hospital Holdings, Inc.*, No. 09-cv-3043-PAE, 2015 WL 5577713, at 6 (S.D.N.Y. Sept. 22, 2015)). The Second Circuit has noted that the policy favoring settlement is strong, "particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d. Cir. 2005). Moreover, absent fraud or collusion, the Court "should be hesitant to substitute its judgment for that of the parties who negotiated the settlement." *City of Providence v. Aéropostale, Inc.*, No. 11-cv-7132-CM-GWG, 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

In undertaking the Rule 23(e) evaluation, a court must consider "both the settlement's terms and the negotiating process leading to the settlement" and review the settlement for both procedural and substantive fairness. *Meredith*, 87 F. Supp. 3d at 662 (quoting *Wal-Mart Stores*, 396 F.3d at 116). In making the determination of whether the settlement is "fair, reasonable, and adequate," amended Rule 23(e)(2) provides that a court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*See* Rule 23(e)(2).

Consistent with this guidance, courts in the Second Circuit have long considered the factors set forth in *City of Detroit v. Grinnell Corp.* in evaluating the adequacy of a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and]

(9) the range of reasonableness of the settlement fund to a possible recovery in light
of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res.,*

*Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also In re Namenda Direct Purchaser Antitrust Litig.*, 462 F.

Supp. 3d 307, 311 (S.D.N.Y. 2020) (noting "factors set forth in Rule 23(e)(2) have been applied

in tandem with the Second Circuit's *Grinnell* factors"); *Treasury Spoofing transcript* at 18-19.[4]

After considering the Rule 23(e)(2) factors at the preliminary approval stage, the Court

determined the Settlement is fair, reasonable, and adequate, subject to further consideration at the

Fairness Hearing. Preliminary Approval Order, ¶ 4 (ECF No. 55). The Court's conclusion applies

equally now.

> ### 1.   Plaintiffs and Settlement Class Counsel Have Adequately Represented the Settlement Class in this Action

In determining whether to approve a class action settlement, the Court should first consider

whether Class Representatives and Class Counsel "have adequately represented the class." Rule

23(e)(2)(A); *see generally In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y.

2019) ("Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests

are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are

qualified, experienced and able to conduct the litigation."). As this Court has held, "[a]

presumption of fairness may attach to a proposed settlement when the terms of that settlement

were reached by experienced counsel during arm's-length negotiations undertaken after

---

[4]  The advisory committee's notes to the December 1, 2018 amendments to Rule 23 explain that
the four Rule 23(e)(2) factors are not intended to "displace" any factor previously adopted by the
courts, but "rather to focus the court and the lawyers on the core concerns of procedure and
substance that should guide the decision whether to approve the proposal." Rule 23 advisory
committee's notes to 2018 amendments, subdivision (e)(2). Accordingly, Plaintiffs discuss below,
the fairness, reasonableness, and adequacy of the Settlement principally in relation to the four Rule
23(e)(2) factors, but also discuss the application of the factors identified in *Grinnell*.

meaningful discovery." *Meredith*, 87 F. Supp. 3d at 662. Counsel for Plaintiffs have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the class. *See* Klinger Decl. ¶¶ 3-26, Ex. A. Moreover, they have put their collective experience to use in negotiating an early-stage settlement that guarantees immediate relief to class members.

Class Representatives' interests are aligned with those of the Settlement Class in that they seek relief for injuries arising out of the same Data Incident. Class Representatives' and Settlement Class Members' data was all allegedly compromised by Defendant in the same manner. Under the terms of the Settlement Agreement, Class Representatives and Settlement Class Members will all be eligible for credit monitoring services and monetary relief from the Settlement Fund. Moreover, each of their data will continue to be safeguarded in the future by the security protections Defendant has put into place. Class Representatives have an interest in obtaining the largest possible recovery from Defendant. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Plaintiffs have maintained contact with counsel, assisted in the investigation of the case, reviewed the Complaint, remained available for consultation throughout settlement negotiations, reviewed the Settlement Agreement, and answered counsel's many questions. Klinger Decl. ¶ 80; see also ECF 57-6 (Plaintiff Declaration in support of Motion for Attorneys' Fees, Expenses, and Service Awards). Plaintiffs do not have any conflicts with the proposed class and have adequately represented Settlement Class Members in the litigation.

