IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICK REYNOLDS, DANIEL LEWIS, LUCIA MARANO, KRISTEN FRANCE, ABBEY ABRECHT and JAHIDAH DIAAB, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>MARYMOUNT MANHATTAN COLLEGE,<br><br>　　　　　Defendant. | Case No. 1:22-CV-06846-LGS<br><br>**ORDER ON MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS TO CLASS REPRESENTATIVES** |

**WHEREAS,** the Court has reviewed and considered the Settlement Agreement, all papers filed and proceedings had herein connection with the Settlement, all oral and written comments received regarding the Settlement, and the record in the Action, Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards to Class Representatives (Doc. 56), Plaintiffs' Memorandum of Law in Support of Their Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards to Class Representatives (Doc. 57), Plaintiffs' Supplemental Memorandum of Law in Support of Their Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards to Class Representatives (Doc. 69), the detailed time and expense records of counsel, and the arguments of Class Counsel.

**WHEREAS,** pursuant to Federal Rule of Civil Procedure 23(h), Plaintiffs' motion for attorneys' fees in the amount of $390,000.00 should be granted because the amount is fair and reasonable based on the factors set forth in *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 50 (2d Cir. 2000), "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested

fee in relation to the settlement; and (6) public policy considerations,"[1] and *Moses v. New York Times Co.*, 79 F.4th 235 (2d Cir. 2023), "the relief actually delivered to the class can be a significant factor in determining the appropriate fee award," *id*. at 244 (quoting Fed. R. Civ. P. 23(e)(3) Advisory Committee's Note to 2018 Amendment).

      **WHEREAS,** using the approach from *In re Colgate-Palmolive Co. Erisa Litig.*, 36 F. Supp. 3d 344 (S.D.N.Y. 2014), the first step is to establish a baseline or benchmark for a reasonable fee based on similar settlements.  Using evidence of attorneys' fees in (1) Fair Credit Reporting Act ("FCRA") cases (which are similar to data breach cases) and (2) cases with similarly sized settlement amounts takes into account the factors of magnitude and complexity of the case and the size of the fee in relation to the settlement.  Using this empirical data, which reflects a sliding scale such that the fee percentage decreases as the amount of the settlement increases, avoids a windfall to class counsel.  *Cf. Goldberg*, 209 F.3d at 51-52 (criticizing the use of a fixed percentage fee benchmark for all cases).  Empirical evidence indicates that the median percentage of the settlement amount awarded as attorneys' fees in FCRA class actions is approximately 29%.  Empirical evidence also shows that, for common fund settlements of a size similar to the one here, the median is 30%.[2]  The award here aligns with the median percentage of 30% because $390,000 is 30% of the $1.3 million gross cash settlement fund.

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes and citations are omitted.

[2] Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Award, 7 J. Empirical Legal Stud. 811, 838 (analyzing nearly 700 common fund settlements from 2006 and 2007 and finding that the median percentage of the settlement fund awarded in cases with similarly sized funds, meaning funds in the same decile, is 30%); *Grice v. Pepsi Bevs. Co.*, 363 F. Supp. 3d 401, 407 (S.D.N.Y. 2019) (citing Theodore Eisenberg et al., Attorneys' Fees in Class Actions: 2009-2013, 92 N.Y.U. L. Rev. 937, 952 (2018) (finding the median fee in FCRA cases, which are similar to data breach cases, is approximately 29%)).

**WHEREAS,** when using the percentage of the fund method, it is appropriate to use the lodestar method as a "cross check" on the reasonableness of the percentage awarded. *See Goldberger*, 209 F.3d at 50. The lodestar is calculated by multiplying the reasonable hours billed by a reasonable hourly rate, and that number can be adjusted based on factors such as the risk of the litigation and the performance of the attorneys. *Id*. at 47. To support the calculation of the lodestar, "counsel must submit evidence providing a factual basis for the award" in the form of "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Uribe v. Presitge Car Care of NY Inc*., No. 23 Civ. 1853, 2023 WL 5917550, at *1 (S.D.N.Y. Aug. 9, 2023). The evidence submitted by Plaintiffs' attorneys yields a lodestar of $360,920.70. A lodestar multiplier then is calculated by dividing the fee award by the lodestar. *See James v. China Grill Mgmt., Inc*., No. 18 Civ. 455, 2019 WL 1915298, at *3 (S.D.N.Y. Apr. 30, 2019). Here, a fee award equivalent to 30% of the settlement fund represents a lodestar multiplier of approximately 1.1, which is well within the range of reasonable multipliers. *See, e.g.*, *Knox v. John Varvatos Enterprises Inc*., 520 F. Supp. 3d 331, 353 (S.D.N.Y. 2021) (noting that a 1.14 multiplier on the lodestar was "well within the range permitted by Second Circuit case law"), *aff'd sub nom. Chaparro v. John Varvatos Enterprises, Inc*., 2021 WL 5121140 (2d Cir. Nov. 4, 2021); *Grice*, 363 F. Supp. 3d at 411 (finding lodestar multiplier of 1.94 reasonable in FCRA case and closely aligned with median multiplier of 1.82 in consumer cases).