Likewise, Class Counsel have also "adequately represented the class." Rule 23(e)(2)(A). Class Counsel have extensive class action, consumer and complex litigation experience and used this expertise to pursue Plaintiffs' claims and ultimately negotiate a favorable recovery for the

Settlement Class.  Klinger Decl. ¶¶ 3-26, Ex. A; *see In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009), *aff'd*, *Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d Cir. 2010) (noting "extensive" experience of counsel in granting final approval); *see also Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331-CM-MHD, 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014) (giving "great weight" to experienced class counsel's opinion that the settlement was fair). At all times, Class Counsel was fully informed about the facts, risks, and challenges of this novel action and had a sufficient basis on which to negotiate a very significant settlement.

### 2.   The Settlement Was Negotiated at Arm's Length and Aided by a Respected and Experienced Mediator

The Court should next consider whether the settlement was "negotiated at arm's length." Rule 23(e)(2)(B). This includes consideration of other related circumstances to ensure the procedural fairness of a settlement, including whether there was sufficient discovery prior to settlement. *See Meredith*, 87 F. Supp. 3d at 662; *In re Facebook, Inc., IPO Secs. & Deriv. Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018) ("When a settlement is the product of arms-length negotiations between experienced, capable counsel after meaningful discovery, it is afforded a presumption of fairness, adequacy, and reasonableness.") (cleaned up). To assess the integrity of the process, the key question is whether "plaintiffs' counsel is sufficiently well informed" to adequately advise and recommend the settlement to the class representatives and settlement class. *See In re GSE Bonds*, 414 F. Supp. 3d at 699.

Soon after Plaintiffs filed their Consolidated Class Action Complaint, the Parties, by and through their respective counsel, began discussing the possibility for early resolution. Klinger Decl. ¶ 40. The Parties agreed that an early resolution was warranted. Over the next few months, the Parties engaged in extensive arm's length settlement negotiations. *Id.* ¶ 42. Negotiations

included a significant exchange of information, allowing both Parties to evaluate the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses. *Id*. ¶ 43. The parties attended a full-day mediation with Hon. John W. Thornton (Ret.) on January 26, 2023. The parties reached a settlement in principle at the mediation, and over the next few weeks, the Parties diligently negotiated, drafted, and finalized the settlement agreement, notice forms, and came to an agreement on a claims process and administrator. *Id*. ¶ 45. The Settlement Agreement was finalized by the Parties on March 10, 2023, and is attached in full as Exhibit 1 to the Klinger Decl. It is the opinion of Plaintiffs and proposed settlement class counsel, based on their experience and investigation, that the Settlement Agreement presents a favorable result for the Class. *Id*. ¶ 47. As this Court held in *Treasury Spoofing*, "[t]he fact that the proposed settlement reflects a successful mediation further supports the court's finding of procedural fairness." *Treasury Spoofing* at 18 (citing *Kelen v. World Fin. Network Nat. Bank*, 302 F.R.D. 56, 68 (S.D.N.Y. 2014) (the involvement of an experienced and qualified mediator in settlement negotiations further affirms the fairness of the process)); *see also Belton v. GE Capital Consumer Lending, Inc.*, No. 21-cv-9493-CM, 2022 WL 407404, at *4 (S.D.N.Y. Feb. 10, 2022) (mediation session with a "highly regarded mediator" satisfied the court's inquiry into the thoroughness of the negotiations); *see also* NEWBERG § 13:50.

### 3.   The Relief Provided for the Class Is Adequate

Courts consider whether the relief provided for the class is adequate in order to assess substantive fairness. To undertake this analysis, courts account for the following factors: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." FED. R. CIV. P. 23(e)(2)(C). The Court

is also required to confirm that the Settlement "treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D).