**WHEREAS,** factors such as the risk of the litigation, quality of the representation and policy considerations do not warrant any further adjustment up or down to the benchmark. First, class counsel took some risk in accepting the case on a contingency basis. Class counsel also states that the case presented risks due to the relatively novel, evolving and complex nature of

data breach. Risk does "not always compel enhanced fees," *Goldberger*, 209 F.3d at 53, and there is insufficient evidence demonstrating that the risks in this action were significantly greater than those in comparable cases to warrant adjusting the benchmark. *See, e.g.*, *James*, 2019 WL 1915298, at *2 (making no adjustment to baseline fee notwithstanding contingency basis because no evidence that risks were significantly greater than those in "cases of a similar size, complexity and subject matter"). Second, with regard to the quality of representation, class counsel points to its substantial experience and the results of the case. The quality of representation is "best measured by results." *Goldberger*, 209 F.3d at 55. While class counsel's representation yielded compensation for ordinary and other losses and protection against identity theft and credit monitoring, class counsel has not offered evidence proving that the results are "so exceptional as to warrant an increase" to the benchmark. *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F.Supp.3d at 352. Finally, with regard to public policy, class counsel argues that attorneys should be encouraged to take on relatively small-scale class actions representing data breach victims, especially given the risks noted above. While data breach class actions do have social and economic value, class counsel has not provided sufficient justification to depart from the benchmark here. *See, e.g.*, *James*, 2019 WL 1915298, at *2 (declining to adjust benchmark even in light of "substantial social and economic value" of class action).

**WHEREAS,** the Class Action Fairness Act ("CAFA") provision that governs fee awards to class counsel in coupon settlements, 28 U.S.C. § 1712, does not apply here. In addition to the available cash benefits of up to $750 for ordinary losses and up to $7,500 for other documented losses, the settlement offers class members an optional, one-year credit monitoring service. That service does not qualify as a coupon under § 1712, and even if it that provision did apply, it would not alter the fee award.

**WHEREAS,** to determine whether a nonmonetary benefit qualifies as a coupon under CAFA, courts look to factors including (1) whether redeeming the offer requires class members to "do business with defendant[] again," (2) whether the offer is valid only for select products or services, amounting to a "promotional opportunity" for defendant rather than providing utility to class members and (3) how much flexibility the service provides. *Moses*, 49 F.4th at 249-52. First, class members are not required to do business with Defendant because the credit monitoring services are provided by nonparty credit bureaus, not by Defendant. Second, the offer is valid for services from the class member's choice of any comparable provider of credit monitoring services, and as a result provides no promotional benefit to Defendant. The offer also provides clear utility to class members who have had their identity or other personal financial information stolen; indeed, the only timely objectors to this settlement complained that the credit monitoring period should be longer, indicating the utility of the service. Third, although the class member must timely activate the service and there is no indication the service can be transferred, the offer can be used at a variety of providers to obtain a variety of products, including daily three-bureau credit monitoring, identity restoration services, and identity theft insurance, among other features. Finally, applying CAFA's coupon provision to services provided by nonparties would not align with the legislative history as analyzed by the Second Circuit in *Moses*. *See id.* at 247 (quoting CAFA Congressional Record, S. Rep. No 109-14 at 15, to describe coupon settlements as those "in which class members receive nothing more than promotional coupons to purchase more products *from the defendants*" (emphasis added)).

**WHEREAS,** even if the monitoring services did qualify as coupons under CAFA, no "portion of [the] attorney[s'] fee award … [was] attributable to the award of the coupons." 28 U.S.C. § 1712(a). In other words, to the extent the fee request here is expressed as a percentage

of the value of the settlement, it is 30% of the $1.3 million *cash* settlement fund without any amount added for the anticipated value of the monitoring service option. Where "a portion of the recovery of the coupons is not used to determine the attorney[s'] fee to be paid to class counsel, any attorney[s'] fee award shall be based upon the amount of time class counsel reasonably expended working on the action," 28 U.S.C. § 1712(b)(1)), such as through the lodestar method. *See Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1, 4 (2d Cir. 2012) (summary order) (finding the lodestar method consistent with 28 U.S.C. § 1712(b)). As explained above, the lodestar method demonstrates that an award of $390,000.00 is reasonable here. It is hereby

**ORDERED** that attorneys' fees in the amount of $390,000.00 are awarded to class counsel, shall be paid from the settlement fund, and shall not be paid until a majority of class members have received their cash awards. It is further

**ORDERED** that class counsel shall be reimbursed for expenses in the amount of $7,037.18, which the Court finds were reasonably expended litigating and resolving the lawsuit. This amount shall be paid from the settlement fund and may be paid immediately. It is further

**ORDERED** that, after consideration of motion for service awards, the declarations of the Class Representatives, and the argument of Class Counsel, the request for Service Awards is **GRANTED** in part and **DENIED** in part. Service Awards are granted in the limited amount of $1,000 to each Class Representative, reduced from the $3,500 requested, for a total of $6,000. Rule 23 requires that courts reject awards that are excessive compared to the service provided by the class representative or that are unfair to the absent class members, but permits awards that are reasonable and promote equity between class representatives and absent class members. *Moses*, 79 F.4th at 245 (referencing Fed. R. Civ. P. 23(e)(2)(D)); *id.* at 254 ("We decline to depart from Rule 23's mandate, which permits fair and appropriate incentive awards."). A reduced grant of

$1,000 is justified because it is comparable to the available recovery to class members for ordinary losses and significantly less than the available recovery for other documented losses; reflects the Class Representatives' work in support of the litigation, including attending meetings with counsel, identifying relevant documents and reviewing pleadings and disclosures; and reflects special circumstances of the Class Representatives, including the personal risk involved in bringing suit against one's alma mater and the burden of litigating under one's own name after suffering from identity-theft and personal-privacy issues after a data breach.  This amount shall be paid from the settlement fund and shall not be paid until a majority of class members have received their cash awards.

       The Clerk of Court is respectfully directed to close the motion at Dkt. No. 56.

Dated: October 23, 2023
       New York, New York

                                                    LORNA G. SCHOFIELD
                                          UNITED STATES DISTRICT JUDGE