### a.   The Relief Provided is Superior to Continued Litigation

Rule 23(e)(2)(C)(i) and the first *Grinnell* factor support final approval, as courts consistently recognize that the expense, complexity, and possible duration of the litigation are key factors in evaluating the reasonableness of a settlement. *See In re Luxottica Grp. S.p.A. Secs. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) ("Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation."). As this Court has found, the greater the "complexity, expense and likely duration of the litigation," the stronger the basis for approving a settlement. *Meredith*, 87 F. Supp. 3d at 663; *Treasury Spoofing* at 19. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015).

The costs, risks, and delay of trial and appeal are significant in all data security cases, but particularly in cases involving facts such as these. While Plaintiffs are confident in the merits of their claims, the risks involved in prosecuting a class action through trial cannot be disregarded. Due at least in part to their cutting-edge nature and the rapidly evolving law, data security cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08-cv-6060-RMB-RLE, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g.*, *McGlenn v. Driveline Retail Merch., Inc.*, No. 18-cv-2097-SEM, 2021 WL 165121, at *11 (C.D. Ill. Jan. 19, 2021); *In re Hannaford Bros. Co. Customer*

*Data Sec. Breach Litig.*, 293 F.R.D. 21, 33 (D. Me. 2013). In fact, this District has recognized that the risk of maintaining a class through trial "weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated." *In re GSE Bonds*, 414 F. Supp. 3d at 694; *see also In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, No. 02-cv-5575-SWK, 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006) ("[T]he process of class certification would have subjected Plaintiffs to considerably more risk than the unopposed certification that was ordered for the sole purpose of the Settlement."). Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face further risk.

### b.   The Reaction of the Settlement Class

As this Court has held, "[a] positive reaction of the class to the proposed settlement favors its approval by the Court." *Meredith*, 87 F. Supp. 3d at 663; *Treasury Spoofing* at 19-20. The class's reaction to a proposed settlement is an important factor to be weighed in considering its fairness and adequacy. *See, e.g.*, *Meredith*, 87 F. Supp. 3d at 663; *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." (citation omitted)); *Grinnell*, 495 F.2d at 462-63. That being said, "[a] certain number of objections are to be expected in a class action like this one with an extensive notice campaign and a potentially large number of class members. If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F.Supp.2d 503, 511 (E.D.N.Y. 2003) (quoting 4 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 11.41, at 108 (4th ed. 2002) (holding that the "extremely small number of objectors – a mere 18 out of approximately five million Class members—weighs heavily in favor of final approval.")); *see also, e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86-87 (2d Cir. 2001) (holding that "[t]he District Court properly concluded that this small number of

objections [18 where 27,883 notices were sent] weighed in favor of the settlement"); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010) ("Of the 11,800,514 class members, only 127 opted out and 24 objected. Such a small number of class members seeking exclusion or objecting indicates an overwhelmingly positive reaction of the class."); *Charron v. Pinnacle Group NY LLC*, 874 F. Supp. 2d 179, 190 (S.D.N.Y. 2012) (approving settlement in a RICO action as "fair, reasonable, and adequate to the class as a whole" where 26,000 tenants received the notice and 118 written objections were received, 141 elected to opt out, there was strident opposition from those who did object and the six named plaintiffs and class representatives did not support the settlement), *aff'd sub nom, Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013). *Cf. In re Countrywide Financial Corp Customer Data Sec. Breach Litig.*, No. 3:08-md-01998, 2010 WL 3341200, at *7 (W.D. Ky. Aug. 23, 2010) (approving data breach settlement with 17 million class members, 2,943 opt outs and 89 objections). Here, the notice campaign resulted in 191,581 notices mailed directly to potential Class Members and notice via an internet website.

The reaction of Class Members to the Settlement has been overwhelmingly positive and weighs in favor of approval. The deadline to opt out of or object to the settlement is August 15, 2023. Of the 191,581 potential Class Members who received Notice, 24 have timely excluded themselves and none have timely objected. These numbers suggest that the overwhelming majority of Class Members are satisfied with the Settlement, weighing strongly in favor of approval of the Settlement. *See Charron*, 874 F. Supp. 2d at 198 ("The Court cannot help but conclude that the silence and acquiescence of 99% of the Class Members speaks more loudly in favor of approval than the strident objections of the 1% against it.").

### c.    Stage of the Proceedings and Amount of Discovery Completed

The third *Grinnell* factor considers the amount of discovery completed, with a "focus[ ] on whether the plaintiffs obtained sufficient information through discovery to properly evaluate their

case and to assess the adequacy of any settlement proposal." *Fleisher v. Phx. Life Ins. Co.*, No. 11-cv-8405 and 14-cv-8714-CM, 2015 WL 10847814, at \*7 (S.D.N.Y. Sept. 9, 2015). While the case is early in litigation, the Parties' negotiations included an exchange of information sufficient to allow both Parties to assess the claims and defenses at issue.  Early settlement where, as here, the Parties are adequately informed to negotiate is to be commended.  *Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at \*6 (S.D.N.Y. June 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement an avoiding hundreds of hours of legal fees); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, \*12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case).

### d.   The Risks of Continued Litigation

In assessing the fairness, reasonableness, and adequacy of a settlement, a court should also consider "the risks of establishing liability," "the risks of establishing damages," and "the risks of maintaining the class action through the trial." *Grinnell*, 495 F.2d at 463.  In this assessment, "the Court [is not required] to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Payment Card Interchange Fee & Merc. Disc. Antitrust Litig.*, 330 F.R.D. 11, 36-37 (E.D.N.Y. 2019). *See also Treasury Spoofing* at 21-24 (approving settlement where plaintiffs identified various hurdles to be cleared including "rigorous standards of certification and summary judgment" and noting, as here, the defendant had not conceded liability and damages "at a minimum would have been hotly disputed in a 'battle of experts'").

In assessing this factor, "the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 303 (E.D.N.Y 2015). As discussed above, here, the risk of establishing liability and damages is substantial. Prior to the settlement,

Defendant sought leave to move for the dismissal of this case in its entirety. (ECF No. 30). If the action had continued past a motion to dismiss, Plaintiffs would have moved for certification of the class. While Plaintiffs and Class Counsel believe that the Action is appropriate for class treatment, the outcome of a contested motion and future appeals of a certification order via Rule 23(f) are far from certain. Courts have certified Rule 23(b)(3) damages classes of consumers in only two data breach cases in 2021 and 2022. In both cases, plaintiffs were forced to re-litigate standing; partially lost *Daubert* motions to exclude some of their expert damages models supporting the motions; had the courts narrow the class definitions in order to grant any certification of a class; had the courts reject class certification of some of the claims and classes; and faced numerous, very serious issues on damages calculations, predominance and causation, both generally and for plaintiffs suffering multiple-breach class member damages. *See Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508, at *13 (M.D. Fla. Apr. 14, 2021) (noting that "if it becomes obvious at any time that the calculation of damages (including accounting for multiple data breaches) will be overly burdensome or individualized, the Court has the option to decertify the class"), vacated in part and remanded *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023); *In re Marriott Int'l Inc. Customer Data Sec. Breach Litig.*, No. 19-md-2879, 2022 WL 1396522, at *24 (D. Md. May 3, 2022) (approving only the overpayment damages theory where the information necessary to calculate damages is "objective and administrative in nature" and holding if the individual inquiries metastasize to an impermissible level, the court could modify the order, create subclasses, bifurcate liability and damages or decertify the class). Moreover, even if the class was certified, there is always the risk or possibility of decertification. The Settlement avoids any uncertainty with respect to this issue.

The risks of continued litigation here are at the highest level and there is a genuine possibility that Plaintiffs could have failed to establish liability, damages and class certification through summary judgment and trial. As this Court found in *Meredith* and *Giant Interactive*, these risks all support the approval of a settlement ending this litigation. *See Meredith*, 87 F. Supp. 3d at 664-65; *Giant Interactive*, 279 F.R.D. at 162.

### e.   The Ability of Defendant to Withstand Greater Judgment

The financial obligation the Settlement imposes on Defendant is substantial. While Defendant could withstand a greater judgment than the amount paid in settlement, "'[a] defendant is not required to 'empty its coffers' before a settlement can be found adequate.'" *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 665 (S.D.N.Y. 2015) and *Giant Interactive*, 279 F.R.D. at 162 (quoting *In re Sony SCRD Rear Projection Television Class Action Litig.*, No. 06-cv-5173-RPP, 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008)). The possibility that Defendant could have sustained a greater judgment is not determinative of substantive fairness or unfairness, "'where, as here, other *Grinnell* factors weigh in favor of approval, this factor alone does not suggest the settlement is unfair.'" *Meredith*, 87 F. Supp. 3d at 665 and *Giant Interactive*, 279 F.R.D. at 162. "[A]s a matter of law, the ability to withstand a greater judgment does not 'standing alone … suggest that settlement is unfair.'" *Treasury Spoofing* at 24 (citing *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000) (citations omitted)).

### f.   The Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and the Risks of Litigation

The eighth and ninth *Grinnell* factors—the reasonableness of the settlement in light of the best possible recovery and the risks of litigation—also weigh in favor of approving the Settlement. As the Second Circuit has explained, there is "a range of reasonableness with respect to a settlement" that "recognizes the uncertainties of law and fact in any particular case and the

concomitant risks and costs necessarily inherent in taking any litigation to completion." *Treasury Spoofing* at 25 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). As this Court has noted, the adequacy of the amount achieved in the settlement should not be judged on the best of all possible worlds, but rather in light of the strengths and weaknesses of the case. *Meredith*, 87 F. Supp. 3d at 665-66; *Treasury Spoofing* at 25.

The Settlement here is well within the range of reasonableness in light of the risks presented by this litigation. The gravamen of the litigation is Plaintiffs' contention that Defendant violated its duty to Plaintiffs and the Class by failing to undertake reasonable security measures, leading to the exposure of their personal information. The remediation measures to be continued by Defendant will prevent and mitigate further harm. Furthermore, the cash compensation to which eligible Class Members will be entitled—reimbursement of the Class Members' losses of time and money—is significant relative to economic damages incurred. In short, further litigation against Defendant would be time-consuming, expensive, and, given the risks associated with data privacy cases in general and this case specifically, might not result in a greater benefit to the Settlement Class than that provided by the Settlement.

#### 4.   The Remaining Rule 23(e)(2) Factors Support Final Approval

In evaluating the Settlement, Rule 23(e)(2) instructs courts to also consider: (i) the effectiveness of the proposed method of distributing the relief provided to the class, including the method of processing class-member claims; (ii) the terms of any proposed award of attorneys' fees, including the timing of payment; (iii) any other agreement made in connection with the proposed settlement; and (iv) whether class members are treated equitably relative to each other. Rule 23(e)(2)(C)(ii)-(iv) & (e)(2)(D). These factors also support final approval of the Settlement.

*First*, the proposed method of claims processing ensures equitable treatment of Settlement Class Members. *See* Rule 23(e)(2)(C)(ii) & (e)(2)(D). The Net Settlement Fund will be allocated

to Settlement Class Members who submit valid Claim Forms. The Court-approved Settlement Administrator, Kroll, will review and process all Claim Forms received, provide claimants with an opportunity to cure any deficiency in their submissions, and will distribute funds to eligible Settlement Class Members. *See generally* Fenwick Decl.; Klinger Decl. Ex. A ¶ 58.  Importantly, none of the Settlement proceeds will revert to Defendant.  No other agreement was made in connection with the proposed Settlement.

*Second*, the relief provided by the Settlement remains adequate upon consideration of the terms of the proposed award of attorneys' fees, including the timing of any such Court-approved payments. *See* Rule 23(e)(2)(C)(iii). As discussed in their Memorandum of Law in Support of Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards to the Named Plaintiffs, (ECF. No. 57), the requested fee, to be paid only upon the Court's approval, is reasonable in light of the efforts devoted by Plaintiffs' Counsel, the very favorable recovery obtained for the Settlement Class, and the significant risks Settlement Class Counsel shouldered at every step.[5] (ECF Nos. 100-106). The requested fee is also in line with attorneys' fee percentages awarded to counsel in other comparable class action settlements in this Circuit. *See Meredith Corp.*, 87 F. Supp. 3d at 668 (noting "in numerous common fund cases, fees have been awarded that represent one-third of the settlement fund" and collecting cases).

For the reasons set forth above and in the Klinger Declaration and the Joint Declaration in Support of Fees, Expenses, and Service Awards, the Settlement is fair, reasonable, and adequate

---

[5]   In connection with their fee request, Settlement Class Counsel also seek payment from the Settlement Amount of Plaintiffs' Counsel's out-of-pocket costs and expenses in the total amount of up to $10,000.00 as well as service awards to Plaintiffs in the aggregate amount of $21,000. *See* ECF No. 57 at 2.

when evaluated under any standard or set of factors and, therefore, warrants the Court's final approval.

## V.      The Court Should Certify the Settlement Class

Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *Meredith*, 87 F. Supp. 3d at 658 (quoting *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995)). When the Court preliminarily approved the Settlement, it found that the Settlement Class preliminarily satisfied the requirements of Rules 23(a) and (b)(3). (ECF No. 55, ¶¶ 1, 3). There have been no changes that would undermine the Court's initial determination. *See Treasury Spoofing* at 26 (adopting the arguments made in support of settlement "best outlined in plaintiffs' memorandum in support of preliminary approval" and where "no changes in the case that would warrant deviating from my initial view"); *see also In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*, 909 F. Supp. 2d 259, 264 (S.D.N.Y. 2012) (finally approving settlement where there "have been no material changes to alter the proprietary of [the court's] findings" at the preliminary approval stage).

For the same reasons previously argued (ECF No. 46), the Court should grant final certification of the Class for purposes of the Settlement. Bolstering Class Representatives' earlier arguments in support of certification of the Settlement Class is the fact that Notices were sent to 191,581 potential Class Members. *See* Fenwick Decl. ¶ 10. Thus, the size of the potential Class easily satisfies the numerosity requirement under Rule 23(a).

The adequacy requirement of Rule 23(a)(4) involves an inquiry as to whether: (1) the plaintiffs' interests are antagonistic to the interests of the other members of the Class; and (2) plaintiffs' counsel are qualified, experienced, and capable of conducting the litigation. As this Court found in *Giant Interactive*, the very small number of objectors and opt outs, as well as the

above-average recovery in this case compared to other data breach cases, supports the Court finding the answers to these questions are no and yes, respectively. *Giant Interactive*, 279 F.R.D. at 159. "The fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate." *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008).

Accordingly, Plaintiffs respectfully request that the Court finally certify the Settlement Class under Rules 23(a) and (b)(3) for purposes of effectuating the Settlement.

## VI.   Notice To the Settlement Class Satisfied Rule 23 and Due Process

Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement]." FED. R. CIV. P. 23(e)(1)(B). The standard for the adequacy of notice to the class is reasonableness. FED. R. CIV. P. 23(c)(2)(B) (for actions certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart*, 396 F.3d at 114. The Settlement Class Members have received adequate notice and have been given sufficient opportunity to weigh in on or exclude themselves from the Settlement.

Plaintiffs have provided the Settlement Class with adequate notice of the Settlement. In accordance with the Court's Preliminary Approval Order, Kroll mailed and remailed copies of the Notice Packet to 191,581 potential Settlement Class Members. Fenwick Decl. ¶ 13. The direct-mailed and emailed notice effort successfully reached 97% of potential Settlement Class Members. *Id.* Kroll established a toll-free number, 833-747-6767, for Settlement Class Members to call and

obtain additional information regarding the Settlement through an Interactive Voice Response ("IVR") system and/or by being connected to a live operator; as of July 28, 2023, the IVR system has received 671 calls, and 148 callers have been connected to live operators. *Id. ¶ 7.* The Notice adequately set out the Settlement's essential terms and informed the potential Settlement Class Members of, among other things, their right to request exclusion from the Settlement Class or object to the Settlement, as well as the procedure for submitting a Claim Form. (ECF No. 54-1).

The Notice Plan, as well as the mailed notice and website notice, satisfy due process. *See, e.g.*, *In re Mexican Gov't Bonds Antitrust Litig.*, No. 18-cv-02830-JPO, 2021 WL 5709215, at *2 (S.D.N.Y. Oct. 28, 2021) (holding similar notice plan satisfied "due process"). The Supreme Court has consistently found that mailed notice satisfies the requirements of due process. *See, e.g.*, *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 319 (1950). The mailed notice and website notice are written in clear and concise language, and reasonably conveyed the necessary information to the average class member. *See Wal-Mart*, 396 F.3d at 114. Class Members have been afforded a full and fair opportunity to consider the proposed Settlement, exclude themselves from the Settlement, and respond and/or appear in Court. Further, the Class Notice fully advised Class Members of the binding effect of the judgment on them. (ECF No. 54-1).

The content disseminated through this Notice campaign was more than adequate. *See Hall v. ProSource Techs., LLC*, No. 14-cv-2502-SIL, 2016 WL 1555128, at *5 (E.D.N.Y. Apr. 11, 2016) (finding notice sufficient where it "described essential and relevant information in plain terms, including . . . the terms of the Settlement Agreement . . . and the various rights of potential class members, such as the right to opt out of the Settlement Class or object to the instant Final Approval Motion").

In sum, this individual first-class mail to Class Members who could be identified with reasonable effort and publication on an internet website was "the best notice that is practicable under the circumstances." Rule 23(c)(2)(B). Comparable notice programs are routinely approved by Courts in this Circuit. *See, e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262 and 12-cv-5822-NRB, 2020 WL 6290596, at *3 (S.D.N.Y. Oct. 27, 2020).

## VII.    Conclusion

Considering the factors outlined in Rule 23(e) and *Grinnell* in their totality, and for the reasons set forth herein and in the Klinger Decl. and Joint Decl. in Support of Fees, Expenses, and Service Awards, the Settlement submitted in support of the motions for preliminary and final approval and for attorney fees and expenses and service awards for Class Representatives, Plaintiffs respectfully request that the Court find that this Settlement is fair, reasonable and adequate; grant final approval of the Settlement; grant certification of the Settlement Class for settlement purposes; and enter the proposed Final Judgment dismissing with prejudice the claims against Defendant.


Dated: August 7, 2023

> By: /s/ John A. Yanchunis
> Gary M. Klinger
> MILBERG COLEMAN BRYSON PHILLIPS
> GROSSMAN PLLC
> 227 W. Monroe Street, Suite 2100
> Chicago, IL 60606
> Telephone: (866) 252-0878
> gklinger@milberg.com
>
> Raina C. Borrelli
> raina@turkestrauss.com
> TURKE & STRAUSS LLP
> 613 Williamson St., Suite 201
> Madison, Wisconsin 53703-3515
> Telephone: (608) 237-1775

Facsimile: (608) 509 4423

Terence Coates
Justin C Walker
MARKOVITS, STOCK & DEMARCO, LLC
119 E. Court Street, Suite 500
Cincinnati, OH 45002
Telephone: (513) 651-3700
tcoates@msdlegal.com
jwalker@msdlegal.com

John A. Yanchunis
Morgan & Morgan, P.A.
201 N. Franklin Street 7th Floor
Tampa, FL 33602
(813)-275-5272
Fax: (813) 222-4736
Email:Jyanchunis@forthepeople.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 7, 2023, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

By: /s/ John A. Yanchunis